# EXHIBIT A
## (Part 1 of 2)

EFiled: Aug 12 2005 12:45PM EDT
Filing ID 6475776

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

AF-CAP, INC. and WALKER                    )
INTERNATIONAL HOLDINGS LIMITED,            )
                                           )
                    Plaintiffs,            )
                                           )
        v.                                 )        Civil Action No. 1488-N
                                           )
CMS NOMECO CONGO, INC.                     )
                                           )
                    Defendant.             )

## ANSWER TO FIRST AMENDED VERIFIED COMPLAINT

Defendant CMS Nomeco Congo Inc. ("CMS Nomeco") files this Answer to the First

Amended Verified Complaint ("Amended Complaint") filed by Plaintiffs Af-Cap, Inc. ("Af-

Cap") and Walker International Holdings Limited ("Walker").

### INTRODUCTION

1.      CMS Nomeco is the operator of an oil and gas concession under an agreement

with the Republic of Congo ("the Congo") that relates to the development of oil in Congolese

territorial waters. Under the terms of the Convention agreement that governs the concession, the

Congo is entitled to take royalty oil "in-kind" in the Congo.

2.      Af-Cap and Walker claim to be the holders of judgments against the Congo,

arising out of transactions in which CMS Nomeco was not involved. Af-Cap and Walker are not

the original lenders; to the contrary, they are in the business of buying debt of distressed foreign

nations, at steep discounts, and pursuing collection through litigation. For more than four years,

CMS Nomeco has been subjected to vexatious garnishment litigation in Texas, brought by Af-

Cap's alleged predecessor-in-interest and continued by Af-Cap, seeking to garnish CMS

Nomeco's in-kind royalty obligation to the Congo, in order to satisfy the judgment that Af-Cap

allegedly holds against the Congo. CMS Nomeco is an innocent bystander, having no involvement in the dispute between Af-Cap and the Congo.

3.     The Texas litigation exposed CMS Nomeco to the risk of double liability for its royalty or loss of its substantial investment in the operations in the Congo, with Af-Cap taking the position that it was entitled to step into the shoes of the Congo and receive royalties, and with the Congo taking the position that CMS Nomeco was obligated to deliver royalty under the terms of the Convention agreement and Congolese law, regardless of the proceedings in the United States. Since the oil which is at the heart of the dispute is produced, stored and sold within the Congo, it is impossible for CMS Nomeco to ignore Congolese court orders which require delivery of the oil to SNPC (the Government state oil company) under threat of the use of public force.

4.     In February 2005, the district court in the Af-Cap litigation entered a final judgment dismissing the garnishment action against CMS Nomeco. Af-Cap and Walker, however, did not give up their efforts to pursue CMS Nomeco. They obtained turnover orders against the Congo in proceedings to which CMS Nomeco was not a party, and they are now asking this Court to hold that CMS Nomeco has violated those Texas court orders, issued in proceedings to which CMS Nomeco was not a party, by not paying royalties to them.

5.     The Amended Complaint filed by Af-Cap and Walker is predicated on allegations that are blatantly and demonstrably false. Af-Cap and Walker have failed to disclose to the Court significant, undisputed facts that are fatal to their claims asserted in the Amended Complaint, and they have made allegations that demonstrably have no factual basis, as more fully described below.

*The Texas Federal Court Orders*

2

6.      The underpinning of all of Af-Cap and Walker's claims is their allegation that "pursuant to turnover orders . . . issued by the United States District Court for the Western District of Texas . . . Plaintiffs have the right to receive payment from [CMS Nomeco] of certain royalty payments that [CMS Nomeco] owes Congo pursuant to a Convention" for the production of oil in the Congo. Amended Complaint ¶1. That allegation is false, as demonstrated by the orders of the Texas federal court.

7.      On February 4, 2005, the Texas federal court dismissed Af-Cap's only lawsuit against CMS Nomeco, holding that CMS Nomeco's "in-kind" royalty obligation, which requires it to periodically deliver oil to the Congo that is produced, stored, and delivered in Congolese territorial waters, is not subject to garnishment. A copy of the February 4, 2005 Final Judgment dismissing Af-Cap's claims is attached hereto as Exhibit A. Apparently based on that decision, Walker has recognized that its separate, unserved parallel action against CMS Nomeco in the same Federal court in Texas cannot succeed, and it has not pursued service of CMS Nomeco in that case.

8.      Not deterred by its loss in Texas federal court, Af-Cap filed a motion against CMS Nomeco in the Texas federal court in a separate case against the Congo, in which CMS Nomeco was not a party, seeking to hold CMS Nomeco in contempt of a turnover order that the Texas federal court issued against the Congo in that case (the same turnover order referenced in the Amended Complaint). Af-Cap made the same argument that it makes here, i.e., that CMS Nomeco was in violation of the turnover order entered by the Texas federal court against the Congo by failing to pay cash royalty for Af-Cap's benefit. The Texas federal court rejected Af-Cap's argument in an Order dated July 26, 2005, holding that the Af-Cap turnover order did *not* require CMS Nomeco to make payments of royalties for the benefit of Af-Cap and that the

3

turnover order was directed solely to the Congo. A copy of the Texas federal court's June 26, 2005 Order is attached hereto as Exhibit B.

9.      In the Amended Complaint, Af-Cap and Walker failed to disclose to this Court that CMS Nomeco was *not* a party to the proceedings in the Texas federal court in which the turnover orders were issued against the Congo, that the Texas federal court had dismissed on the merits the only action Af-Cap had filed against CMS Nomeco for recovery of royalty owed to the Congo, that Walker had chosen to not pursue its only action against CMS Nomeco in the Texas federal court, and that there has been no adjudication by that court or any other court that CMS Nomeco owes royalties to Af-Cap or Walker rather than the Congo.

