# EXHIBIT A
## (Part 2 of 2)

# EXHIBIT C

REPERTOIRE   N° 1131 /

DU  28  DECEMBRE  2004.—

**REPUBLIQUE DU CONGO**

**AU NOM DU PEUPLE CONGOLAIS**

**– ORDONNANCE –**

A F F A I R E :

REPUBLIQUE DU CONGO

MINISTERE DES HYDROCARBURES, Département du
KOUILOU (Me MISSIE)

C O N T R E :

C M S  NOMECO  INC  CONGO

OBJET : REFERE D'HEURE A HEURE

L'AN DEUX MIL QUATRE ;

ET, LE VINGT HUIT DU MOIS DE DECEMBRE ;

PAR DEVANT NOUS, Norbert ELENGA, Président du
Tribunal de Grande Instance de Pointe-Noire, tenant audience publi-
que des référés en notre Cabinet sis au Palais de Justice de cette
ville ;

A  C O M P A R U

Le République du Congo, Ministère des Hydrocarbu-
res agissant aux dilligences de son représentant légal ;

Qu'elle a été saisie par les créanciers américain
de l'Etat Congolais, la société NOMECO qui devait lui livrer une
cargaison de 550.000 barils de pétrole, refuse de s'exécuter au mo-
tif que cette cargaison fait l'objet d'une saisie suivant la déci-
sion du Tribunal de l'Etat de Texa du 17 Septembre 2004, rendant
possible la saisie attributive de la dite cargaison ;

Or une décision de justice rendue par une juridic
tion étrangère, même en présence de la renonciation par le débiteur
de son immunité de juridiction et d'exéction ne peut pas s'exécuter
de plein droit en territoire étranger qu'elle doit, pour recevoir
exécution, être soumise à la procédure d'exéquaturée telle que pré-
vue par l'article 299 du code de procédure civile, commerciale ad-
ministrative et financière selon lequel : "Sauf conventions diplo-
matiques contraires, les jugements rendus par les tribunaux étran-
gers et les actes par les officiers publics ou ministériels étran-
gers ne sont susceptibles d'exécution sur le territoire congolais
qu'après avoir été déclarés exécutoires par une juridiction congo
lais qui aurais été compétente "ratione matériae " pour en connaî-
tre :

Qu'en l'espèce et sans qu'il soit nécessaire de
débattre du bien fondé ou on de l'action en saisie des créanciers
d'origine américaine, il y a lieu de relever que la décision sur
laquelle se fonde la société NOMECO n'a jamais été exéquaturée et
pire, les tribunaux congolais ne sont pas encore saisis d'une de-
mande en ce sens ;

Qu'il concient donc, la question de l'enlèvement du
la cargaison detenue par NOMECO étant urgente et comportant un péril
certain, d'ordonner sur minute que la NOMECO livre à tout opérateur
que lui désignera la SNPC ladite cargaison ;  .../...

**EXHIBIT A**

SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il resulte de l'examen des pièces du dossier que la société NOMECO a fait application d'un jugement américain rendu dans l'Etat du Texas en date du 17 Septembre 2004 à l'encontre de l'Etat Congolais ;

Attendu que ledit jugement n'a jamais été exéquaturé par les juridictions congolaises ;

Que dans ces conditions, ledit jugement ne satisfait aux dispositions légales notamment l'article 299 du code de procédure civile, commerciale, administrative et financière Congolais qui dispose que "sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente "ratione materiae " pour en connaître ;

Attendu dès lors que la requête de l'Etat Congolais est donc regulière et recevable en outre de l'article 207 du code de Procédure civile, commerciale, administrative et financière ;

Attendu au fond qu'elle est fondée ;

Qu'il y a lieu d'y faire droit ;

Qu'il échet d'ordonner à la société NOMECO à livrer sans delais à tout opérateur que lui designera la SNPC toutes les quantités d'hydrocarbures lui appartenant et detenue par elle en vertu de leur contrat de partensriat ;

Attendu que la société NOMECO regulièrement convoquée a comparu par le biais du représentant du Directeur Général, Monsieur Benôît DE LA FOUCHARDIERE, Directeur des opérations ;

Qu'il y a lieu de lui donner acte ;

Attendu que la société NOMECO a succombé au procès ;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du dode de procédure civile, commerciale administrative et financière ;

P A R   C E S   M O T I F S

Statuant publiquement, contradictoirement, en référé en matière civile, en premier ressort ;

AU  PRINCIPAL

Renvoyons les parties à mieux se pourvoir ainsi qu' elles en aviseront ;

MAIS DES A PRESENT, VU L'URGENCE ET PAR PROVISION

Constatons que le jugement du 17 Septembre 2004 n' est pas été encore exéquaturé par les juridictions congolaises ;

Constatons que ledit jugement n'a jamais été signifié à l'Etat Congolais ;

...·/...

EN    CONSE U NCE ;

Ordonnons à la société NOMECO de livrer sans delais
tout opérateur que lui designera la SHFC, toutes les quantités
d'hydrocarbures lui appartenant et detenue par elle en vertu de leur
contrat de partenariat ;

Ordonnons l'exécution provisoire de la présente ordi
nance nonobstant toutes voies de recours ;

Mettons les dépens à la charge de la Société NOMECO

Et, avons signé notre Ordonnance aec le Greffier./-

Suivent les signatures ci intérisr
du Président et du Greffier
Suit la Mention d'Enregistrement
Enregistré à POINTE-NOIRE le 28 Décembre 200C
Pour expédition conforme certifiée conforme
POINTE-NOIRE le 28 Décembre 200C

) - Greffier en Chef

En conséquence : la République du Congo
mande et ordonne à tous huissiers sur ce
requis de mettre ledit jugement à execution
aux Procureurs Généraux et aux Procureurs
de la République Près les Cours et Tribunaux
de Grande Instance d'y tenir la main à tous
Commandants et officiers de la force publique
de prêter main forte lorsqu'ils en seront
légalement requis

En foi de quoi la présente expédition
a été signée et scellée par Monsieur le
Greffier en Chef du tribunal de Grande
Instance de POINTE-NOIRE et par lu
délivrée sous forme de grosse

Par le Tribunal
Collationné
Le Greffier    Chef

Me R. KOUD-OKOUO
Greffier en Chef

# Certification of Translation

*ATA Certified*
*Steven Sachs*

This is to certify that the following document:

Court Order in the matter of Republic of the Congo v. CMS NOMECO INC. CONGO

is an accurate and true translation prepared by the undersigned from French into English. I am a translator certified by the American Translators Association for translation from French into English.

