**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WALKER INTERNATIONAL HOLDINGS LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-MC-00156 |
| REPUBLIC OF THE CONGO, | ) ) | |
| Defendant. | ) ) | |

**CMS NOMECO CONGO LLC'S ANSWERING BRIEF
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR ISSUANCE OF WRIT OF ATTACHMENT _FIERI FACIAS_**

OF COUNSEL:

Guy S. Lipe
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002-6760
(713) 758-2222

Dated: September 30, 2005

M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for CMS Nomeco Congo LLC

**TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

STATEMENT OF FACTS ................................................................................... 6

ARGUMENT ...................................................................................................... 11

    A.   The Congo Court Orders Compelling CMS Nomeco to Deliver Royalty Oil in the Congo, Notwithstanding Writs of Garnishment Issued In U.S. Litigation, Preclude Issuance of the Writ that Walker Seeks ................................................................ 11

        1.   Under this Court's Decision in LNC Investments v. Nicaragua, No Writ Should Issue Because the Court Cannot Protect CMS Nomeco From Double Liability ................................................................................................. 11

        2.   Under the Doctrine of "Foreign State Compulsion," This Court Should Not Issue a Writ that Conflicts with Congo Court Orders Compelling Delivery of Oil in the Congo ................................................................................... 12

        3.   Under the Act of State Doctrine, This Court Should Not Issue the Writ .................... 14

    B.   The Writ Should Not Issue Because, as Held by the Western District of Texas, Only Monetary Obligations Are Subject to Garnishment ................................. 16

    C.   Walker Has Failed to Demonstrate that Royalty Obligations Sought to be Garnished Are Currently "in the United States" as Required by the FSIA ..................... 17

    D.   Even if the FSIA Requirements Were Met with Regard to the Royalty, There is no Basis for Any Contention that Tax Obligations Fall Within An Exception to Immunity Under the FSIA ................................................................................... 22

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## CASES

Af-Cap, Inc. v. Republic of Congo, 383 F.3d 361 (5th Cir.), *modified on rehearing*, 389 F.3d 503 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 1735 (2005) ................... 4, 5, 6, 7, 9, 16, 17, 18, 19, 20, 21

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) ............................... 19

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964) ........................................................ 14

California v. NRG Energy, 2004 WL. 2808555 (9th Cir. Dec. 8, 2004) ............................... 4, 5, 7, 15, 17, 18, 19, 20, 21, 22,

Callejo v. Bancomer, S.A., 764 F.2d 1101 (5th Cir. 1985) ........................................................ 20, 21

Connecticut Bank of Commerce v. Republic of Congo, 309 F.3d 240 (5th Cir. 2002) ............ 3, 17

Cooper *v. Reynolds*, 77 U.S. 308, 319 (1870) ........................................................................ 18

FG Hemisphere Associates L.L.C v. Republique du Congo., Case No. H-02-4261 ............... 12, 17

Interamerican Refining Corp v. Texaco Maracaibo, Inc., 307 F. Supp. 1291 (D. Del 1970) ........................................................................................................................... 16

Jones's Administrator v. Crews, 64 Ala. 368 (1879) ............................................................... 17

LNC Investments, Inc. v. The Republic of Nicaragua, No. 01-134-JJF (D. Del., Dec. 18, 2002), *appeal dism'd*, 396 F.3d 342 (3d Cir. 2005) ..................................... 2, 3, 11, 12

McLaughlin v. Bahre, 35 Del. 446, 166 A. 800 (1933) ............................................................ 18

Philippine National Bank v. United States District Court, 397 F.3d 768 (9th Cir. 2005) . 14, 15, 16

Reebok Intern. Ltd. v. McLaughlin, 49 F.3d 1387 (9th Cir. 1995) ...................................... 13, 14

Rush-Presbyterian-St. Luke's Medical Ctr. v. Hellenic Republic, 877 F.2d 574 (7th Cir.1989) ..................................................................................................................... 15

Tabacalara Severiano Jorge, S.A. v. Standard Cigar Co., 392 F.2d 706 (5th Cir. 1968) ........20, 21

Timberlane Lumber Co. v. Bank of America, N.T. & S.A., 549 F.2d 597 (9th Cir. 1976)...........16

Underhill v. Hernandez, 168 U.S. 250 (1897) ...............................................................................14

W.S. Kirkpatrick & Co. v. Evntl. Tectonics Corp., International, 493 U.S. 400 (1990)...............14

Weitzel v. Weitzel, 27 Ariz. 117, 230 P. 1106 (Ariz. 1924)..........................................................12

West v. Baker, 510 P.2d 731 (Ariz. 1973)......................................................................................12

World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154 (D.C. Cir. 2002)............15

## STATUTES

Foreign Sovereign Immunities Act, 28 U.S.C. §1605(a)(5) ...........................................................19

Foreign Sovereign Immunities Act, 28 U.S.C. §1610 .........................................................4, 18, 21

## MISCELLANEOUS

38 C.J.S. *Garnishment* §105 ....................................................................................................3, 17

Restatement (Third) of the Foreign Relations Law of the United States § 441 .............3, 12, 13, 14

Fed. R. Civ. P. 70    ..........................................................................................................................8

CMS Nomeco Congo Inc. (now known as CMS Nomeco Congo LLC) ("CMS Nomeco"), files this Answering Brief in Opposition to Plaintiff's Motion for Issuance of Writ of Attachment *Fieri Facias* that was filed on September 1, 2005 ("the September 1 Motion").