*The Congo Court Orders*

10.     Af-Cap and Walker also has failed to disclose to this Court that CMS Nomeco has been subjected to Congo court orders directing it to deliver oil to SNPC, the state-owned oil company of the Congo, in Congolese territorial waters, notwithstanding any orders issued in proceedings in the United States. Specifically, in December 2004, a Congo court issued an order that required CMS Nomeco to deliver royalty oil to SNPC, and CMS Nomeco's President was threatened with detention in the Congo in the event of non-compliance with the Order. A copy of the December 2004 Congo court order, with a certified translation thereof, is attached hereto as Exhibit C. Af-Cap is fully aware of that December 2004 Congo court order, yet it failed to disclose that important fact to this Court in the Amended Complaint.

11.     The most recent order from a Congolese court was issued on July 4, 2005. In that order, the Congo court held that the orders of the Texas federal court, including the Af-Cap turnover order entered against the Congo, violated the Congo public order, were not enforceable in the Congo, and did not relieve CMS Nomeco of its obligation to deliver royalty oil to the

4

Congo in Congolese territorial waters. A copy of the July 4, 2005 Congo court order, with a certified translation, is attached as Exhibit D. That Congo court order held that CMS Nomeco is required to deliver royalty oil to SNPC in the Congo, notwithstanding the orders of the U.S. courts, and it directs that the Congo court order be executed, with the assistance of the law enforcement authorities of the Congo, in case there is resistance, with provisional execution notwithstanding any appeals.

*Plaintiff's Baseless Factual Allegations*

12.    In addition to their failure to disclose critical facts in the Amended Complaint, Af-Cap and Walker also make allegations that are completely unsupported by any facts. For example, they allege that CMS Nomeco has "illegally paid" royalties to the Congo "in violation of Plaintiffs' rights under the Turnover Order." Amended Complaint ¶2. In essence, Plaintiffs allege that CMS Nomeco has made royalty payments to the Congo subsequent to the entry of the turnover orders against the Congo by the Texas federal court. That allegation, which is unsupported by any reference in the Amended Complaint to supporting facts or evidence, is a fabrication. The Congo has taken no royalty oil since December 2004, when it obtained the Congo court order attached hereto as Exhibit C, compelling CMS Nomeco, notwithstanding writs of garnishment issued by U.S. courts that were pending at that time, to deliver royalty oil to SNPC, under compulsion of threats of use of public force and threats against CMS Nomeco's president. The Congo has now obtained the additional July 4, 2005 Congo court order attached hereto as Exhibit C, compelling delivery of the next lifting of oil by SNPC, which is expected to take place on August 30-31, 2005. No royalties have been paid or delivered to the Congo since the December 2004 royalty oil lifting that was taken by the Congo under compulsion of the December 2004 Congo court order. Af-Cap and Walker's allegations concerning "illegally paid"

5

royalties to the Congo "in violation of the Plaintiff's rights under the turnover order" are baseless.

13.     Also without any factual basis are Af-Cap and Walker's allegations that CMS Nomeco "has taken steps to remove itself and its assets from the state of Texas and, has indicated by its conduct that it either has taken steps or, unless enjoined, can be expected to remove its assets from Delaware." Amended Complaint ¶3. Af-Cap and Walker point to CMS Nomeco's filing of a withdrawal of its authorization to do business in Texas in April of 2005, suggesting that the "removal" of assets occurred subsequent to the turnover orders on which their claims are predicated. That suggestion is false and known by Plaintiffs to be false. To the contrary, CMS Nomeco had not had any physical offices, officers, directors, employees, or assets in Texas for more than a year prior to that filing. In the fall of 2002, CMS Nomeco and twelve of its affiliates with operations in seven countries were sold and became members of the Perenco group of companies, a European-based oil group. Over the period October 2002 through February 2004, the activities that previously had been performed in the United States were moved to the Congo and to Perenco's European headquarters. To suggest that CMS Nomeco took "steps to remove itself and its assets from the state of Texas" to avoid the effect of the turnover orders issued in 2005 is a blatant misrepresentation to the Court. Similarly baseless is Af-Cap and Walker's contention that the notice given by Garnishees of their intent to sell their working interests in the Congo is evidence of an intent to remove assets from the United States. Garnishees' working interests in the Congo cannot be characterized as assets in the United States, and their sale of those assets obviously cannot be characterized as a removal of assets from the United States. Garnishees have the right to sell their own assets for their own legitimate business purposes, which is what is occurring in the Congo.

6

14.     Likewise, Af-Cap and Walker assert, without any factual basis, that CMS
Nomeco is guilty of "conspiring or colluding with Congo to defeat claims of creditors."
Amended Complaint ¶17. They point to no facts supporting this serious allegation, and there are
none. Af-Cap made similar allegations in their recent motion filed in the Texas federal court,
and the court there rejected them. Specifically, Af-Cap complained to the Texas federal court
that CMS Nomeco's stated intention to sell its working interest under the Convention in the
Congo constituted an act "in active concert" with the Congo in the Congo's alleged efforts to
evade the effect of the Af-Cap turnover order. The Texas federal court rejected that contention,
stating:

> [T]here is no evidence the proposed sale [of the CMS Entities' (including
> CMS Nomeco's) working interests under the Convention] is an act 'in active
> concert' with the Congo, nor is there any reason to believe the CMS Entities'
> [including CMS Nomeco's] sale of their interests in the Convention would be an
> act in furtherance of the Congo's noncompliance with the turnover order in this
> case. After all, the turnover order is directed solely at the Congo. . . . The
> turnover order does not, by its terms, prohibit the CMS Entities from transferring
> their interests under the Convention. Af-Cap has not alleged the existence of any
> evidence the CMS Entities' proposed sale is being pursued to aid or benefit the
> Congo. In fact, every bit of the evidence produced by Af-Cap would suggest
> these entities are merely attempting to cut their own losses, which years of
> litigation surrounding their interests in the Convention have produced.

Exhibit A at 6-7.

15.     In summary, in their Amended Complaint, Af-Cap and Walker have played fast
and loose with the facts, misrepresenting many facts, and failing to disclose others that are fatal
to their claims. Consideration of the true facts demonstrates that CMS Nomeco owes no
obligations to Af-Cap and Walker and that the claims asserted in the Amended Complaint are
meritless.