_____

Steven Sachs
1312 Harbor Road
Annapolis, MD 21403

1-10-05
Date

e-mail: steven@stevensachs.com
Ph: (301) 261-1016
Fax: (509) 461-9020

Subscribed and sworn before me on this 10th day of *January* of 2005

[Notary stamp]

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: 9/8/2008

# EXECUTION COPY

## REPUBLIC OF THE CONGO ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 1131 /
OF DECEMBER 28, 2004                    O R D E R

IN THE MATTER OF:

THE REPUBLIC OF THE CONGO

MINISTRY OF HYDROCARBONS, Department of Kouilou (Mr. Messie, Attorney)

VERSUS:

CMS NOMECO INC. CONGO

SUBJECT: IMMEDIATE SUMMONS

| | |
|---|---|
| [stamp: EXECUTION COPY<br>Certified True Copy<br>Joachim Mitolo, Attorney at Law<br>B.P. 1384 [Tel. 94 83 28] | [stamp: EXECUTION COPY<br>Certified True Copy<br>Joachim Mitolo, Attorney at Law<br>B.P. [Tel. 94 83 28] [signature] |

IN THE YEAR TWO THOUSAND AND FOUR:

AND ON THE TWENTY-EIGHTH DAY OF THE MONTH OF DECEMBER;

BEFORE US, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

### THE FOLLOWING APPEARED

The Republic of the Congo, Ministry of Hydrocarbons, filing through its legal representative;

Whereas it has been garnished by the American obligees of the Congolese State, NOMECO, which was to deliver to it a cargo of 550,000 barrels of oil, and refuses to do so on the grounds that said cargo has been garnished based on the decision of the Court of the State of Texas of September 17, 2004, making possible the garnishment of said cargo;

[stamp: EXECUTION COPY          [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

Yet a court decision handed down by a foreign jurisdiction, even when the obligor renounced its immunity from jurisdiction and execution, cannot be automatically executed abroad and that, to be executed, it is necessarily subject to an execution procedure as stipulated by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

That in this case and with no necessity of debating the merits or the lack thereof of the action to garnish by the U.S. obligees, there is reason to find that the decision that NOMECO is using as a basis has never been executed. Worse, the Congolese courts have not yet received an application for authority to enforce this judgment;

That therefore, the matter of removing the cargo in the possession of NOMECO is urgent and entails a certain peril, so that it should be made enforceable immediately that NOMECO delivers said cargo to any operator that the SNPC [Société nationale des pétroles du Congo – Congo National Petroleum Company] may designate;

### BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that NOMECO has applied a U.S. judgment handed down in the State of Texas on September 17, 2004 against the Congolese State;

Whereas said judgment has never been executed by the Congolese jurisdictions;

That under these conditions, said judgment does not satisfy the statutory provisions of Article 299 in particular of the Congolese Code of Civil, Commercial, Administrative and Financial Procedure, which stipulates that "unless there are diplomatic conventions that stipulate otherwise, the judgments handed down by foreign courts and instruments received by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that was given *ratione materiae* jurisdiction to take cognizance of the matter;

Whereas since the application of the Congolese State is thus in order and admissible under Article 207 of the Code of Civil, Commercial, Administrative and Financial Procedure;

Whereas it has merit in terms of the substance;

Republic of the Congo 1                    2

[stamp: EXECUTION COPY          [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

That there is reason to accept it;

That NOMECO is ordered to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and that are in NOMECO's possession pursuant to their partnership contract;

Whereas NOMECO, duly convened, has appeared through the representative of the Director General, Mr. Benoît de la Fouchardière, Operations Manager;

It is to be officially recorded;

Whereas NOMECO has lost the case;

That there is reason to hold NOMECO responsible for the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

## ON THE MERITS

We refer the parties to enter an appeal as they shall advise;

## BUT AT THIS TIME, GIVEN THE URGENCY AND BY WAY OF ADVANCE

We find that the judgment of September 17, 2004 No.       has not yet been confirmed by the Congolese jurisdictions;

We find that said judgment has never been served upon the Congolese State;

CONSEQUENTLY;

We order NOMECO to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and in NOMECO's possession pursuant to their partnership contract;

We order the immediate execution of this order notwithstanding any appeals;

The costs shall be paid by NOMECO.

Republic of the Congo 1                    3

[stamp: EXECUTION COPY             [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

And, we have signed this Order with the Registrar.
The signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on <u>December 28, 2004</u>
Certified true execution copy, checked against the original
Pointe-Noire, <u>December 28, 2004</u>
Chief Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance to assist all commanders and law enforcement agencies to lend a hand when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar


R. Koud-Okouo, Attorney
Head Registrar

# EXHIBIT D



ROLE CIVIL N°546
ANNEE 2005

REPERTOIRE N°577
DU 04-07-05

RE_____ DU CONGO

AU NOM DU PEUPLE CONGOLAIS

L'an deux mil cinq
Et le quatre du mois de juillet;

Par-devant nous,Norbert ELENGA,Président du Tribunal de Grande Instance de Pointe-Noire,tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc ETIKI,Greffier en Chef des Chambres Civiles dudit Tribunal;

(/u la requête en date à Pointe-Noire du 02 Juillet 2005 de la République du Congo,Ministère des Hydrocarbures,ayant pour conseils,Maîtres Irène Josiane OKOKO,Hervé OBONGUI NGUIE et Nadia MACOSSO,Avocats à la Cour B,P5437 Pointe-Noire;