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Walker International Holdings Limited ("Walker") claims to be a judgment creditor of the Republic of Congo ("the Congo"). In proceedings in Texas, Walker and another judgment creditor of the Congo (Af-Cap, Inc.), represented by the same counsel, have sought to seize in-kind royalty obligations of CMS Nomeco to the Congo under an oil and gas concession in the Congo. Walker and Af-Cap are in the business of buying up distressed debt of foreign nations at substantial discounts and pursuing collection of that debt, using aggressive litigation tactics. Af-Cap's garnishment action in Texas was dismissed, and Walker elected to not pursue its garnishment action. In short, Walker and Af-Cap failed to obtain relief in Texas against CMS Nomeco, and in July 2005 filed an action in Chancery Court in Delaware against CMS Nomeco. Walker has now filed yet another action, this action seeking a writ of attachment against CMS Nomeco. Just as the efforts of Walker and Af-Cap to assert garnishment actions in Texas failed, this Court should reject Walker's latest effort to garnish CMS Nomeco, and Walker's motion should be denied.

CMS Nomeco is the operator of an oil and gas concession under an agreement with the Republic of Congo ("the Congo") that relates to the development of oil in Congolese territorial waters. Under the terms of the Convention agreement that governs the concession, the Congo is entitled to take royalty oil "in-kind" in the Congo.

In seeking issuance of the writ against CMS Nomeco, Walker has failed to disclose to the Court a number of critical facts that demonstrate that issuance of the requested writ is improper and should be denied:

1. Walker has failed to inform the Court that the Congo obtained court orders in December 2004 and July 2005 holding that writs of garnishment issued by U.S. courts in Texas directed to CMS Nomeco against the same royalty obligation are unenforceable under Congolese law, which governs the Convention between the Congo and CMS Nomeco. The Congo court held that the oil royalties cannot be attached according to Congolese law, that the garnishment writs issued by the courts in Texas are contrary to the Congo public order and interfere with the Congo's national sovereignty, and that CMS Nomeco is required to deliver royalty oil to the Congo in the Congo, notwithstanding the U.S. proceedings and court decisions. This requirement by the Congolese courts to deliver oil produced in the Congo to the Congo was backed up by the threat of the use of public force. Copies of the December 2004 and July 2005 Congo court orders with regard to the royalty oil are attached hereto as Exhibits A and B.

In seeking a new writ in this proceeding, Walker is asking this Court to impose obligations on CMS Nomeco that are in direct conflict with the obligation to deliver royalty oil as imposed by the Congo court orders. This Court has expressly held that garnishment is not proper under Delaware law when the foreign law governing the garnishee's obligation would not regard a payment pursuant to a writ of garnishment as a discharge of the garnishee on the underlying debt, exposing the garnishee to double liability. *LNC Investments, Inc. v. The Republic of Nicaragua*, No. 01-134-JJF (D. Del., Dec. 18, 2002) (unpublished decision) (Exhibit C hereto), *appeal dism'd*, 396 F.3d 342 (3d Cir. 2005). A garnishee is an innocent bystander and must be protected from exposure to double liability. Just as the exposure to double liability

precluded the garnishment writs in *LNC Investments v. Nicaragua*, no writ may properly issue against CMS Nomeco in this case, in light of the Congolese court orders determining that U.S. garnishment writs provide no defense to CMS Nomeco's obligation to deliver oil in the Congo

Additionally, because the issuance of new writs would impose obligations inconsistent with those imposed by the Congo court orders with regard to acts to be undertaken by CMS Nomeco in Congolese territory, the doctrines of foreign state compulsion under Section 441 of the Restatement (Third) of the Foreign Relations Law of the United States and the act of state doctrine preclude issuance of the writs. Walker's motion fails to address any of these issues.

2. Walker has failed to disclose in its motion that in a Texas garnishment action filed against CMS Nomeco by Af-Cap, Inc. (a company represented by the same counsel as Walker), the United States District Court for the Western District of Texas held that the in-kind royalty obligation under CMS Nomeco's Convention with the Congo is not subject to garnishment because non-monetary obligations are not subject to garnishment. This is a recognized rule in the United States. *See, e.g.,* Corpus Juris Secundum, *Garnishment* §105 ("In the absence of specific statutory sanction it is generally held that obligations other than for the payment of money are not subject to garnishment; and within this rule are obligations payable in particular kinds of personalty"). A copy of the Texas federal court's memorandum opinion holding the in-kind royalty obligations not subject to garnishment is attached hereto as Exhibit D, and the Final Judgment dismissing the garnishment action is attached as Exhibit E. In August 2005, Af-Cap, Inc. again sought issuance of garnishment writs from the federal court in Texas, and the Court denied that motion. A copy of that Order is attached as Exhibit F.