7

**FACTS**

16.    CMS Nomeco is the current operator of the Marine 1 permit under a Convention dated May 25, 1979 between it and other working interest owners and the Congo ("the Convention"). The Convention relates to operations for the exploration and development of oil in waters off the coast of the Congo.

17.    The oil produced under the Convention is produced and transported via a submarine pipeline network to a centralized offshore storage vessel located offshore of the coast of the Congo which is known as the "Conkouati." A "lifting" occurs when oil is offloaded from the Conkouati onto a vessel nominated by the buyer of the oil. Under the terms of Article 7 of the Convention, the Congo is entitled to royalty on volumes lifted and sold. The Congo has elected to take its royalty "in-kind" in Congolese territorial waters.

18.    Pursuant to an agreement memorialized in an Amendment to Lifting Agreement, CMS Nomeco makes liftings of oil stored on the Conkouati for its own account and that of the other private working interest owners and sells 100% of the oil so lifted. CMS Nomeco Congo Inc., as operator, calculates the effect of liftings on the over- or under-delivered position of SNPC (as co-working interest owner) and the Congo (as royalty interest owner), on a barrel basis, and records that effect on an "over/under statement." Once the combined under-delivered position of SNPC and the Congo reaches at least 275,000 barrels, SNPC is entitled to take a lifting of oil for itself and for the Congo. When SNPC takes a lifting, SNPC sells, for its account and for the account of the Congo, all of the barrels that it lifts. The SNPC lifting extinguishes the in-kind royalty obligation, and puts SNPC into an over-delivered position. CMS Nomeco and the other private working interest owners take future liftings until the combined under-

8

delivered position of SNPC and the Congo again exceeds 275,000 barrels, when SNPC again has the right to take and sell another lifting.

19.    Af-Cap's alleged predecessor-in-interest filed a garnishment action in Texas in January 2001, seeking to garnish royalty obligations and taxes owed by CMS Nomeco and other working interest owners under the Convention. That action was removed to the United States District Court for the Western District of Texas. The district court dismissed the action on the grounds that the attempted garnishment violated the Foreign Sovereign Immunities Act. In September 2004, the Fifth Circuit held that the Foreign Sovereign Immunities Act did not protect the royalty obligations from garnishment, and it remanded the case for further proceedings. Shortly after remand, the district court issued writs of garnishment in favor of Af-Cap.

20.    On December 28, 2004, a court in Point Noire, Congo issued an order compelling CMS Nomeco to deliver oil to the Congo, notwithstanding the writs of garnishment that were then pending in the U.S. court proceedings. A copy of that order is attached hereto as Exhibit C. Under compulsion of that order, SNPC took the Congo's royalty oil on December 28-29, 2004.

21.    On February 4, 2005, the district court again dismissed Af-Cap's garnishment action, holding that the royalty obligations of CMS Nomeco and the other working interest owners to the Congo were non-monetary obligations that were not subject to garnishment under Texas law. Af-Cap appealed, and that appeal is pending in the Fifth Circuit Court of Appeals. No stay of the dismissal has been granted.

22.    On February 22, 2005, in a separate action to which CMS Nomeco is not a party, the United States District Court for the Western District of Texas entered a turnover order against the Congo, ordering the Congo to sign an instruction letter directed to CMS Nomeco and the other working interest owners under the Convention. Under the instruction letter the Congo

9

was ordered to sign, the Congo would have (1) elected to take royalty in cash, and (2) directed CMS Nomeco and the other working interest owners to pay the cash royalty into the registry of the Western District of Texas.

23.    The Congo refused to sign the instruction letter and sent a letter to the district court explaining its reasons for that refusal. A copy of the Congo's letter is attached hereto as Exhibit E.

24.    On April 6, 2005, the district court issued an order under Rule 70 of the Federal Rules of Civil Procedure, directing the clerk of the Court to sign the instruction letter on behalf of the Congo and to send it to Mr. Guy Lipe, the attorney who had represented CMS Nomeco and the other working interest owners in the garnishment action that had been dismissed in February 2005. The letter provided that it was to become effective ninety days after its date. It was not forwarded to any representative of CMS Nomeco authorized to receive royalty elections or other notices under the Convention.

25.    On May 18, 2005, representatives of the Congo sent a letter to CMS Nomeco demanding that CMS Nomeco transfer their working interests under the Convention to a Congo company in order to comply with the requirements of Article 120 of the Uniform Act passed pursuant to the OHADA treaty. A copy of that letter is attached hereto as Exhibit F.

26.    On July 4, 2005, a Congo court in Point Noire, Congo issued an order against CMS Nomeco holding that the turnover order of the Texas federal court violated the Congo public order and was not enforceable in the Congo, and that CMS Nomeco was obligated to deliver royalty oil to the Congo, notwithstanding the U.S. court proceedings, including the turnover order issued in the Western District of Texas. A copy of that order is attached hereto as Exhibit D.

10

27.     Af-Cap and Walker filed this lawsuit on July 11, 2005.

28.     On July 18, 2005, CMS Nomeco and the other working interest owners under the Convention gave notice to Af-Cap, Walker, and other judgment creditors of the Congo involved in litigation against the Congo in the United States that they intended to sell their working interests to Congolese companies. A copy of that Notice, without exhibits, is attached hereto as Exhibit G.

29.     On July 21, 2005, Af-Cap filed a motion for issuance of a show cause order against CMS Nomeco and the other working interest owners with the Texas federal court, claiming that their failure to pay royalty in cash into the registry of the court on July 20, 2005 (the date Af-Cap contended to be the first royalty payment date following expiration of the ninety day period referenced in the instruction letter) violated the Court's turnover order and instruction letter and was a contempt of court. Af-Cap also contended that the notice of sale was an act that was in "active concert" with the Congo's violation of the turnover order and constituted contempt of that order.