Attendu qu'elle expose à l'appui de sa requête;que se prévalant de ce qu'elles ont été saisies par la société AF CAP(titulaire d'une créance sur la République du Congo suivant une décision de la Cour Suprême de l'Etat de New York du 9 mai 2000) par les décisions des 4 et 22 février 2005 de la Cour du District de l'Ouest du Texas,Division Austin,Etats-Unis d'Amérique ,les sociétés CMS Nomeco Inc,Nuevo Congo Company et Nuevo Congo Limited entendent ne pas permettre l'enlèvement des parts de pétrole brut correspondant aux redevances fiscales dues à la République du Congo au titre de la convention pour la production d'hydrocarbures du 25 mai 1979;

Que les jugements des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales,le versement des redevances fiscales en numéraire au Greffe de la Cour en faveur de AF CAP en règlement de la créance de celle-ci sur la République du Congo ainsi que toute _____ supplémentaire que la Cour ordonnera,Ces décisions interdisent également la République du Congo et toute personne ayant connaissance de ces décisions de transférer,dissimuler ou de disposer des intérêts de la République du Congo;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

Qu'en effet,une décision de justice rendue par une juridiction étrangère _____ en présence de la renonciation par le débiteur de son immunité de juridiction et d'exécution ne peut pas s'exécuter de plein droit sur le territoire étranger qu'elle doit,pour recevoir exécution,être soumise à la procédure d'exequatur telle que prévue par l'article 299 du Code de Procédure Civile,Commerciale,Administrative et Financière selon lequel,sauf conventions diplomatiques contraires,les jugements rendus par les Tribunaux étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione materiae pour en connaître;

Qu'en l'occurence,les décisions américaines des 4 et 22 février 2005 n'ont pas été notifiées à la République du Congo et que ni la société AF CAP, prétendue créancière de la République du Congo,ni les sociétés CMS Nomeco Inc,Nuevo Congo Company et Nuevo Congo Limited,tiers saisis,n'ont formulé devant les Tribunaux Congolais une demande d'exequatur des mêmes décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à l'ordre Public international et à la souveraineté de la République du Congo en ce qu'elle vise des redevances fiscales,par nature insaisissables,et porte atteinte à la République du Congo dans l'exercice de sa souveraineté fiscale;



**EXHIBIT F**

Qu'ainsi,il sied,la question de livraison des parts de pétrole brut de

-2-

la République du Congo détenues par les sociétés CMS NOMECO Inc, Nuevo Congo
Company et Nuevo Congo Limited étant urgente et comportant un péril certain, d'
ordonner sur minute que ses sociétés livrent à tout opérateur désigné par la
République du Congo lesdites parts de pétrole brut;

Qu'en conséquence de ce qui précède, la République du Congo sollicite, par déci-
sion de référé d'heure à heure de, constater que les Tribunaux Congolais ne sont
saisis d'aucune décision rendue par une juridiction américaine et portant saisie
de la redevance minière due à la République du Congo au titre de la convention
du 25 mai 1979; - Dire que les décisions de la Cour du District de l'Ouest du
Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne
peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'
objet de la procédure d'exequatur devant les cours et tribunaux congolais; cons-
tater que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public
et ne sauraient être déclarées exécutoires par une juridiction congolaise; Ordon-
ner aux sociétés CMS Nomeco, Nuevo Congo Company et Nuevo Congo limited de livrer
à tout opérateur désigné par la République du Congo les parts de pétrole brut lui
revenant, conformément aux dispositions de la convention du 25 mai 1979 et de la
législation en vigueur; Ordonner l'exécution de droit de la décision à intervenir
nonobstant toutes voies de recours; Statuer ce que de droit sur les dépens;

Attendu que par conclusions en date du 02 juillet 2005, la Société CMS NOMECO
CONGO Inc, ayant pour conseil, Maître Sylvie Nicole KOUDECKE, Avocat à la Cour B.P
1316 Pointe-Noire, a soutenu ce qui suit;

Que un certain nombre de juridictions Américaines ont rendu des décisions or-
donnant l'immobilisation des parts de pétrole brut revenant à la République du
Congo entre les mains de la Société CMS NOMECO CONGO Inc;

Que si la Société CMS NOMECO CONGO INC a introduit des requêtes de non-lieu
auprès de plusieurs Cours Américaine au motif que sa livraison des parts de pé-
trole brut à tout opérateur désigné par la République du Congo serait obligatoire
en Droit Congolais nonobstant l'existence d'une décision contraire émanant d'une
juridiction Américaine et que l'une de ces cours à rejeté cette requête, les au-
tres ne s'étant pas prononcées sur le sujet;

Qu'enfin, compte-tenu de fait que la société CMS NOMECO est une société Améri-
caine et que les procédures en cours sont des procédures Américaines, une décision
émanant d'une juridiction congolaise obligeant la Société CMS NOMECO à livrer
des parts de pétrole brut à tout opérateur désigné par la République du Congo
exposerait la Société CMS NOMECO au risque d'effectuer un double paiement;

Qu'en effet, si tel était le cas, la société CMS NOMECO serait contrainte de li-
vrer des parts de pétrole brut à tout opérateur désigné par la République du Con-
go en conformité avec la décision du Tribunal de Grande Instance, tout en courant
le risque de devoir également effectuer un paiement aux Etats-Unis afin de se
conformer à la décision de la Cour Américaine;

Que la Société CMS NOMECO étant manifestement un tiers aux procédures mention-
nées ci-dessus afin, elle ne devrait pas avoir à subir de telles conséquences;



Que l'article 299 du Code de Procédure Civile, Commerciale, Administrative et
Financière dispose: "Sauf conventions diplomatiques contraires, les jugements ren-
dus par les tribunaux étrangers et les actes reçus par les officiers publics ou
ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congo-
lais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui
aurait été compétente "ratione materiae" pour en connaître;

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions
étrangères exécutées sur le territoire Congolais;

Que or, les décisions de la Cour de District des Etats-Unis, District de l'Ouest
du Texas, ont été rendues, signifiées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au

...*/...