3. Walker has failed to disclose to the Court that in *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002), the Fifth Circuit held that a writ directed

to a garnishee with regard to an obligation owed to a foreign state cannot issue unless the district court first determines that the property falls within an exception to immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §1610 ("FSIA"). Although the Fifth Circuit held in the case of *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir.), *modified on rehearing*, 389 F.3d 503 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 1735 (2005), that the royalty obligations owed to the Congo in early 2003 were located "in the United States" for purposes of the "in the United States" requirement for exceptions to immunity under the FSIA, that holding was based on the Fifth Circuit's determination that in early 2003, CMS Nomeco was "formed and headquartered" in the United States. That is no longer the case, as CMS Nomeco no longer has any physical offices, directors, officers, or activities in the United States, as a result of a stock acquisition by the Perenco group of companies (which is headquartered in Europe) involving acquisition by the Perenco group of CMS Nomeco and twelve other CMS companies with operations in seven countries. All of CMS Nomeco's activities relating to the Convention are performed in the Congo and in Europe, and CMS Nomeco's sole current connection to the United States is its incorporation in Delaware.[1] That connection is insufficient to render the in-kind royalty obligation (which is an obligation to deliver oil in Congolese territorial waters that is produced, stored, and delivered in the Congo) "in the United States" for purposes of the FSIA. Walker has made no effort to demonstrate that the royalty obligation is currently located "in the United States" for purposes of the FSIA, and no writ may issue as a result.

4. Walker has failed to disclose that the Fifth Circuit held on rehearing in the *Af-Cap* case that tax obligations owed by CMS Nomeco are immune from garnishment under the FSIA

---

[1] See copies of the declarations filed in Texas litigation that establish these facts, attached hereto as Exhibits G and H.

unless they were used to pay an unrelated debt owed by the Congo to National Union Fire Insurance Company. *See Af-Cap, Inc. v. Republic of Congo*, 389 F.3d at 503. It is undisputed that no tax obligations were so used, and those obligations are not subject to garnishment. Walker's motion does not differentiate between the royalty obligation and other obligations, such as tax obligations, and in fact, in paragraph 3 of the motion, Walker implies that the Fifth Circuit found *all* obligations to fall within an exception to immunity under the FSIA, which is not true.

For the reasons set out in more detail below, Walker's motion should be denied. This is CMS Nomeco's Answering Brief in Opposition to Walker's motion.

## STATEMENT OF FACTS

CMS Nomeco is the current operator of the Marine 1 permit under a Convention dated May 25, 1979 between it and other working interest owners and the Congo ("the Convention").[2] The Convention relates to operations for the exploration and development of oil in waters off the coast of the Congo.

The oil produced under the Convention is produced and transported via a submarine pipeline network to a centralized offshore storage vessel located offshore of the coast of the Congo which is known as the "Conkouati." A "lifting" occurs when oil is offloaded from the Conkouati onto a vessel nominated by the buyer of the oil. Under the terms of Article 7 of the Convention, the Congo is entitled to royalty on volumes lifted and sold. The Congo has elected to take its royalty "in-kind" in Congolese territorial waters.

Pursuant to an agreement memorialized in an Amendment to Lifting Agreement, CMS Nomeco makes liftings of oil stored on the Conkouati for its own account and that of the other private working interest owners and sells 100% of the oil so lifted. CMS Nomeco, as operator, calculates the effect of liftings on the over- or under-delivered position of SNPC (as co-working interest owner) and the Congo (as royalty interest owner), on a barrel basis, and records that effect on an "over/under statement." Once the combined under-delivered position of SNPC and the Congo reaches at least 275,000 barrels, SNPC is entitled to take a lifting of oil for itself and for the Congo. When SNPC takes a lifting, SNPC sells, for its account and for the account of the Congo, all of the barrels that it lifts. The SNPC lifting extinguishes the in-kind royalty obligation, and puts SNPC into an over-delivered position. CMS Nomeco and the other private

---

[2] The facts relating to the relevant agreements and the operations in the Congo thereunder are described in the declaration of Rodrigo Marquez filed in the district court in the *Af-Cap* litigation, a copy of which is attached as Exhibit I. Copies of the agreements referenced herein are attached as exhibits to the Marquez declaration.

working interest owners take future liftings until the combined under-delivered position of SNPC and the Congo again exceeds 275,000 barrels, when SNPC again has the right to take and sell another lifting.