30.     On July 26, 2005, the district court denied Af-Cap's motion for a show cause order, making the following findings:

     a.     "The Texas Turnover Statute . . . only permits a turnover order to issue against the judgment debtor itself. . . . Although the Court may order the judgment debtor – here, the Congo – to turn over any property subject to its control no matter who possesses the property, the Court may not issue a turnover order to a third party, even if that party is in actual possession of the judgment debtor's property." Ex. B at 4 (citations omitted).

11

b.    "By seeking an order that would require the CMS Entities to pay the amount of the Congo's judgment directly to it, it seeks the exact same relief expressly prohibited to it by binding precedents interpreting the Texas Turnover Statute." *Id.*

c.    "The policy behind the prohibition on non-judgment debtor turnover orders is that the turnover statute is 'purely procedural in nature . . . [and it] does not provide for the determination of the substantive rights of the parties.'" . . . [T]he execution of the instruction letters by the Clerk was to have like effect as if it were done by the Congo. No determination of what that particular 'effect' is can be made without reference to the Congo's and the CMS Entities' substantive rights and obligations under the Convention. The making of such a determination would fall outside the appropriate scope of the turnover proceedings under which Af-Cap has sought relief." *Id.* at 4-5 (citations omitted).

d.    "Although the Texas Turnover Statute entitled Af-Cap to a turnover order against the Congo, as well as appropriate supplemental relief *as against the Congo*, the Court holds Af-Cap is not entitled to turnover relief against entities that are not themselves judgment debtors." *Id.* at 5 (emphasis in original).

e.    "[T]here is no evidence the proposed sale [of CMS Nomeco's working interests under the Convention] is an act 'in active concert' with the Congo, nor is there any reason to believe the CMS Entities' sale of their interests in the Convention would be an act in furtherance of the Congo's noncompliance with the turnover order in this case. After all, the turnover order is directed solely at the Congo. . . . The turnover order does not, by its terms, prohibit the CMS Entities from transferring their interests under the Convention." *Id.* at 6.

12

f.    "Af-Cap has not alleged the existence of any evidence the CMS Entities'
proposed sale is being pursued to aid or benefit the Congo. In fact, every bit of the
evidence produced by Af-Cap would suggest these entities are merely attempting to cut
their own losses, which years of litigation surrounding their interests in the Convention
have produced." *Id.* at 7.

## SPECIFIC ALLEGATIONS AND AFFIRMATIVE DEFENSES

31.    The Judgment of the United States District Court for the Western District of
Texas dated February 4, 2005, a copy of which is attached hereto as Exhibit A, and the Order of
that same court dated June 26, 2005, a copy of which is attached hereto as Exhibit B, precludes
the claims asserted in this case. The Texas federal court rejected the factual and legal
contentions that underlie Plaintiffs' requests for relief. Af-Cap is precluded by collateral
estoppel and res judicata from relitigating those issues.

32.    By virtue of the Congo court orders dated December 28, 2004 and July 4, 2005,
and as a matter of Congolese law (which governs CMS Nomeco's obligations under the
Convention), CMS Nomeco is periodically obligated to deliver royalty oil to the Congo,
notwithstanding any orders in proceedings initiated by judgment creditors of the Congo in the
United States. Enforcement of the instruction letters issued by the Clerk of the United States
District Court for the Western District of Texas purportedly on behalf of the Congo, as sought by
Plaintiffs in this case, would result in the imposition of double liability on CMS Nomeco and
potentially loss of CMS Nomeco's investment. In those circumstances, the instruction letters are
not enforceable, at law or in equity.

33.    The Congo Court Orders and the threats of use of public force and detention in
connection therewith constitute foreign state compulsion that precludes entry of any judgment

13

against CMS Nomeco. A court in the United States may not require a person or entity to refrain from doing an act in a foreign state that the foreign state commands. *See* Section 441(1)(b) of the Restatement (3d) of the Foreign Relations Law of the United States and Comment a thereto. By virtue of the foreign state compulsion by the Congo, no judgment against CMS Nomeco is permissible.

34. By virtue of the Congo court orders dated December 28, 2004 and July 4, 2005, the act of state doctrine precludes Plaintiffs' claims.

35. The turnover order and instruction letter are not effective as to CMS Nomeco and are not binding on CMS Nomeco for additional reasons. As a threshold matter, the Texas Turnover Statute cannot be used to change a contractual election of a party and it cannot be used to change or adjudicate the substantive rights and obligations of a party to an agreement. Additionally, the turnover orders and the instruction letters cannot be used to substantively determine or affect the rights or obligations of CMS Nomeco, a non-judgment debtor who was not a party to the proceedings in which the turnover orders were entered, because the Texas Turnover Statute is a procedural mechanism that cannot be used to determine substantive rights and it does not apply to non-judgment debtors such as CMS Nomeco. Furthermore, the instruction letters, which purport to be contract notices under the Convention, were not properly delivered to a representative authorized to receive contract notices under the Convention. CMS Nomeco specifically denies that Guy Lipe of Vinson & Elkins was authorized to receive contract notices under the Convention, and alleges that the instruction letters were not delivered to any such authorized representative by the Congo or a representative of the Congo. Furthermore, the Convention does not permit the Congo to demand that royalty payments be made in Texas. For all of these reasons, the instruction letters are not binding on CMS Nomeco. The instruction

14

letters did not have the effect of converting CMS Nomeco's royalty obligation from an in-kind obligation to deliver royalty oil to the Congo in the Congo into an obligation to pay cash into a court registry in Austin, Texas. The instruction letters do not create any obligations on the part of Garnishees. Plaintiffs are not creditors of CMS Nomeco and have no standing to assert the claims for avoidance of alleged fraudulent transfers, appointment of a receiver, or the other claims asserted in this case.

## SPECIFIC RESPONSES TO THE AMENDED COMPLAINT'S ALLEGATIONS

36.    In response to paragraph 1 of the Amended Complaint, CMS Nomeco is without sufficient information to admit or deny that Af-Cap and Walker are the holders of the "Judgments." CMS Nomeco admits that it is the current operator of the Marine 1 permit under the Convention, as discussed in more detail in paragraphs 12-14 above and that the Congo is entitled to take royalty "in-kind" in the Congo pursuant to the terms of the Convention. Otherwise, CMS Nomeco denies the allegations of paragraph 1 of the Amended Complaint.