-3-

Congo à travers la société CMS NOMECO CONGO INC;

Que la République du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP INC;

Que dans ces conditions, la République du Congo ne peut valablement opposer à sa créancière de respecter la formalité d'exequatur comme si elle exécutait sa décision sur le territoire Congolais;

Que la République du Congo sous-tend en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi, notamment des articles 50 de l'Acte Uniforme OHADA portant Organisation des Procédures Simplifiées de Recouvrement et des Voies d'Exécution et 77 de la Charte des Entreprises d'Etat;

Que or, il a été rappelé supra que la société CMS NOMECO CONGO INC n'est que tiers-détenteur des parts de pétrole brut querellées entre la société Américaine AF-CAP INC et la République du Congo, suite aux décisions Américaines en dates respectives du 04 et 22 Février 2005;

Que le fait pour la Société CMS NOMECO d'avoir immobilisé ces parts de pétrole brut suite aux décisions des juridictions Américaines, ne signifie pas que la Société CMS NOMECO revêt la qualité de saisissant;

Que la Société CMS NOMECO ne saurait opiner sur cette question d'immunité de saisie qui intéresse les principales parties au litige, notamment la Société Américaine AF-CAP Inc et la République du Congo;

Qu'elle sollicite,-Constater que un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la République du Congo, entre les mains de la Société CMS NOMECO-Constater que la Société CMS NOMECO CONGO n'est que tiers-détenteur des parts de pétrole brut-Constater l'immobilisation par elle seule des effets de cette exécution sont respectés au Congo à travers la Société CMS NOMECO-Constater l'absence d'un quelconque acte d'exécution accompli sur le territoire Congolais;

Qu'en conséquence, Dire qu'il n'y avoir lieu à ordonner la livraison des parts de pétrole brut sollicité par la République du Congo-Condamner la République du Congo aux dépens;

## SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il résulte de liaison des pièces du dossier que les décisions judiciaires américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à la législation Congolaise en vigueur;

Attendu en effet que la République du Congo est un état souverain dans une personne morale de droit public;

Attendu qu'il y a lieu de lui faire application des dispositions de l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose que l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient de l'immunité de l'exécution;Toutefois les dettes certaines, liquides et exigibles des personnes morales de droit public ou des entreprises publiques quelles qu'en soient la forme et la mission, donnent lieu à compensation avec les dettes également certaines, liquides et exigibles dont quiconque sera tenu envers elles, sous réserve de réciprocité;

Attendu également que les décisions judiciaires américaines dont saisie du pétrole brut Congolais ne sont pas encore exéquaturées;

Qu'en effet l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière (CPCCAF) dispose que:Sauf conventions diplomatiques contraires,les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolai-

•••/•••

ce qui aurait été compétente"ratione materiae" pour en connaître;

Attendu en définitive qu'il n'y a donc lieu à opposer à l'État Congolais toutes les décisions judiciaires Américaines;

Attendu également que l'article 50 de l'Acte Uniforme Sur les Procédures simplifiées de Recouvrement et des Voies d'Exécution(AUPARVE) de l'OHADA dispose que"les biens déclarés insaisissables par la loi nationale de chaque État Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers";

Or attendu que les redevances pétrolières sont déclarées insaisissables par la loi Congolaise;

Attendu en définitive qu'il sied de dire que la saisie du pétrole brut Congolais ordonnée par les Tribunaux Américains est contraire à l'ordre public et porte atteinte à la souveraineté de l'État Congolais;

Attendu qu'au regard de tout ce qui précède, il y a lieu de dire que la requête de l'État Congolais est donc régulière et recevable;

Attendu au fond que cette requête est fondée;qu'il y a lieu de faire droit à cette requête;

Qu'il sieur donc de constater que les Tribunaux Congolais ne sont pas saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Attendu qu'il y a lieu donc de rejeter purement et simplement tous les arguments développés par la Société CMS NOMECO CONGO INC;

Attendu que la Société CMS NOMECO CONGO INC a succombé en procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du CPCCAF;

## PAR CES MOTIFS

Statuant publiquement,contradictoirement,en référé,en matière d'exécution et en premier ressort;

Au principal,Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent,vu l'urgence et par provision,

Constatons que les Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Disons que les décisions judiciaires Américaines ou d'autres juridictions étrangères ne peuvent s'exécuter sur le territoire Congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les Cours et Tribunaux Congolais,Disons que les redevances pétrolières Congolaises sont insaisissables selon la loi Congolaise;

Constatons que les décisions judiciaires Américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à l'ordre public et portant atteinte à la souveraineté nationale de la République du Congo;

En conséquence;



Ordonnons aux sociétés CMS NOMECO,Nuevo Congo Company et Nuevo Congo Limited de livrer à tout Opérateur désigné par la République du Congo les parts de pétrole brut revenant à la république du Congo,conformément aux dispositions de la convention du 25 Mai 1979;et de la législation en vigueur;

...../....