The alleged predecessor-in-interest of Af-Cap, Inc., another judgment creditor of the Congo that is currently represented by the same counsel as Walker, filed a garnishment action in Texas in January 2001, seeking to garnish royalty obligations and taxes owed by CMS Nomeco and other working interest owners under the Convention. That action was removed to the United States District Court for the Western District of Texas. The district court dismissed the action on the grounds that the attempted garnishment violated the FSIA. In September 2004, the Fifth Circuit held that the Foreign Sovereign Immunities Act did not protect the royalty obligations from garnishment, and it remanded the case for further proceedings. *Af-Cap*, 383 F.3d 361, *modified on rehearing*, 389 F.3d 503. Shortly after remand, the district court issued writs of garnishment in favor of Af-Cap. Writs also were issued in other litigation against CMS Nomeco filed by other judgment creditors in federal courts in Houston and Dallas. Although Walker filed a garnishment action against CMS Nomeco in the Western District of Texas (the same court where Af-Cap's garnishment action was pending), Walker did not pursue that garnishment action, and no writs were served.

On December 28, 2004, a court in Point Noire, Congo issued an order compelling CMS Nomeco to deliver oil to the Congo, notwithstanding the writs of garnishment that were then pending in the U.S. court proceedings. A copy of that order is attached hereto as Exhibit A. Under compulsion of that order, SNPC took the Congo's royalty oil on December 28-29, 2004. Two declarations regarding the events leading to the issuance of the Congo court order and the delivery of the oil on December 28-29, 2004, are attached hereto as Exhibits J and K.

On February 4, 2005, the court in the Western District of Texas dismissed Af-Cap's garnishment action, holding that the royalty obligations of CMS Nomeco and the other working interest owners to the Congo were non-monetary obligations that were not subject to garnishment under Texas law. Copies of the opinion holding that the royalty obligations were not subject to garnishment and the final judgment dismissing the garnishment action are attached as Exhibits D and E respectively. Af-Cap appealed the dismissal, and that appeal is pending in the Fifth Circuit Court of Appeals. No stay of the dismissal has been granted.

In separate proceedings to which CMS Nomeco was not a party, the court in the Western District of Texas entered turnover orders against the Congo in favor of Af-Cap and Walker, ordering the Congo to sign instruction letters directed to CMS Nomeco and the other working interest owners under the Convention, first in favor of Af-Cap and subsequently in favor of Walker. Under the instruction letters the Congo was ordered to sign, the Congo would have (1) elected to take royalty in cash, and (2) directed CMS Nomeco and the other working interest owners to pay the cash royalty into the registry of the Western District of Texas. The Congo refused to sign the instruction letters and sent a letter to the district court explaining its reasons for that refusal. A copy of the Congo's letter is attached hereto as Exhibit L.

Subsequently, the district court in the Western District of Texas issued orders under Rule 70 of the Federal Rules of Civil Procedure, directing the clerk of the Court to sign the instruction letters on behalf of the Congo and to send them to Mr. Guy Lipe, the attorney who had represented CMS Nomeco and the other working interest owners in the garnishment action that had been dismissed in February 2005. The letters were not sent by the clerk to any representative of CMS Nomeco authorized to receive royalty elections or other notices under the Convention.

On July 4, 2005, a Congo court in Point Noire, Congo issued an order against CMS Nomeco holding that under Congolese law, royalty oil could not be subject to attachment and that the turnover orders of the Texas federal court and other U.S. court orders in proceedings by judgment creditors of the Congo relating to the royalty oil violated the Congo public order and were not enforceable in the Congo. The Congo court held that CMS Nomeco was obligated to deliver royalty oil to the Congo, notwithstanding the U.S. court proceedings and orders in those proceedings. A true and correct copy of the Congo court's July 4, 2005 Order is attached as Exhibit B.

On July 11, 2005, Af-Cap and Walker filed a lawsuit against CMS Nomeco in Delaware Chancery Court, claiming that CMS Nomeco had violated the instruction letters by failing to pay royalty into the registry of the Court in the Western District of Texas. On July 21, 2005, Af-Cap filed a motion for issuance of a show cause order against CMS Nomeco and the other working interest owners with the Texas federal court, claiming that their failure to pay royalty in cash into the registry of the court on July 20, 2005 (the date Af-Cap contended to be the first royalty payment date following the effective date set out in the instruction letter in the *Af-Cap* case) violated the Court's turnover order and instruction letter and was a contempt of court.

On July 26, 2005, the court in the Western District of Texas denied Af-Cap's motion for a show cause order, finding that the turnover orders were not court orders directed to CMS Nomeco and could not adjudicate the substantive rights and obligations of CMS Nomeco under the Convention. A true and correct copy of the July 26, 2005 Order is attached as Exhibit M. Af-Cap subsequently filed a motion seeking issuance of new writs against CMS Nomeco, which was denied by the court in the Western District of Texas, by Order dated August 17, 2005. A copy of that Order is attached as Exhibit F.

Approximately two weeks later, Af-Cap and Walker initiated separate actions in Delaware seeking issuance of new writs directed to CMS Nomeco, with Af-Cap filing in state court and Walker filing in this Court.