37.    CMS denies the allegations of paragraph 2 of the Amended Complaint and denies that it is liable to Plaintiffs.

38.    In response to paragraph 3 of the Amended Complaint, CMS Nomeco admits that it sent what is referred to therein as the "CMS Notice" but otherwise denies the factual allegations of paragraph 3 of the Amended Complaint and denies that Plaintiffs are entitled to any injunctive relief.

39.    CMS Nomeco denies the factual allegations of paragraph 4 of the Amended Complaint and denies that Plaintiffs are entitled to appointment of a receiver.

40.    CMS Nomeco denies the factual allegations of paragraph 5 of the Amended Complaint and denies that Plaintiffs have any valid claims.

15

41.    In response to paragraph 6 of the Amended Complaint, CMS Nomeco admits that it is a Delaware corporation, has been incorporated in Delaware since its formation in March 1984, and has designated The Corporation Trust Company as its registered agent for service. CMS Nomeco admits that it is the operator of the Marine 1 permit under the Convention as more fully described in paragraphs 12-14 above and that the Congo is periodically entitled to take royalty oil in-kind in the Congo, as described in paragraphs 12-14 above.  Otherwise, CMS Nomeco denies the allegations of paragraph 6 of the Amended Complaint.

42.    In response to paragraph 7 of the Amended Complaint, CMS Nomeco admits that the United States District Court for the Western issued the turnover order attached as Exhibit 3 to the Amended Complaint.  CMS Nomeco is without sufficient information to admit or deny the allegations concerning incorporation of Af-Cap and its alleged ownership of the judgment against the Congo.  Otherwise, CMS Nomeco denies the allegations of paragraph 7 of the Amended Complaint.

43.    In response to paragraph 8 of the Amended Complaint, CMS Nomeco admits that the United States District Court for the Western issued the turnover order attached as Exhibit 4 to the Amended Complaint.  CMS Nomeco is without sufficient information to admit or deny the allegations concerning incorporation of Walker and its alleged ownership of the judgment against the Congo.  Otherwise, CMS Nomeco denies the allegations of paragraph 8 of the Amended Complaint.

44.    CMS Nomeco denies the allegations of paragraph 9 of the Amended Complaint.

45.    In response to paragraph 10 of the Amended Complaint, CMS Nomeco is without sufficient information to admit or deny whether Plaintiffs are the holders of the judgments referenced in the Amended Complaint.  CMS Nomeco admits that the Congo is indebted to

16

numerous creditors but is unaware of the amount of the Congo's debt or the purposes for incurrence of that debt. CMS Nomeco is not aware of all contentions that the Congo has made concerning the denial of indebtedness to Plaintiffs. Otherwise, CMS Nomeco denies the allegations of paragraph 10 of the Amended Complaint.

46.    CMS Nomeco denies the allegations of paragraph 11 of the Amended Complaint.

47.    In response to paragraph 12 of the Amended Complaint, CMS Nomeco is without sufficient information to admit or deny the allegations of the first two sentences of paragraph 12 of the Amended Complaint. CMS Nomeco denies the remaining allegations of paragraph 12 of the Amended Complaint.

48.    In response to paragraph 13 of the Amended Complaint, CMS Nomeco admits that the United States District Court for the Western District of Texas entered the turnover order against the Congo that is attached as Exhibit 3 to the Amended Complaint, that attorneys for Af-Cap sent a copy of the turnover order to Guy Lipe of Vinson & Elkins by letter dated February 25, 2005, and that the clerk of the United States District Court for the Western District of Texas sent a copy of the instruction letter to Mr. Lipe on or about April 8, 2005. Otherwise, the allegations of paragraph 13 of the Amended Complaint are denied.

49.    In response to the allegations of paragraph 14 of the Amended Complaint, CMS Nomeco admits that it filed a certificate with the Texas Secretary of State withdrawing its authorization to do business in Texas, and that the certificate was not filed with the district court in Texas or delivered to Plaintiffs. Otherwise, CMS Nomeco denies the allegations of paragraph 14 of the Amended Complaint.

50.    In response to paragraph 15 of the Amended Complaint, CMS Nomeco admits that the United States District Court for the Western District of Texas entered the turnover order

17

against the Congo that is attached as Exhibit 4 to the Amended Complaint, that attorneys for Af-Cap sent a copy of the turnover order to Guy Lipe of Vinson & Elkins by letter dated April 8, 2005, and that the clerk of the United States District Court for the Western District of Texas sent a copy of the instruction letter to Mr. Lipe on or about July 5, 2005. Otherwise, the allegations of paragraph 15 of the Amended Complaint are denied.

51. In response to paragraph 16 of the Amended Complaint, CMS Nomeco admits that the letters attached to the Amended Complaint as Exhibits 9, 10, and 11 were sent to Guy Lipe of Vinson & Elkins and that CMS Nomeco did not send a response to those letters. Otherwise, CMS Nomeco denies the allegations of paragraph 16 of the Amended Complaint.

52. CMS Nomeco denies the allegations of paragraph 17 of the Amended Complaint.

53. CMS Nomeco denies the allegations of paragraph 18 of the Amended Complaint.

54. CMS Nomeco denies the allegations of paragraph 19 of the Amended Complaint.

55. CMS Nomeco denies the allegations of paragraph 20 of the Amended Complaint.

56. In response to paragraph 21 of the Amended Complaint, CMS Nomeco admits that it has not made any payments to Plaintiffs. Otherwise, CMS Nomeco denies the allegations of paragraph 21 of the Amended Complaint.

57. In response to paragraph 22 of the Amended Complaint, CMS Nomeco admits that it has not provided monthly oil royalty statements to Plaintiffs and does not consider that it is obliged to do so. Otherwise, CMS Nomeco denies the allegations of paragraph 22 of the Amended Complaint.