-5-

Disons que la présente Ordonnance sera exécutée, en cas de résistance de la société CMS NOMECO, avec l'aide et assistance de la Force Publique;

Ordonnons l'exécution provisoire de la présente Ordonnance nonobstant toutes voies de recours;

Mettons les dépens à la charge de la société CMS NOMECO CONGO INC;

Et avons rendu signé notre Ordonnance avec le Greffier,/-

Suivent les signatures (e) illisibles
du Président et du Greffier
suit la mention d'enregistrement
Enregistré à Pointe-Noire le 02 Juillet 2003
Pour expédition collationnée
certifiée conforme à l'original
établie en................... (X) Pages.
POINTE-NOIRE, le 02 Juillet 2003
Le Greffier en Chef

Me R. KOUD-OKOUO
Greffier en Chef

**EXECUTION COPY**

**ORDER**

<u>CIVIL LIST No. 546</u>
<u>YEAR: 2005</u>

F No. 251

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

<u>REGISTER No. 477</u>
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

With reference to the motion dated July 2, 2005 in Point Noire from the Republic of the Congo, Ministry of Hydrocarbons, with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

Whereas in support of its motion, it stated: whereas AF CAP (which holds a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

But whereas these decisions could not be executed in the Republic of the Congo;

Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas in this case, the Republic of the Congo was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each Contracting State may not be garnished even though it may be held by third parties;

2

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with International Public Order and the Republic of the Congo's sovereignty in that it is aimed at tax royalties, by their nature not subject to garnishment, and it interferes with the Republic of the Congo's exercise of its sovereignty in matters of taxation;

Whereas, therefore, since the issue of the delivery of any operator designated by the Republic of the Congo's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver said shares of crude oil to any operator designated by the Republic of the Congo;

Whereas based on the foregoing, the Republic of the Congo is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction on the garnishment of the mining royalty owed to the Republic of the Congo's under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to any operator designated by the Republic of the Congo, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in briefs dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, P.O. Box 5316, Pointe-Noire, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to the Republic of the Congo held by CMS Nomeco Congo Inc;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that its delivery of the shares of crude oil to any operator designated by the Republic of the Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco to deliver shares of crude oil to any operator designated by the Republic of the Congo would render CMS Nomeco liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco would be forced to deliver shares of crude oil to any operator designated by the Republic of the Congo in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas CMS Nomeco is obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

Whereas Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this code it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas the Republic of the Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas under these conditions, the Republic of the Congo cannot make valid use of the argument that its obligee observed the procedure for the authority to execute as though it were executing its decision in Congolese Territory;

Whereas the Republic of the Congo further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the Republic of the Congo, pursuant to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, mainly AF-CAP Inc., the U.S. company, and the Republic of the Congo;

Whereas it is requesting that the Court: - find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco; - find that CMS Nomeco Congo is only a "third arty holder" of the immobilized shares of crude oil; - find that only the effects of this execution are felt in the Congo through CMS Nomeco; find that there is no instrument of execution whatsoever that has been carried out in Congolese territory;

Whereas consequently, find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and - order the Republic of the Congo to pay the costs;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that the U.S. court decisions that ordered the attachment of Congolese crude oil conflict with the Congolese laws in effect;

Whereas the Republic of the Congo is indeed a sovereign State and therefore a Government Corporation and Enterprise;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution which provides that "Compulsory distraint and preventive measures shall not apply to persons enjoying immunity from execution. However, any unquestionable debts due for payment belonging to public corporations or enterprises, regardless of their form and mission, may equally be compensated with unquestionable debts due for payment belonging to any person owing them, subject to reciprocity;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas furthermore, the decisions of the U.S. courts, including for the attachment of the Congolese crude oil, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas ultimately, there is therefore no reason to use the decisions of the U.S. courts as arguments against the Congolese State;

Whereas, moreover, Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution (UAOSRPME) provides that "property declared not subject to attachment by the national law of each Contracting State may not be attached, even if it is held by third parties;

Yet, whereas the oil royalties are declared not subject to attachment by Congolese law;

Whereas ultimately, it should be found that the attachment of the Congolese crude oil ordered by the U.S. courts is in conflict with public order and interferes with the sovereignty of the Congolese State;

Whereas with regard to the foregoing, there is reason to find that the Congolese Republic's motion is in order and admissible;

Whereas, in substance, it is grounded; whereas there is reason to accept it;

Whereas it is therefore essential to find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the CCCAFP;

NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

On the merits, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

We find that the U.S. court decisions or decisions of other foreign jurisdictions may not be executed in Congolese territory without first having been the subject of the procedure of the authority to execute with the Congolese Courts and Tribunals. We find that the Congolese oil royalties cannot be attached according to Congolese law;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We find that the U.S. court decisions that ordered the attachment of the Congolese crude oil are in conflict with the public order and interfere with the Republic of the Congo's national sovereignty;

Consequently;

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to any operator designated by the Republic of the Congo in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc. to pay the costs.

And we have signed our Order with the Clerk,

> The illegible signatures of the Presiding Judge and the Registrar follow.
> The recording follows.
> Recorded in Pointe-Noire on July 4, 2005
> Certified true execution copy, checked against the original, 5 pages
> Pointe-Noire, July 5, 2005
> Head Registrar

> In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

# EXHIBIT E



**Global Language Services**

Translations · Interpreting
DTP · Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@kerntranslations.com

**www.e-kern.com**

State of : ___New York___

County of : ___New York___

SS.:

## CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)*

## LETTER DATED MARCH 3, 2005 REGARDING
## AF-CAP, INC. V. REPUBLIC OF CONGO

*from the FRENCH language into the ENGLISH language and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.*

Signed by:

(Eric Schloss)

Kern Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169
Tel: 212-953-2070
Fax: 212-953-2073

Subscribed to before me this ___7___

Day of ___March___, 2005

Notary Public

JOY N. WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 2, 2007

**EXHIBIT C**

San Francisco: The Russ Building · 235 Montgomery Street, Suite 946 · San Francisco, CA 94104
Tel. (415) 433 5376 · Fax (415) 433 5377 · kern.sf@kerntranslations.com

London: Tel. 011 44 (20) 78 31 56 00 · Frankfurt: Tel. 011 49 (69) 75 60 73-0 · Berlin: Tel. 011 49 (30) 24 72 12 50 · Paris: Tel. 011 33 (1) 53 93 85 20
Zurich: Tel. 011 41 (1) 2 61 11 60 · Hong Kong: Tel. 011 (852) 28 50 44 55 · Amsterdam: Tel. 011 31(20) 6 39 01 19 · Lyon: Tel. 011 33 (4) 783 783 73

MINISTER OF FOREIGN AFFAIRES
AND FRANCOPHONY

----------------

**CABINET**

--------

REPUBLIC OF CONGO
Unité - Travail - Progrès

------------

MAEF  0744   CAB.SP.