## ARGUMENT

**A.     The Congo Court Orders Compelling CMS Nomeco to Deliver Royalty Oil in the Congo, Notwithstanding Writs of Garnishment Issued In U.S. Litigation, Preclude Issuance of the Writ that Walker Seeks**

*1.     Under this Court's Decision in LNC Investments v. Nicaragua, No Writ Should Issue Because the Court Cannot Protect CMS Nomeco From Double Liability*

A Congo court, in December 2004 and again in July 2005, has held that garnishment writs issued in proceedings filed by judgment creditors of the Congo in U.S. courts are not enforceable under Congolese law and do not relieve CMS Nomeco of its obligation to deliver royalty oil to the Congo under the Convention.  Copies of those orders are attached hereto as Exhibits A and B.  Although Walker did not disclose the existence of these orders to this Court, it must concede that by virtue of the Congo court orders, CMS Nomeco has no choice but to deliver royalty oil to the Congo in Congolese territory.  By asking this Court to issue a new writ against CMS Nomeco, Walker is attempting to impose double liability on CMS Nomeco for the royalty obligation.  This Court has expressly held that under Delaware law, garnishment is not appropriate in such circumstances.

On December 18, 2002, in *LNC Investments, Inc. v. The Republic of Nicaragua,* No. 01-134-JJF (D. Del. 2002) (unpublished decision), *appeal dism'd,* 396 F.3d 342 (3d Cir. 2005), this Court analyzed the propriety of enforcing a writ of garnishment in a case involving an attempt by a creditor, LNC Investments, to recover a debt owed by a foreign sovereign, the Republic of Nicaragua ("Nicaragua"), by serving a writ of attachment on Megatel, a garnishee indebted to Nicaragua.[3]  Concluding that Nicaraguan law would not recognize the garnishment writs as a defense to Megatel's payment obligation to the Nicaraguan government, and based on Megatel's

---

[3] The order granting Megatel's Motion to Quash the Writ of Attachment is attached hereto as Exhibit C.

exposure to double liability, the court issued an order granting the motion to quash. *Id.* This Court applied authorities from another jurisdiction involving comparable circumstances holding that writs of garnishment cannot be enforced in such circumstances. *See Weitzel v. Weitzel*, 27 Ariz. 117, 230 P. 1106 (Ariz. 1924) (court upheld the dissolution of writs of garnishment of debts owed in a foreign country because the writs would not be recognized as a defense to performance of the obligations in the foreign country); *West v. Baker*, 510 P.2d 731, 734 (Ariz. 1973) (dissolution of the writs of garnishment is proper when the court "cannot insure that [garnishees] will not incur double liability").

Walker's motion does not disclose the existence of the Congo court orders or make any argument that CMS Nomeco can be protected from double liability. Under the authority of this Court's decision in *LNC Investments v. Nicaragua*, no writ should issue, and Walker's motion should be denied.[4]

2.    *Under the Doctrine of "Foreign State Compulsion," This Court Should Not Issue a Writ that Conflicts with Congo Court Orders Compelling Delivery of Oil in the Congo*

Under the doctrine of "foreign state compulsion" recognized in Section 441 of the Restatement (Third) of Foreign Relations Law of the United States ("Restatement Section 441"), preference among conflicting commands of the courts of different nations is accorded to the orders of the nation in which the act is to be done or not to be done. In this case, such preference

---

[4] In one of the garnishment cases pending in Texas involving another judgment creditor of the Congo, *FG Hemisphere Associates L.L.C v. Republique du Congo.*, Case No. H-02-4261, in the United States District Court for the Southern District of Texas, the court recently signed an order allowing issuance of new writs of garnishment directed to CMS Nomeco and other working interest owners. A copy of the Order that authorized issuance of writs is attached hereto as Exhibit N. The legal arguments presented in this Response, including the double liability point, were also presented to the district court in the *FG Hemisphere* case, and the district court nevertheless authorized the issuance of new writs, without expressly addressing any of the arguments in its Order. CMS Nomeco respectfully submits that the court in the *FG Hemisphere* case erred in issuing new writs against CMS Nomeco and the other working interest owners, for all of the reasons set out herein.

must be given to the Congo court orders since the oil is produced, stored, and delivered in Congo, and no writ should issue.

Subsection (1)(b) of the Restatement Section 441 states, in pertinent part: "In general, a state may not require a person . . . to refrain from doing an act in another state that is required by the law of that state." Comment a to this section states:

> This section applies . . . to protect persons caught between conflicting commands. In determining preference between conflicting exercises of jurisdiction to prescribe, this section generally accords preference to the state in which the act is to be done (or is not to be done).

Restatement Section 441, comment a.