58. CMS Nomeco denies the allegations of paragraph 23 of the Amended Complaint.

59.    In response to paragraph 24 of the Amended Complaint, CMS Nomeco repeats and incorporates by reference its responses to paragraphs 1 through 23 of the Amended Complaint.

60.    In response to paragraph 25 of the Amended Complaint, there are no factual allegations and no response is required.

61.    In response to paragraph 26 of the Amended Complaint, there are no factual allegations and no response is required.

62.    In response to paragraph 27 of the Amended Complaint, CMS Nomeco admits that periodically, the Congo has been entitled to royalty since 1991, that for a period of time, a portion of the royalty was paid to National Union Fire Insurance Company ("NUFI") pursuant to an agreed turnover order agreed to by the Congo in 1991, and that the last payment made to NUFI was made in August 2002. Otherwise, CMS Nomeco denies the allegations of paragraph 27 of the Amended Complaint.

63.    CMS Nomeco denies the allegations of paragraph 28 of the Amended Complaint.

64.    CMS Nomeco admits that it has not paid cash royalty to Plaintiffs but otherwise denies the allegations of paragraph 29 of the Amended Complaint.

65.    In response to paragraph 30 of the Amended Complaint, CMS Nomeco admits that it has not responded to the letters attached to the Amended Complaint as Exhibits 9, 10, and 11. Otherwise, CMS Nomeco denies the allegations of paragraph 30 of the Amended Complaint and all subparts thereof.

66.    In response to paragraph 31 of the Amended Complaint, CMS Nomeco denies that any royalty payments have been made to the Congo since December 29, 2004 and denies all of the allegations of paragraph 31 of the Amended Complaint.

19

67. In response to paragraph 32 of the Amended Complaint, CMS Nomeco repeats and incorporates by reference its responses to paragraphs 1 through 31 of the Amended Complaint.

68. In response to paragraph 33 of the Amended Complaint, CMS Nomeco incorporates by reference the facts set forth in paragraphs 12-14 of this Answer. CMS Nomeco also admits that a Lifting Agreement and Amendment to Lifting Agreement have been executed in connection with the Marine 1 Permit and the operations conducted in connection with the Marine 1 Permit. Otherwise, CMS Nomeco denies the allegations of paragraph 33 of the Amended Complaint.

69. CMS Nomeco denies the allegations of paragraph 34 of the Amended Complaint.

70. In response to paragraph 35 of the Amended Complaint, CMS Nomeco admits that it has actual knowledge of the turnover orders attached as Exhibits 3 and 4 to the Amended Complaint. CMS Nomeco denies Plaintiffs' contentions concerning the legal effect of those turnover orders and therefore otherwise denies the remaining allegations of paragraph 35 of the Amended Complaint.

71. CMS Nomeco denies the allegations of paragraph 36 of the Amended Complaint.

72. CMS Nomeco denies the allegations of paragraph 37 of the Amended Complaint.

73. CMS Nomeco denies the allegations of paragraph 38 of the Amended Complaint.

74. CMS Nomeco denies the allegations of paragraph 39 of the Amended Complaint.

75. In response to paragraph 40 of the Amended Complaint, CMS Nomeco repeats and incorporates by reference its responses to paragraphs 1 through 39 of the Amended Complaint.

76. CMS Nomeco denies the allegations of paragraph 41 of the Amended Complaint.

77.     CMS Nomeco denies the allegations of paragraph 42 of the Amended Complaint and denies that Plaintiffs are entitled to the relief described therein.

78.     CMS Nomeco denies the allegations of paragraph 43 of the Amended Complaint.

79.     CMS Nomeco is not responding to paragraph 44 of the Amended Complaint, because it has moved to dismiss Count IV of the Amended Complaint.

80.     CMS Nomeco is not responding to paragraph 45 of the Amended Complaint, because it has moved to dismiss Count IV of the Amended Complaint.

81.     CMS Nomeco is not responding to paragraph 46 of the Amended Complaint, because it has moved to dismiss Count IV of the Amended Complaint.

82.     CMS Nomeco is not responding to paragraph 47 of the Amended Complaint, because it has moved to dismiss Count IV of the Amended Complaint.

83.     In response to paragraph 48 of the Amended Complaint, CMS Nomeco repeats and incorporates by reference its responses to paragraphs 1 through 47 of the Amended Complaint.

84.     CMS Nomeco denies the allegations of paragraph 48 of the Amended Complaint.

85.     CMS Nomeco denies the allegations of paragraph 49 of the Amended Complaint.

86.     CMS Nomeco denies the allegations of paragraph 50 of the Amended Complaint.

87.     CMS Nomeco denies the allegations of paragraph 51 of the Amended Complaint.

88.     In response to paragraph 52 of the Amended Complaint, CMS Nomeco admits that it has not made any payments to Plaintiffs and has not provided oil royalty declaration statements but denies that it is obligated to do so. CMS Nomeco otherwise denies the allegations of paragraph 52 of the Amended Complaint.

89.     CMS Nomeco denies the allegations of paragraph 53 of the Amended Complaint.

21

90.    In response to paragraph 54 of the Amended Complaint, CMS Nomeco repeats and incorporates by reference its responses to paragraphs 1 through 53 of the Amended Complaint.

91.    CMS Nomeco denies the allegations of paragraph 55 of the Amended Complaint.

92.    CMS Nomeco denies the allegations of paragraph 56 of the Amended Complaint.

93.    CMS Nomeco denies that Plaintiffs are entitled to any of the relief described in the "Prayer for Relief" section of the Amended Complaint.

WHEREFORE, CMS Nomeco requests that the Court deny all relief sought by Plaintiffs, that CMS Nomeco recover its costs, and that CMS Nomeco have such other and further relief as the Court may deem just and proper.

OF COUNSEL:

Guy S. Lipe
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002-6760
(713) 758-2222

Dated: August 12, 2005

/s/ M. Duncan Grant
_____
M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for Defendant

22

# EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

FILED

2005 FE -4  PM 2: 06

AF-CAP, INC.,
      Plaintiff,

vs.