**Brazzaville, 03 March 2005**

MINISTER OF STATE

Re: <u>Republic of Congo v. Af-Cap, Inc.</u>

Dear Judge:

I refer to the order issued by this court on 22 February 2005 (the "Turnover Order"), which provides, *inter alia*:

- "The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention;

- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute . . . [a] letter of instruction . . . to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty . . . ."

This suit was initiated over four years ago with a view to persuading United States courts to authorize seizure of the Congo's rights to mining royalties, which it collects within its own territory, in satisfaction of a debt purchased by a creditor without any right to said mining royalties. The Congo has strongly objected to this litigation, which is unfounded. It is premised on the erroneous notion that an American court may transfer the right of a sovereign nation—the Republic of Congo—to dispose of its resources within its own borders. The Republic of Congo has thus far endeavored to cooperate with United States judicial authorities in the hope that United States courts would recognize their obligation to respect the Congo's sovereignty, as is mandated not only under Congolese and international law, but under United States law as well.

In light of the judgments of this Court and the Court of Appeals for the Fifth Circuit, the Congo is constrained to protest in the strongest possible terms the failure to

1

respect its sovereign rights and the resulting judicial measures that purport to dispossess the Congo of economic rights comprising its national patrimony and principal source of export revenue. It is an established principle of the law of nations that every state exercises full and permanent sovereignty over its natural resources and exclusive authority to control the economic exploitation thereof. The Congo's rights to the mining royalties within its territory are subject to its exclusive jurisdiction and sovereignty, which cannot be subordinated to the judicial measures of another state.

The Turnover Order issued by this Court is a clear violation by the United States of international law which recognizes the right for any sovereign State to exercise authority and control over its natural resources within its national territory. Such actions impact negatively on the relations between the United States and the Congo, undermining the concerted mutual efforts of both nations to encourage private United States entities to invest in the Congo, in particular in the oil sector. This unfortunate development requires the Congo to reassess its relations with the United States, particularly where other sources of trade and investment such as Canada, Europe, India and China continue to respect the sovereignty of the countries with which they maintain an economic relationship.

The Turnover Order is unenforceable in the Congo, and cannot supersede the Congo's sovereign authority to prescribe and enforce its own laws within its own territory. Regretfully, the Congo must hereby advise the Court that, for the reasons stated, the Congo will not implement the Turnover Order.

Please accept, Your Honor, the expression of my most distinguished consideration.

[seal:  Minister of Foreign Affaires and
Francophony
Cabinet
Republic of Congo]

[signature]

Rodolphe Adada

**Hon. Sam Sparks**
**United States District Judge**
**United States District Court for**
   **The Western District of Texas**
**Austin, Texas**

**U.S.A.**

copy: Hon. William H. Taft, IV
       United States Department of State

2

MINISTERE DES AFFAIRES ETRANGERES
ET DE LA FRANCOPHONIE

République du Congo
Unité – Travail - Progres

------------------

**CABINET**

--------

MAEF_ 0 7 4 4/CAB.SP.-

Brazzaville, le 0 3 MARS 2005

LE MINISTRE D'ETAT,

**Objet** : République du Congo c. Af-Cap.Inc

Monsieur le Juge,

Je me réfère à l'Ordonnance de votre tribunal rendue le 22 février 2005 (the
« Turnover Order », qui décide notamment :

- « The Court hereby takes possession and control of all future royalty
  obligations owed to the Congo under the Convention [for the production of oil
  and gas in the Congo dated May 25, 1979] and this Order shall constitute a
  judgment lien upon the Congo's property interests in, and its rights to receive
  payment of, its royalty share" from oil companies operating in the Congo
  under a concession granted by the Congo in the Convention ;

- "The Court further orders the Congo to turn over such royalty payments into
  the registry of the Court and to execute...[a] letter of instruction ...to the
  parties who pay royalties under the Convention to the Congo revoking prior
  instructions regarding payment of the royalty...

Cette procédure a été initiée par les demandeurs il y a plus de quatre ans dans le
but de  convaincre les tribunaux américains d'autoriser la saisie des droits du
Congo sur la redevance minière qu'elle perçoit sur son propre territoire, en
paiement de droits d'un créancier au titre d'une dette du Congo sans rapport avec
un droit quelconque sur cette redevance minière. Le Congo a vigoureusement
contesté cette action judiciaire, laquelle est sans aucun fondement. Elle repose
sur l'hypothèse erronée qu'un tribunal américain pourrait aliéner le droit d'un Etat
souverain, la République du Congo, de disposer de ses ressources à l'intérieur de
son propre territoire. La République du Congo a jusqu'à présent coopéré avec les
autorités judiciaires américaines dans l'espoir que les tribunaux américains
admettraient leur obligation de respecter la souveraineté du Congo, comme le
leur impose le droit international, le droit congolais ainsi que le droit des Etats-
Unis d'Amérique.

Compte tenu des jugements rendus par votre tribunal et par la Court of Appeals for the Fifth Circuit, le Congo se voit contraint de protester vigoureusement contre le non-respect de ses droits souverains et contre les mesures judiciaires qui visent à le déposséder de droits économiques qui font partie de son patrimoine national et qui constituent sa principale source de revenus à l'exportation. Le droit international public établit clairement le principe selon lequel chaque Etat a le droit d'exercer une souveraineté entière et permanente sur ses ressources naturelles, et dispose du droit exclusif d'en contrôler l'utilisation économique. Les droits du Congo sur la redevance minière à l'intérieur de son territoire sont du ressort de sa souveraineté exclusive, laquelle ne peut en aucun cas faire l'objet de mesures judiciaires de la part d'un autre Etat.