These principles were applied on facts indistinguishable from those presented in this case in *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995). In that case, a federal district court granted a temporary restraining order enjoining a Luxembourg bank from transferring funds of the defendant which were in the bank's hands. The defendant sought and obtained an order from a Luxembourg court that instructed the bank to release the funds to the defendant because the U.S. order was not legally valid in Luxembourg, as it had not been registered there. The bank then released the funds. The federal district court that had issued the temporary restraining order against the bank then found the bank in contempt for delivering the funds to the defendant, but the Ninth Circuit reversed. The Ninth Circuit relied on Restatement Section 441 in concluding that the bank was entitled to comply with the Luxembourg court order notwithstanding the temporary restraining order entered by the U.S. court, stating that "it would defy logic were we to decide that the district court could hold [the bank] in contempt for complying with the order of the Luxembourg court," and that the bank "was under no obligation to comply" with the temporary restraining order. 49 F.3d at 1392-1393.

Under the authority of Section 441 of the Restatement and *Reebok*, the doctrine of foreign state compulsion precludes the issuance of new writs of garnishment.

3.    *Under the Act of State Doctrine, This Court Should Not Issue the Writ*

In *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897), the United States Supreme Court said:

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts in one country will not sit in judgment on the acts of the government of another, done within its own territory.  Redress of grievance by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

This principle, known as the "act of state" doctrine, reflects "'the strong sense of the judicial branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." *W.S. Kirkpatrick & Co. v. Evntl. Tectonics Corp., Int'l*, 493 U.S. 400, 404 (1990) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964)).

If this Court were to issue writs in this case, it necessarily would be required to sit in judgment of the conduct of the Congo and its courts within the Congo's own territory in compelling Garnishees to deliver oil to SNPC in Congolese waters by issuing garnishment writs in conflict with the Congo court orders.    Authorization of issuance of writs in these circumstances would violate the act of state doctrine.

The correctness of this conclusion is illustrated by the decision of the Ninth Circuit Court of Appeals in *Philippine National Bank v. United States District Court*, 397 F.3d 768 (9th Cir. 2005).  The federal district court in Hawaii had entered an injunction prohibiting transfer of assets of the Estate of Ferdinand Marcos.  Subsequently, the Philippine Supreme Court entered an order that required that certain funds of the estate that were held by the Philippine National

Bank be forfeited to the Republic of the Philippines. The bank transferred the assets in compliance with the order of the Philippine Supreme Court. The district court in Hawaii then entered a show cause order requiring that the Philippine National Bank show cause why it was not in contempt of the earlier injunction that enjoined transfers of assets of the estate. Prior to the show cause hearing, the Philippine National Bank filed a petition for writ of mandamus with the Ninth Circuit, seeking to restrain the district court from enforcing its show cause order on the grounds that the order violated the act of state doctrine. The Ninth Circuit granted the petition, vacated the show cause order, and directed the district court to refrain from further action against the Philippine National Bank or the funds that were the subject of the Philippine Supreme Court's order. *Id.* at 772-775. The Ninth Circuit reasoned that because the Philippine Supreme Court's order was obtained at the request of the Philippine government in furtherance of governmental interests, the act of state doctrine prevented the district court from holding the bank in contempt for transferring the funds in compliance with the Philippine Supreme Court's order. *Id.*

The same rationale applies in this case. The Congo court orders were the result of applications filed with the Congolese court by the Congo, to obtain delivery of oil produced in the Congo's territorial waters. The Congo's rights in its natural resources are sovereign in nature because they are "'affected with the public interest,'" and "'goods in which only the sovereign may deal.'" *See World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 578 (7th Cir.1989); accord *California v. NRG Energy*, 2004 WL 2808555 (9th Cir. Dec. 8, 2004). The Congo court orders were obtained in furtherance of the Congo's sovereign interests, and under the rationale of the *Philippine National Bank* case, the act of state doctrine precludes

-15-

an order authorizing issuance of writs of garnishment directed to the obligation to deliver oil to the Congo.

The *Philippine National Bank* case demonstrates that the application of the act of state doctrine is not limited to claims against the foreign state itself. The Ninth Circuit held that the Philippine National Bank, the party subject to compulsion of an order of the Philippine court, was entitled to assert the protection of the act of state doctrine. In the same vein, the court in *Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597, 606 (9th Cir. 1976), said in the context of an antitrust case that "corporate conduct which is compelled by a foreign sovereign is also protected from antitrust liability, as if it were an act of the state itself." The Ninth Circuit quoted this Court's decision in *Interamerican Refining Corp v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291, 1298 (D. Del 1970), for the proposition that "when a nation compels a trade practice, firms there have no choice but to obey. Acts of business become effectively acts of the sovereign." 549 F.2d at 606.

Under *Philippine National Bank* and the act of state doctrine as applied therein, this Court should deny Walker's request for a writ.