REPUBLIC OF CONGO,
      Defendant,

and

CMS OIL AND GAS COMPANY, et al.,
      Garnishees.

Case No. A-01-CA-100-SS

---

### JUDGMENT

BE IT REMEMBERED on this the __4th__ day of February 2005, the Court entered an order granting Garnishees CMS Nomeco Congo Inc., the Nuevo Congo Company, and Nuevo Congo, Ltd.'s ("Garnishees") Motion for Partial Summary Judgment [#169], and hereafter enters the following judgment:

    IT IS ORDERED, ADJUDGED, and DECREED that Plaintiff Af-Cap, Inc. TAKE

    NOTHING in this cause against Garnishees and Defendant Republic of Congo, that the Writs of

    Garnishments in the above-styled cause of action issued on November 5, 2004 are DISSOLVED,

    and that Garnishees and Defendant Republic of Congo go hence without delay and with their

    costs, for which let execution issue against Plaintiff.

    SIGNED this the __4th__ day of February 2005.

                                *Sam Sparks*

                                SAM SPARKS
                              UNITED STATES DISTRICT JUDGE

197

# EXHIBIT B

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 2/8

FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

2005 JUL 26  PM 1:42

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____

AF-CAP, INC.

**Plaintiff,**

-vs-

**Case No. A-01-CA-321-SS**

**THE REPUBLIC OF CONGO,**
**Defendant.**

## O R D E R

BE IT REMEMBERED on the _26th_ day of July 2005, the Court reviewed the file in the above-styled cause, and specifically, Plaintiff Af-Cap, Inc.'s ("Af-Cap") "Emergency Motion for Issuance of a Show Cause Order Against CMS Entities" [#162] filed on July 21, 2005. Having considered the motion, the relevant law, and the case file as a whole, the Court now enters the following opinion and order.

### Background

This judgment collection action was instituted by a predecessor-in-interest of Af-Cap as part of an ongoing effort to collect a judgment against Defendant Republic of Congo ("the Congo"). Although this case has a long history, the Court here focuses its attention on a handful of recent developments. On February 22, 2005, this Court entered an order pursuant to the Texas Turnover Statute, TEX. CIV. PRAC. & REM. CODE § 31.002, and Rule 69 of the Federal Rules of Civil Procedure,[1] ordering the Congo to turn over certain royalty payments owed to it under a Convention

---

[1] Rule 69 provides that "[t]he procedure on execution, in proceedings supplementary to and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . . ." FED. R. CIV. P. 69(a).

163

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 3/8

for the production of oil and gas in the Congo dated May 25, 1979 ("the Convention"). Order of Feb. 22, 2004 ¶ 3. To effectuate this order, the Court directed the Congo to execute certain letters of instruction to the parties that owe it the royalty payments under the Convention—namely, CMS Nomeco Congo, Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. (collectively, "the CMS Entities")—that would direct each to begin paying its respective royalty obligations in cash into the registry of the Court. *Id.* The order also stated, "Until such time as the executed letters of instruction are filed and served as directed above, the Congo and all persons acting in concert with it, together with all persons having actual knowledge of this Order, are restrained and enjoined from transferring, concealing, or otherwise disposing of the Congo's interest in the property." *Id.* ¶ 4.

To date, the Congo has not executed the letters of instruction. Accordingly, on April 6, 2005, the Court entered an order pursuant to Rule 70 of the Federal Rules of Civil Procedure appointing the Clerk of the Court to execute the letters. Order of Apr. 6, 2005 at 4; *see* FED. R. CIV. P. 70 ("If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party."). On July 1, 2005, the Court imposed a set of additional sanctions against the Congo including a $10,000 per day fine against the Congo for its continuing contempt.

Af-Cap has advised the Court that the CMS Entities, to whom the letters of instruction were directed, have not paid into the registry of the Court the first set of royalty payments to come due under the Convention since their receipt of the Clerk's instruction letters. Furthermore, the CMS Entities have given Af-Cap notice of their intention to sell their interests in the Convention to a

-2-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 4/8

company formed under the laws of the Congo. Af-Cap seeks the issuance of an order directing the
CMS Entities to show cause why they should not be held in this Court's contempt as well as an order
restraining them from making the proposed sale of their interests in the Convention. Af-Cap also
asks the Court to order the CMS Entities to pay, as a sanction, all of the royalties they owe to the
Congo, up to the amount of Af-Cap's unsatisfied judgment, directly to Af-Cap in cash. Finally,
Af-Cap asks the Court to order the CMS Entities to post a bond in the entire amount of its unsatisfied
judgment against the Congo to secure the CMS Entities' compliance with Af-Cap's other proposed
directives.

### Analysis

It cannot be gainsaid that a party cannot be held in contempt of court unless they are in actual
violation of a court order. *Doe, 1–13 ex rel. Doe Sr. 1–13 v. Bush*, 261 F.3d 1037, 1058 (11th Cir.
2001). Here, in deciding whether a show cause order should issue, the threshold question for the
Court is whether Af-Cap's allegations are sufficient to support a finding the CMS Entities are in
violation of any of the Court's orders. In support of their motion, Af-Cap advances two theories.
First, Af-Cap contends the CMS Entities are in violation of their obligations under the letters of
instruction, which were issued by the Clerk of the Court at the Court's direction. Second, Af-Cap
contends that by attempting to sell their royalty interests, the CMS Entities are acting "in active
concert" with the Congo in its efforts to violate the Court's turnover order. The Court considers each
of these arguments in turn.

Af-Cap first alleges the CMS Entities have violated the terms of the instruction letters that
were sent to them by the Clerk pursuant to Rule 70. On this basis, Af-Cap contends the CMS
Entities should be held in contempt. The most basic problem with Af-Cap's theory is that the

-3-

Case 1:05-mc-00156-SLR    Document 18-2    Filed 09/16/2005    Page 30 of 33

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 5/8

Clerk's instruction letters are not orders of this Court. Although they were executed and sent by the Clerk of the Court pursuant to a court order, the letters themselves do not independently have the force and effect of a court order. Rather, by the plain terms of the Court's April 6, 2005 Order, the letters are to have the same effect—no more, no less—as instruction letters executed and sent by the Congo itself. Order of Apr. 6, 2005 at 4.