Le Turnover Order émis par votre tribunal constitue une violation patente de la part des Etats-Unis du droit international, lequel consacre le droit pour chaque Etat souverain de gérer ses ressources naturelles à l'intérieur de son territoire national. De telles actions affectent négativement les relations entre les Etats-Unis et le Congo et les efforts mutuels de ces deux nations pour encourager les sociétés américaines à investir au Congo, en particulier dans le domaine pétrolier. Ce regrettable développement met le Congo dans l'obligation de réexaminer ses relations économiques avec les Etats-Unis en tenant compte notamment que d'autres pays partenaires commerciaux, au Canada, en Europe, en Inde et en Chine respectent la souveraineté des pays avec lesquels ils entretiennent des relations économiques.

Le Turnover Order est de nul effet au Congo et ne saurait prévaloir sur l'autorité souveraine de notre pays d'appliquer ses propres lois sur son territoire. J'ai donc le regret de vous informer que, pour les raisons indiquées dans la présente lettre, la République du Congo rejette le Turnover Order.

Veuillez agréer, Monsieur le Juge, l'expression de ma considération distinguée.

Rodolphe ADADA.

**Hon. Sam Sparks**
**United States District Judge**
**United States District Court for**
 **The Western District of Texas**
**Austin, Texas**

**U.S.A.**

Copie : Hon. William H. Taft, IV
        United States Department of State

# EXHIBIT F

Received 07/12/2005 10:16AM in 01:18 on line (7) for GL0607 * Pg 2/3
12/07/2005  16:18    0                                              PAGE  02/03
LE-VU 12. JUL. 2005 17:07 CONSOMER 0033153576332    *    A:90014722 N° 751    P. 2 P:2-2
0033153576332

MINISTERE DES HYDROCARBURES                REPUBLIQUE DU CONGO
                                           Unité -- Travail -- Progrès
MINISTERE DU COMMERCE,
DE LA CONSOMMATION
ET DES APPROVISIONNEMENTS                  Brazzaville, le    1 8 MAI 2005
------------
N° 05 x 1 0 4 3 1 /MHC-CAB

                                           Les Ministres,

                                           ^
Reçu le 2 7 MAI 2005
                                           CMS Nomeco Congo
                                           **POINTE-NOIRE**

Objet : Obligation de constitution
        d'une société de droit congolais

Monsieur le Directeur Général,

Suivant les dispositions de l'article 33 du Code des Hydrocarbures, la société
étrangère titulaire d'un titre minier peut s'implanter au Congo sous les formes
juridiques de société de droit congolais ou de succursale immatriculée au
registre du commerce et du crédit mobilier.

Par ailleurs, l'article 120 de l'Acte uniforme relatif au droit des sociétés
commerciales et du groupement d'intérêt économique requiert de la société
étrangère implantée en zone OHADA sous forme de succursale d'apporter,
après deux années, ladite succursale à une société de droit de l'Etat
d'implantation.

Les dispositions des actes uniformes OHADA prévalant sur celles du Code des
Hydrocarbures, et votre société étant représentée au Congo par une
succursale depuis plus de deux ans, nous vous demandons par la présente de
bien vouloir procéder, dans les meilleurs délais, au remplacement de la
succursale actuelle par une société de droit congolais.

Nous vous prions d'agréer, **Monsieur le Directeur Général**, l'expression de nos
sentiments distingués.

Le Ministre d'Etat,                        Le Ministre du Commerce,
Ministre des Hydrocarbures,                de la Consommation
                                           et des Approvisionnements,

Jean-Baptiste TATI-LOUTARD                 Adélaïde MOUNDELE NGOLO

**EXHIBIT A**

12/07/2005  16:18    Received 07/12/2005 10:16AM in 01:18 on line [7] for GL0607 * Pg 3/3
                     0
12. JUL. 2005 16:30                                    N° 750    P. 2      PAGE  03/03

MINISTRY OF HYDROCRARBONS
-------------------------

MINISTRY OF COMMERCE,
CONSUMPTION
AND SUPPLIES


REPUBLIC OF CONGO
Unity-Work-Progress
-----------

N° 05 x 0431/MHC-CAB

Brazzaville, the 18 May 2005

The Ministers,
to
CMS Nomeco Congo

Pointe-Noire

*Subject: Legal obligation to set up a
company governed by Congolese law*

To the attention of the Managing Director:

Pursuant to the provisions contained in article 33 of the Hydrocarbons Code a foreign company holding mining titles has the obligation to be domiciled in Congo either through a company governed by Congolese law or through a subsidiary of a foreign company registered with the Registry of Companies and Liens.

Furthermore, article 120 of the OHADA Uniform Act on commercial companies and commercial interest groupings requires a foreign company operating in the OHADA zone under the form of a subsidiary for more then two years to transform the said subsidiary into a company governed by the relevant local law.

Consequently, since the provisions of the OHADA Uniform Act prevail over any provision of the Hydrocarbons Code and your company has been present in Congo through a subsidiary for more than two years we herby request the replacement of your subsidiary by a company governed by Congolese law.

Sincerely yours,


Minister of Hydrocarbons

Minister of Commerce,
Consumption
and Supplies


Jean-Baptise TATI-LOUTARD

Abdelaye WOUNDELE NGOLO

# EXHIBIT G

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | § | |
| Plaintiff, | § | |
| v. | § | |
| REPUBLIQUE DU CONGO | § | |
| Defendant, | § | **CIVIL ACTION No. H-02-4261** |
| and | § | |
| | § | |
| CMS OIL AND GAS COMPANY, et. al., | § | |
| | § | |
| Putative Garnishees. | § | |

### NOTICE OF CMS NOMECO CONGO INC., THE NUEVO CONGO COMPANY, AND NUEVO CONGO LTD. OF ANTICIPATED SALE AND TRANSFER OF WORKING INTERESTS

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Garnishees CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. ("the Working Interest Owner Garnishees"), in accordance with this Court's prior Order dated May 20, 2003, hereby give notice to the Court and to the parties of their intention to sell and transfer their working interests under the Convention dated May 29, 1979 ("the Convention") for the production of oil in The Republic of Congo ("the Congo") and the Marine 1 Permit relating thereto.