**B.      The Writ Should Not Issue Because, as Held by the Western District of Texas, Only Monetary Obligations Are Subject to Garnishment**

In his February 4, 2005 Order in the *Af-Cap* case attached hereto as Exhibit D, Judge Sparks of the Western District of Texas granted CMS Nomeco's motion for summary judgment with regard to writs of garnishment issued in the *Af-Cap* case in connection with the same royalty obligations that Walker seeks to garnish in this case. Judge Sparks held that under Texas garnishment law, "only debts in money are subject to garnishment, . . .Texas garnishment law does not authorize the garnishment of a non-monetary obligation, . . . [and] the Garnishees' obligations to deliver oil to the Congo are not garnishable as debts under Texas law." Judge

Sparks cited with approval the decision of the Alabama Supreme Court in *Jones's Adm'r v. Crews*, 64 Ala. 368 (1879), which interpreted Alabama garnishment statutes as providing for garnishment only of monetary obligations and concluded that it would be unfair to compel a garnishee who agreed only to deliver goods to instead make a payment in money. Exhibit D at 14; *Jone's Adm'r*, 64 Ala. at 374. Judge Sparks's decision is consistent with the generally recognized rule that "[i]n the absence of specific statutory sanction, obligations other than for the payment of money are generally not subject to garnishment prior to a default which gives the debtor a cause of action for money." 38 C.J.S. *Garnishment* §105.

Because non-monetary obligations are not subject to garnishment, no new writs should issue in this case.[5]

## C.    Walker Has Failed to Demonstrate that Royalty Obligations Sought to be Garnished Are Currently "in the United States" as Required by the FSIA

Before a writ may issue, this Court must first determine that the property of the Congo that is sought to be attached meets the requirements of an exception to immunity under the FSIA. Under Section 1610(c) of the FSIA, each exception to immunity applies only to property that is located "in the United States" and "used for commercial activity in the United States." *Connecticut Bank of Commerce v. Republic of Congo*, 390 F.3d 240, 247 (5th Cir. 2002). The Fifth Circuit held in *Connecticut Bank* that under the FSIA, a clerk may not issue a writ of garnishment or other process against the property of a foreign state; instead, a district court must first make a determination that the property sought to be garnished falls within an exception to immunity before it issues writs of garnishment. *Id.* Although the Fifth Circuit determined in *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, *modified on rehearing*, 389 F.3d 503, *cert. denied*

---

[5] The district court in the *FG Hemisphere* case has disagreed with Judge Sparks' analysis, denying (without opinion or explanation) a similar motion for summary judgment filed in that case.

-17-

125 S. Ct. 1735 (2005), that the royalty obligations owed by CMS Nomeco to the Congo in early 2003 were used for commercial activity in the United States and were located "in the United States" for purposes of the FSIA exceptions to immunity, that determination was based on the Court's conclusion that CMS Nomeco at that time was "formed and headquartered" in the United States, and the situs of its obligations to the Congo were appropriately sited there. 383 F.3d at 372-373. As previously explained, for reasons totally unrelated to the garnishment claims, CMS Nomeco has ceased to be headquartered in the United States. Walker has made no showing that the royalty obligations sought to be garnished are *currently* located in the United States, as required by the FSIA.

Established principles of in-rem jurisdiction mandate that the determination of the location of property on which execution is sought must be made at the time the writ is issued. A "garnishment or foreign attachment is a proceeding quasi in rem . . . [in which] [t]he thing belonging to the absent defendant is seized and applied to the satisfaction of his obligation." *McLaughlin v. Bahre*, 35 Del. 446, 166 A. 800, 803 (1933). "The seizure of property, or that which . . . is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction." *Id.* at 804 (quoting *Cooper v. Reynolds*, 77 U.S. 308, 319 (1870)). Thus, if the property is not present within the jurisdiction of the court at the time of issuance and service of the writ, the court is without jurisdiction. *Cooper*, 77 U.S. at 319.

The same approach is appropriate in applying the FSIA's "in the United States" requirement for exceptions to execution immunity under Section 1610(a). Just as a court's in rem jurisdiction to seize property depends on the location of the property at the time it is "seized" by service of writs issued by the court (not at the time of filing of an application), the court's authority to execute on a foreign state's property under the FSIA's "in the United States"

-18-

requirement should depend on the property being "in the United States" at the time of service of the writs. It is the exercise of judicial power in seizing the property of a foreign state that has the potential to interfere with the United States government's foreign relations with foreign nations, and the exercise of that judicial power occurs when the writs are issued and served, not before.

If the property is not located in the United States at the time of its "seizure" by a U.S. court through issuance and service of writs, the writs are not authorized under the FSIA. Such a seizure at a point in time when the property is located outside the United States would constitute an extraterritorial exercise of jurisdiction that is inconsistent with Congress' intent to limit the courts' exercise of such power to the territorial jurisdiction of the United States. *Cf. Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989) (holding that the term "in the United States" for purposes of the non-commercial tort exception to immunity from suit in Section 1605(a)(5) of the FSIA refers to the geographical area that is "within the territorial jurisdiction of the United States" and that the statutory language conferring jurisdiction over claims against foreign states for damage to property occurring "in the United States" did not evince a legislative intent that the provision apply to property damaged by foreign states outside of U.S. territorial jurisdiction).

In the Fifth Circuit's *Af-Cap* decision, the Court applied the state law rule that "the situs of the debt is the situs of the debtor" in determining whether the royalty obligations at issue in that case were located "in the United States." 383 F.3d at 371-372. The question with regard to the newly requested writ, which was not answered in *Af-Cap*, is whether any royalty obligations owed by CMS Nomeco to the Congo currently are located in the United States. There is no basis for an affirmative answer to that question.