The Court is also convinced it would be inappropriate to treat the Clerk's letters as having the force and effect of court orders. The Texas Turnover Statute, under which Af-Cap has sought relief from the Court in this case, only permits a turnover order to issue against the judgment debtor itself. *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 77 (5th Cir. 1995) ("Texas courts do not apply the turnover statute to non-judgment debtors."); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991) (same); *see also Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.–Austin 1997, no writ). Although the Court may order the judgment debtor—here, the Congo—to turn over any property subject to its control no matter who possesses the property, the Court may not issue a turnover order to a third party, even if that party is in actual possession of the judgment debtor's property. *Parks*, 957 S.W.2d at 668.

What Af-Cap seeks, in effect, is to do an end-run around this particular limitation of Texas turnover law. Af-Cap has already essentially acknowledged the limitations of the Texas Turnover Statute by initially constraining its request for turnover relief to an order against the Congo itself. However, by now seeking an order that would require the CMS Entities to pay the amount of the Congo's judgment directly to it, it seeks the exact same relief expressly prohibited to it by binding precedents interpreting the Texas Turnover Statute. The policy behind the prohibition on non-judgment debtor turnover orders is that the turnover statute is "purely procedural in nature . . .

-4-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 6/8

[and it] does not provide for the determination of the substantive rights of the parties." *Resolution Trust Corp.*, 53 F.3d at 77 (quoting *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 439 (Tex. App.–San Antonio 1994, no writ)). That policy is equally applicable here. The letters the Court ordered to be signed by the Clerk and sent to the CMS Entities presupposed the existence of a binding contractual obligation on the CMS Entities to pay the Congo. As already stated, the execution of the instruction letters by the Clerk was to have like effect as if it were done by the Congo. No determination of what that particular "effect" is can be made without reference to the Congo's and the CMS Entities' substantive rights and obligations under the Convention. The making of such a determination would fall outside the appropriate scope of the turnover proceedings under which Af-Cap has sought relief. Although the Texas Turnover Statute entitles Af-Cap to a turnover order against the Congo, as well as appropriate supplemental relief *as against the Congo*, the Court holds Af-Cap is not entitled to turnover relief against entities that are not themselves judgment debtors. Likewise, the Court declines to construe its prior orders or the letters of instruction issued by the Clerk as having the effect of an injunction against the CMS Entities.

Af-Cap also contends the CMS Entities should be held in this Court's contempt because they have "acted in concert with the Congo by agreeing to sell [the CMS Entities'] working interest in the Convention to a Congolese company to aid and abet the Congo's contempt of this Court's orders." Pl.'s Emergency Mot. for Issuance of a Show Cause Order at 4. Pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, injunctions are binding, not only with respect to the parties against whom they are issued, but also against "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." FED. R. CIV. P. 65(d). There is no question

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 7/8

the CMS Entities have received notice of this Court's turnover order against the Congo. Accordingly, if the CMS Entities' proposed sale is an act "in active concert" with the Congo made for the purpose of defeating the effectiveness of this Court's orders, they may be held in contempt and enjoined from proceeding with the sale.

The problem here, however, is that there is no evidence the proposed sale is an act "in active concert" with the Congo, nor is there any reason to believe the CMS Entities' sale of their interests in the Convention would be an act in furtherance of the Congo's noncompliance with the turnover order in this case. After all, the turnover order is directed solely at the Congo. It requires *the Congo* to execute instruction letters to cause its royalty interests to be paid into the registry of the Court. It also prohibits *the Congo* from transferring its own interests in the Convention royalties until after the Court's other orders have been complied with. The turnover order does not, by its terms, prohibit the CMS Entities from transferring their interests under the Convention.

Nor is it clear that a transfer would do anything to facilitate the Congo's present refusal to execute and send the letters of instruction, which is open and ongoing. The letters of instruction appended to the turnover order clearly indicate they are intended to bind the "successors and assigns" of the CMS Entities. The Court has no trouble in holding that the Congo's obligation to execute and send the instruction letters will continue with equal force and effect no matter who holds the CMS Entities' interests under the Convention. Accordingly, there is no reason to believe a transfer would be an act in furtherance of the Congo's present refusal to sign and execute the letters.

The cases cited by Af-Cap in support of its motion are inapposite. *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75–77 (1st Cir. 2002); *Waffenschmidt v. MacKay*, 763 F.2d 711, 714–15 (5th Cir. 1985). In both *Goya Foods* and *Waffenschmidt*, the courts upheld contempt

-6-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 • Pg 8/8

sanctions against parties that aided and abetted enjoined parties in disposing of the assets of the enjoined parties themselves. *Goya Food*, 290 F.3d at 75–77; *Waffenschmidt*, 763 F.2d at 714–15. Neither case supports the proposition that a third party may be held in contempt for disposing of its own assets when the only outstanding court order is directed to the assets of the actual party to the action.

A related problem with Af-Cap's motion is that, under the cases on which it relies, the Court must find the CMS Entities'actions were taken "for the benefit of, or to assist, a party subject to the decree." *Goya Foods*, 290 F.3d at 75. Af-Cap has not alleged the existence of any evidence the CMS Entities' proposed sale is being pursued to aid or benefit the Congo. In fact, every bit of the evidence produced by Af-Cap would suggest these entities are merely attempting to cut their own losses, which years of litigation surrounding their interests in the Convention have produced.

### Conclusion

Because the Court is not satisfied Af-Cap has alleged any conduct on the part of the CMS Entities that could be construed as a violation of any of its orders, the issuance of a "show cause" order against the CMS Entities would not be appropriate here.

Accordingly,

IT IS ORDERED that Af-Cap's "Emergency Motion for Issuance of a Show Cause Order Against CMS Entities" [#162] is DENIED.

SIGNED this the 26th day of July 2005.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-7-