1.      The Working Interest Owner Garnishees are holders of working interests under the Convention and Marine 1 Permit and are actively involved in the production of oil in Congolese waters pursuant thereto.  CMS Nomeco Congo Inc. is the operator under the Convention and related Joint Operating Agreement.

2.      As shown by the copy letter attached hereto as Exhibit A, the Congolese government has asserted that article 120 of the OHADA Uniform Act requires that the working interests under the Convention and Marine 1 Permit be held by Congolese companies.  The

OHADA Treaty (Organisation for the Harmonisation of Business Law in Africa) is a regional treaty signed by 16 west African countries (including Congo) whose Uniform Acts prevail over individual national legislation. Under article 120 of the Uniform Act, a foreign company cannot continue to operate through a branch in the relevant OHADA country for more than 2 years without a Government waiver: the branch is thereafter required to be attached to a company governed by the laws of one of the countries which are party to the Treaty. Similar letters have been sent to other operators operating in the Congo. If the Working Interest Owner Garnishees fail to comply, there is the risk that the Congo will terminate the Convention, causing the Working Interest Owner Garnishees to lose their investment in the country.

3.    Furthermore, beginning in January 2001 and continuing to the present, judgment creditors of the Congo have sought writs of garnishment against the Working Interest Owner Garnishees, seeking to garnish royalty obligations of the Working Interest Owner Garnishees to the Congo under the Convention. Additionally, judgment creditors in this and other litigation have sought to garnish the right of SNPC, the state-owned oil company of the Congo, to take working interest oil as a working interest owner under the Convention and Joint Operating Agreement.

4.    On February 22, 2005, in Case No. A-01-CV-321-SS in the Western District of Texas ("the 321 Case"), a case in which the Working Interest Owner Garnishees are not parties, the Court entered a Turnover Order against the Congo (but not the Working Interest Owner Garnishees) which directed the Congo to issue an instruction letter to the Working Interest Owner Garnishees electing to take royalties under the Convention in cash and instructing the Working Interest Owner Garnishees to make royalty payments into the registry of the Court in the Western District. A copy of the Turnover Order entered in the 321 Case is attached hereto as

2

Exhibit B. A representative of the Congo notified the Court in the 321 Case by letter that the Congo considered the Turnover Order unenforceable under Congolese law and refused to sign the instruction letter. A copy of that letter is attached hereto as Exhibit C. Subsequently, the Court in the 321 Case entered an Order directing the clerk of the Court to sign the instruction letter on behalf of the Congo. A copy of that Order is attached hereto as Exhibit D. On April 8, 2005, the clerk of the Western District issued the instruction letter. A copy of the instruction letter is attached hereto as Exhibit E.

5.      In addition to the turnover relief sought in the 321 Case in the Western District, FG Hemisphere also has sought a turnover order in this case, seeking the order not only against the Congo but also against the Working Interest Owner Garnishees.

6.      On July 4, 2005, a court in the Congo entered Orders against CMS Nomeco Congo Inc., holding that the U.S. court orders do not relieve CMS Nomeco Congo of its obligation as operator to deliver oil. Specifically, the court in the Congo held that the U.S. court orders are not enforceable under Congolese law. Copies of the Congo court orders, with certified translations thereof, are attached hereto as Exhibits F and G

7.      The facts and circumstances described above have caused CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. to decide to sell their working interests under the Convention. Specifically, if the status quo is maintained, they risk, through no fault of their own, not only double liability due to the conflicting court decisions in the Congo and U.S., but also the loss of their interests in the Convention and Permit (and thus the whole of their investment in Congo) either through a failure to comply with OHADA law or a failure to comply with the above-referenced Congo court orders. Accordingly, CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd., in order to protect their legitimate business

3

interests, intend to convey their working interests. The purchasers will be companies to be formed under Congolese law. The consideration to be paid for the sales will be cash. Upon closing of the conveyances, the working interests under the Convention will be owned by the Congolese purchasers of the working interests, and the rights and obligations under the Convention and Joint Operating Agreement previously held and owed by the Working Interest Owner Garnishees will be held and owed by the Congolese purchasers and not the Working Interest Owner Garnishees.

8.     In compliance with the May 20, 2003 Order of this Court, the Working Interest Owner Garnishees give notice to the Court and the parties of their intention to consummate the transactions described in this notice no earlier than thirty days from the date of this notice.

Respectfully submitted,

GUY S. LIPE
State Bar No. 12394600
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin
Houston, Texas  77002-6760
(713) 758-1109
(713) 615-5607 fax

**Attorneys For CMS Nomeco Congo Inc., The
Nuevo Congo Company, and Nuevo Congo Ltd.**

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2005, a true and correct copy of the foregoing instrument was delivered to the following in the manner indicated:

Dillon J. Ferguson (*Via Hand Delivery*)
Phillip G. Oldham
Andrews & Kurth L.L.P.
600 Travis, Suite 4200
Houston, Texas 77002

Danforth Newcomb (*Via Federal Express*)
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

Andrew L. Jefferson, Jr. (*Via Hand Delivery*)
1314 Texas Street, Suite 500
Houston, Texas 77002-3513

Boaz S. Morag (*Via Federal Express*)
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, New York 10006

Roland Garcia (*Via Hand Delivery*)
Greenberg Traurig, LLP
3200 Travis Street, Third Floor
Houston, Texas 77006

Guy S. Lipe

2283499_1.DOC

5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2005, the foregoing Answer to First Amended

Verified Complaint was served on the following counsel of record via Lexis / Nexis File and Serve:

        Scott D. Cousins, Esq.
        Greenberg Traurig, LLP
        The Brandywine Building
        1000 West Street, Suite 1540
        Wilmington, DE 19801

                /s/ M. Duncan Grant
                M. Duncan Grant (Del. Bar No. 2994)
                PEPPER HAMILTON LLP
                Hercules Plaza, Suite 5100
                1313 North Market Street
                P.O. Box 1709
                Wilmington, DE  19899-1709
                (302) 777-6500