CMS Nomeco's only current connection to the United States is its incorporation in Delaware. *Af-Cap* does not stand for the proposition that mere incorporation in the United States of a debtor of a foreign state renders the debt owed to the foreign state "in the United States" for purposes of the FSIA. The Court in *Af-Cap* emphasized that at the point in time relevant to the determination of that appeal, the Garnishees were "headquartered" in the United States. 383 F.3d at 372-373. *Af-Cap* did not hold, and it does not require a holding in this case, that a foreign state's debtor that has no business activities in the United States, that has its principal place of business in the foreign state, and that incurs its debt to the foreign state based on activities undertaken within the territory of the foreign state, has its "situs" in the United States for purposes of the FSIA, merely by virtue of its incorporation in Delaware. Considering the totality of the circumstances that existed in October 2004, Garnishees do not have their "situs" in the United States for purposes of the FSIA.

Furthermore, any argument that the situs of a debt can be in multiple locations for purposes of the FSIA is inconsistent with the decisions in *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1122 (5th Cir. 1985) and *Tabacalara Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 714-15 (5th Cir. 1968). Those cases require that the court discern the "true situs" of intangible property where an "overriding national concern" is implicated. There is no basis for concluding that the true situs of the obligations of CMS Nomeco is in Delaware based solely on its incorporation there, when (1) its principal place of business is in the Congo, (2) the activities giving rise to the obligations to the Congo take place in the Congo, (3) it engages in no business activities in Delaware or anywhere else in the United States, and (4) it has no physical offices or personnel there.

Though *Callejo* and *Tabacalara* were act of state cases (rather than FSIA cases), that is no valid distinction. In *Callejo*, the Court acknowledged the interrelated policies of foreign sovereign immunity and the act of state doctrine, both of which limit "'involvement of the courts'" that "'might frustrate the conduct of the Nation's foreign policy.'" *Callejo*, 764 F.2d at 1113 (quoting *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 769 (1972)). As a result, the Fifth Circuit noted that courts "traverse much of the same path" in their respective application of the FSIA and the act of state doctrine and "focus…on preventing friction with coequal sovereigns." *Callejo*, 764 F.2d at 1113.

Consistent with *Callejo*, a rule that allows more than one situs of a foreign state's property for purposes of Section 1610(a) implicates the same foreign relations issues that underlie the act of state doctrine. Just as the act of state doctrine requires that the U.S. courts not attempt to adjudicate the actions of a foreign state within its own territory, Section 1610(a) of the FSIA requires that U.S. courts not interfere with a foreign state's exercise of its property rights within its own borders. A "multiple situs" rule that allows a U.S. court to seize property that has a situs in the foreign state's territory would permit the very type of interference that the "in the United States" requirement of the FSIA is designed to prevent.

A "common sense appraisal of the requirements of justice and convenience in this particular context," *Af-Cap*, 383 F.3d at 371, compels the conclusion that the "true situs" of any obligations owed by CMS Nomeco that would be the subject of the writ requested by Walker is in the Congo, not the United States, and the issuance of the writs would violated Section 1610(a) and (c) of the FSIA.

**D.    Even if the FSIA Requirements Were Met with Regard to the Royalty, There is no Basis for Any Contention that Tax Obligations Fall Within An Exception to Immunity Under the FSIA**

In paragraph 3 of its motion, Walker implies that the Fifth Circuit held in *Af-Cap* that *all* obligations of CMS Nomeco to the Congo fall within an exception to immunity under the FSIA. That is not true. The Fifth Circuit expressly held on rehearing that tax obligations would have no protection under the FSIA only if shown to have been used to pay National Union Fire Insurance Company in connection with a prior and unrelated debt owed by the Congo. 389 F.3d at 503. It was the prior use of royalty to pay National Union on which the Fifth Circuit predicated its finding that the royalty obligation had been used for commercial activity in the United States, for purposes of the FSIA. It is undisputed that tax obligations to the Congo were not used to pay National Union, and there is no basis for any contention that a writ would be appropriate with regard to tax obligations. Under *Connecticut Bank*, no writ may issue with regard to the tax obligations, absent a showing that the tax obligations are both in the United States and used for commercial activity in the United States. In recognition of these principles, no garnishor is attempting to pursue tax obligations in the Texas proceedings. Walker is likewise not entitled to pursue them.

## CONCLUSION

For the reasons set out above, CMS Nomeco respectfully requests that the Court deny Walker's motion for issuance of a writ of attachment directed to CMS Nomeco. CMS Nomeco also seeks such other and further relief to which it may be justly entitled.

Respectfully submitted,

/s/ M. Duncan Grant

OF COUNSEL:

Guy S. Lipe
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002-6760
(713) 758-2222

Dated: September 30, 2005

M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for CMS Nomeco Congo LLC