UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALKER INTERNATIONAL HOLDINGS LIMITED<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC OF THE CONGO<br><br>Defendants | :<br>:<br>:<br>:<br>:  Case Number 1:05-mc-156 (SLR)<br>:<br>:<br>: |

**WALKER INTERNATIONAL HOLDINGS LIMITED'S
REPLY TO NON-PARTY CMS NOMECO CONGO, INC.'S
ANSWERING BRIEF IN OPPOSITION TO ITS MOTION FOR
ISSUANCE OF WRITS OF ATTACHMENT *FIERI FACIAS***

GREENBERG TRAURIG LLP
Sanford M. Saunders, Jr.
Kenneth P. Kaplan
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 200006
(202) 331-3100

*Attorneys for Walker International
Holdings Limited*

GREENBERG TRAURIG LLP
Paul D. Brown (No. 3903)
Joseph B. Cicero (No. 4388)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
(302) 661-7000

*Attorneys for Walker International
Holdings Limited*

Dated: October 7, 2005

## TABLE OF CONTENTS

Page

INTRODUCTION..........................................................................................................1

ARGUMENT...............................................................................................................2

 I. THE COURT SHOULD STRIKE THE ANSWERING BRIEF.............2

 II. CMS IS COLLATERALLY ESTOPPED FROM RAISING IDENTICAL ISSUES ALREADY FULLY LITIGATED AND RESOLVED IN OTHER COURTS.................................................3

  A. The Situs of the Debt Question Has Been Resolved Against CMS.......................................................................4

  B. CMS Is Barred From Arguing that an Intangible Obligation is Not Subject to Garnishment.........................................5

  C. CMS is barred from Arguing that the Act of State Doctrine Applies.......................................................................7

 III. CMS' "FOREIGN STATE COMPULSION" AND "DOUBLE LIABILITY" ARGUMENTS FAIL..............................................8

  A. The "Foreign State Compulsion Doctrine" Does Not Apply.........8

  B. CMS' "Double Liability" Argument Should Be Rejected..........10

 IV. WALKER SATISFIES ITS BURDEN UNDER FSIA SECTION 1610(C)......................................................................11

CONCLUSION.........................................................................................................12

...

# TABLE OF AUTHORITIES

Page

## CASES

*Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, *modified* 389 F.3d 503 (5th Cir. 2004) *cert. denied* 125 S. Ct. 1735 (2005).................................................................................4

*Board of Trustees v. Centra*, 983 F.2d 495 (3d Cir. 1995)...............................................3

*Dangelo v. Petroleos Mexicanos*, 378 F. Supp. 1034 (D. Del. 1977).........................5, 7

*Forest Prods. Co. v. Magistrelli (Astell & Beeman, Inc. Garnishee)*, 14 A.2d 397,
    (Del. Super. Ct. 1940)..................................................................................................5

*Goldberg v. Tarpey*, 419 A.2d 932 (Del. 1990).................................................................2

*Hilton v. Guyot*, 159 U.S. 113 (1895).............................................................................10

*John E. Smith's & Sons Co. v. Lattimore Foundry & Mach. Co.*, 239 F.2d 815
    (3d Cir. 1956)...............................................................................................................3

*LNC Investment, Inc. v. The Republic of Nicaragua*, No. 01-134-JJF
    (D. Del. Dec. 18, 2002)........................................................................................10, 11

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004)............................................9

*Netter Bros. v. Stoeckle*, 56 A. 604 (Del. Super. Ct. 1903)..............................................4

*Parker, Peebles & Know v. Nat'l Fire Ins. Co.*, 150 A. 313 (Conn. 1930)....................11

*Weinress v. Bland*, 71 A.2d 59 (Del. Ch. 1950)...............................................................5

*Weitzel v. Weitzel*, 27 Ariz. 117 (Ariz. 1924)................................................................10

*West v. Baker*, 510 P.2d 710, 734 (Ariz. 1973).............................................................10

*Wilmington Trust Co. v. Barron*, 470 A.2d 257 (Del. 1983)...........................................7

## STATUTES

28 U.S.C. § 1608(e)..........................................................................................................11

28 U.S.C. § 1610(c)..........................................................................................................11

## RULES

| | Page |
|---|---|
| Delaware Local Rule 7.1.2 | 2 |
| Fed. R. Civ. P. 12(f) | 2 |

Pursuant to Delaware Local Rule 7.1.2, plaintiff, Walker International Holdings Limited ("Walker") submits this reply to non-party CMS Nomeco Congo, Inc. -- now CMS Nomeco Congo, LLC's -- Answering Brief in Opposition to Plaintiff's Motion for Issuance of Writ of Attachment *Fieri Facias* ("Answering Brief").

## INTRODUCTION

The action before the Court is Walker's simple request for a writ under the Foreign Sovereign Immunities Act ("FSIA") (28 U.S.C. §§ 1602-1611) against property belonging to its judgment debtor, Republic of Congo ("Congo"), which has been held subject to attachment in the United States wherever the debt is located. The narrow issue for review before the Court is whether Walker satisfies Section 1610(c) of FSIA. Section 1610(c) of FSIA requires the Court review Plaintiff's Motion for Issuance of Writ of *Attachment Fieri Facias* ("Motion for Writ") to verify that its judgment debtor, Congo, has been served and that a reasonable period of time has passed since the entry of judgment. *See* 28 U.S.C. 1610(c). Congo, the real party in interest, has not opposed Walker's request. As demonstrated in the Motion for Writ, there is no dispute that Walker satisfies the FSIA section 1610(c) requirements and, accordingly, the Court should enter an order granting Walker's request. (*See* D.I. 5).

CMS Nomeco Congo, Inc. -- now CMS Nomeco Congo, LLC ("CMS") -- is a Delaware entity obligated to Congo under an Oil Convention to pay Congo oil royalties on a regular basis. CMS and Congo have worked tirelessly together during the last four years to shield Congo's asset from its creditors. In the current posture of this action, CMS is not a party, but a potential garnishee. CMS' lengthy filing is a last-ditch attempt to frustrate Walker's enforcement efforts even though it lacks standing to oppose the

issuance of the writ and the majority of issues raised in the Answering Brief have been fully and fairly litigated and resolved against CMS.[1] As demonstrated below, CMS' pleading constitutes a premature attack on Walker's writ against Congo's property and is substantively flawed because it utilizes arguments that CMS is collaterally estopped from re-litigating.

## ARGUMENT

I. **THE COURT SHOULD STRIKE THE ANSWERING BRIEF**

CMS is not presently a party to this action and lacks either Article III or representational standing to oppose Walker's Motion for Writ. *See e.g. Goldberg v. Tarpey*, 419 A.2d 932, 934 (Del. 1990) (stating under general law, a garnishee has standing to raise defects in a Motion to Quash); *see also e.g.* Del. Super. Ct. R. 5(a) (garnishee only appears once summoned via a mense writ of attachment or execution process). Walker's request arises in an action against its judgment debtor, Congo and is aimed at property belonging to Congo. CMS' property is not in issue and, thus, it has no justiciable claim. At this stage, CMS is a potential garnishee and is not a party to this proceeding. In addition, the Answering Brief was filed more than two weeks late, and was filed without leave of Court. CMS essentially exercised self-help in filing its late response while its motion for extension of time to respond to the Motion for Writ was pending. The Answering Brief is an improper pleading filed by a non-party more than two weeks after the ten-day filing deadline under Delaware Local Rule 7.1.2(a)(2) and is immaterial and impertinent to the narrow issue before the Court. *See* Fed. R. Civ. P. 12(f) (striking is appropriate where pleading is immaterial or impertinent). *See c.f. John*

---

[1] CMS is correct that the Fifth Circuit modified its *Af-Cap* opinion to exclude from garnishment taxes paid by CMS to Congo. To the extent CMS construed Walker's request to seek a writ against its tax obligations to Congo, Walker states expressly that it does not seek to garnish the tax obligation.

*E. Smith's & Sons Co. v. Lattimore Foundry & Mach. Co.*, 239 F.2d 815, 818 (3d Cir. 1956) (striking untimely motion for new trial). Accordingly, the Answering Brief should be struck.

## II. CMS IS COLLATERALLY ESTOPPED FROM RAISING IDENTICAL ISSUES ALREADY FULLY LITIGATED AND RESOLVED IN OTHER COURTS

CMS criticizes Walker repeatedly for allegedly not disclosing "critical facts" to the Court. (*See e.g.* CMS Br. at 2-5, 11, 12). CMS criticism is unfounded and is disingenuous in light of CMS' failure to acknowledge that the doctrine of collateral estoppel bars it from raising the bulk of its arguments. The doctrine of collateral estoppel precludes a litigant from re-litigating issues when the identical issue has already been fully litigated. *See Board of Trustees v. Centra*, 983 F.2d 495, 505-506 (3d Cir. 1995). A litigant is collaterally estopped when:

> (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Id.* at 505 (citing *Temple Univ. v. White*, 941 F.2d 201, 212 (3d Cir. 1991) *cert. denied* 502 U.S. 1032 (1992)). Here, collateral estoppel operates to bar CMS' arguments that: (1) the oil royalty obligation is not subject to garnishment (CMS Br. at 17); (2) the "Act of State Doctrine" applies to this case and bars Walker's request (CMS Br. at 14); (3) CMS is allegedly subject to "double liability" based upon Congolese court orders (CMS Br. at 11); and (4) the "Doctrine of 'Foreign State Compulsion'" bars issuance of the Writs (CMS Br. at 12).

A.   **The Situs of the Debt Question Has Been Resolved Against CMS**

In prior litigation, CMS and Congo have jointly litigated and lost the argument that the royalty obligation at issue in this case is not subject to garnishment. *See Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, 370 *modified* 389 F.3d 503 (5th Cir. 2004) *cert. denied* 125 S. Ct. 1735 (2005). Nevertheless, CMS contends that Walker is not entitled to a garnishment writ against the royalty obligation because the obligation is not currently subject to attachment in the United States. (*See* CMS Br. at 17-18). However, in *Af-Cap*, the Fifth Circuit held that the exact royalty obligation owed by CMS to Congo at issue in this case was in the United States, used for "commercial activity", and subject to attachment by Congo's creditor, Af-Cap, to satisfy its judgment. 383 F.3d at 370. Further, the Fifth Circuit found that the royalty obligation is subject to attachment wherever the debtor is located. *Id.* at 371 (citing *U.S. Indus. Inc. v. Gregg*, 540 F.2d 142, 151 n. 5 3d Cir. 1976). Thus, the *Af-Cap* precedent demonstrates both that the oil royalty obligation is subject to attachment in the United States and that the situs of debt is where the debtor is located. *Id.*

CMS ignores that it is precluded from reasserting this argument and instead contends that the Fifth Circuit's decision was rendered under Texas law. This assertion is both incorrect and irrelevant. CMS is incorrect as a matter of law because under FSIA determinations of the federal and state courts concerning foreign sovereign immunity are matters of federal law. *See* 28 U.S.C. § 1602. CMS' view is irrelevant because even if the determination of the Fifth Circuit was specific to Texas, its holding on the situs of the debt is consistent with longstanding Delaware law. *See e.g. Netter Bros. v. Stoeckle*, 56 A. 604 (Del. Super. Ct. 1903) (holding judgment creditor has jurisdiction over a

garnishee as long as garnishee is subject to suit in Delaware); *Weinress v. Bland*, 71 A.2d 59, 64 (Del. Ch. 1950) (holding Delaware has jurisdiction to garnish debt where debtor is subject to process in Delaware); *Forest Prods. Co. v. Magistrelli (Astell & Beeman, Inc. Garnishee)*, 14 A.2d 397, 400 (Del. Super. Ct. 1940) (finding situs of the debt is where debtor is located where business conducted in State). In addition, in *Dangelo v. Petroleos Mexicanos* the United States District Court for the District of Delaware held Mobil Oil Corporation responsible for an intangible debt, and oil royalty, that it owed to an agency and instrumentality of the Mexican government based upon Mobil being qualified to do business in Delaware. 378 F. Supp. 1034, 1038-39 (D. Del. 1977).

CMS cannot deny that it is qualified to do business in Delaware. It also cannot deny that it contests jurisdiction in Texas because it claims to have relocated its headquarters while Walker's and other creditors' actions were pending in Texas and before the Fifth Circuit. Indeed, the Southern District of Texas has enjoined CMS from initiating another intra-corporate transaction that it admitted was designed to remove the asset that Walker seeks to attach in this action outside the United States.[2] CMS is on the run, but they cannot escape jurisdiction in Delaware. Both the Fifth Circuit's decision in *Af-Cap* and Delaware case law permit attachment against Congo's asset held by CMS in Delaware and, thus, the Court should grant Walker's Motion for Writ.

B. **CMS Is Barred From Arguing that an Intangible Obligation is Not Subject to Garnishment**

CMS contends that this Court should not issue a writ of garnishment to Walker because the United States District Court for the Western District of Texas ("Western District of Texas") has held that under Texas law only monetized debts are subject to

---

[2] Walker has separately sued CMS for this apparent fraudulent transaction in the Delaware Court of Chancery.

garnishment. (*See* CMS Br. at 16). CMS' argument concerning the precedential value of Texas garnishment law is inconsistent with its view concerning the use of Texas authority on the situs of the debt question. (*Compare* CMS Br. at 16 (arguing that the Western District of Texas's determination on propriety of garnishment under Texas law controls) *with* CMS Br. at 19 (questioning use of Texas situs of the debt state law rule)). The inconsistency further displays CMS' willingness to make any argument in their attempt to derail Walker's, and other creditor, enforcement actions.

In addition, CMS is barred from re-litigating this issue because the Fifth Circuit resolved the issue against CMS when it found that the oil royalty, an intangible obligation, is subject to garnishment. *See Af-Cap, Inc.*, 383 F.3d at 371-372 (discussing the situs of an intangible obligation for purposes of garnishment). The Western District of Texas failed to apply the Fifth Circuit's mandate and that decision is on appeal to the Fifth Circuit. In the meantime, the United States District Court for the Southern District of Texas has already cast doubt on the Western District's decision because when it analyzed the same facts that were before the Western District, and that are also before this Court, the Southern District of Texas concluded that writs of garnishment were a proper procedural vehicle to attach the intangible asset and issued writs to another creditor of Congo over the same objections that CMS lodges in this proceeding.[3] (*See* CMS Br. at n. 4). Also, the royalty obligation between Congo and CMS has been converted to an in-cash payment stream based upon a Letter of Instruction signed on behalf of Congo by the Western District of Texas and served upon CMS. The Court

---

[3] In addition, the Superior Court of Delaware analyzed virtually identical facts and on September 30, 2005 issued a writ of garnishment against the intangible obligation between CMS and Congo. Similarly, the Northern District of California has previously issued writs under virtually the same facts to another of Congo's creditors against other garnishees. So too, this Court should follow.

ordered that the Clerk of Court sign and serve the letter because Congo failed to do so and was found in contempt. Thus, the royalty obligation that Walker seeks here has been monetized, which resolves the unfounded concerns of the Western District of Texas and CMS' argument against garnishment.

Moreover, even if CMS was not barred from arguing that a writs is not appropriate in this case, its argument is irrelevant because under Delaware law there is no question that an intangible obligation, specifically including an oil royalty obligation, is subject to garnishment. It has long been the case in Delaware that garnishors may execute upon defendant's/judgment debtor's property which is in the possession of a third party. *See Wilmington Trust Co. v. Barron*, 470 A.2d 257, 262 (Del. 1983) (citing 2 V. Woolley, Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware § 1152 (1906)). The items subject to execution include goods, and intangible property such as rights and credits. *Id* (citing Del Code Ann. tit. 10, § 5031 – Execution on Attachment). In addition, the *Dangelo* case cited above directly addresses the issue at bar, and holds that a creditor is entitled to attach an intangible obligation to pay oil royalties to a foreign government's agency and instrumentality. *See Dangelo*, 378 F. Supp. 1034, 1038-39 (Steel, J.). Thus, CMS' argument, even if not barred or irrelevant, is contrary to Delaware law, which expressly provides for the garnishment of an oil royalty obligation between a Delaware qualified corporation and foreign agency and instrumentality.

C. **CMS is barred from Arguing that the Act of State Doctrine Applies**

CMS contends that the act of state doctrine prohibits the Court from issuing the requested writ. (*See* CMS Br. at 14-16). CMS is barred from raising the act of state

7

doctrine as a defense to this action because the Fifth Circuit has already ruled that it does not apply. *See Af-Cap, Inc.*, 383 F.3d 361, 372 n. 14. In any event, CMS' reliance on the act of state doctrine is misplaced. The act of state doctrine applies only when the dispute implicates the legitimacy of public acts taken by a sovereign nation. Because this case does not involve such a public act, but rather a mere dispute over the payment of a debt that the Congo does not dispute and has agreed to pay, the act of state doctrine is inapplicable to the present case. *Id.*

### III. CMS' "FOREIGN STATE COMPULSION" AND "DOUBLE LIABILITY" ARGUMENTS FAIL

CMS' remaining protests center on "Foreign State Compulsion" and "double liability". CMS has made both claims previously and the Southern District of Texas rejected them.[4] There is no reason for this Court to revisit these issues and reward CMS' continued attempts to obfuscate this litigation by taking positions that amount to placing this litigation on a hamster wheel. Walker, thus, asks this Court to overrule CMS' objections and, consistent with the Southern District of Texas enter an order directing the Clerk of the Court to issue the writs. (*See* Order of District Judge Ellison granting writs attached hereto as Ex. B).

#### A.    The "Foreign State Compulsion Doctrine" Does Not Apply

CMS contends that the so-called "Foreign State Compulsion Doctrine" prohibits the Court from issuing the writ. (*See* CMS Br. at 12). CMS' argument is merely an offshoot of both its barred act of state doctrine and flawed "double liability" argument,

---

[4] Further evidence that CMS is collaterally estopped from raising these arguments here is that it filed a "canned brief" from a proceeding against another judgment creditor of Congo in the Southern District of Texas. (*See* Ex. A attached hereto.) As CMS acknowledges at footnote 4 of the Answering Brief, the Southern District rejected CMS' arguments. CMS' admission demonstrates that it litigated these issues and lost. CMS, thus, is barred from re-litigating those issues in this proceeding under the collateral estoppel doctrine.

and is independently barred because CMS has already litigated the claim before the Southern District of Texas, which has rejected it. Even if CMS was not collaterally estopped from making the argument, the argument fails on its own for a number of reasons.

Preliminarily, CMS' claim is a ruse because it has not demonstrated that it is under threat of foreign compulsion. To the contrary, CMS has appeal mechanisms through the Congolese court systems and international arbitral societies. Furthermore, the Oil Convention between Congo and CMS contains a dispute resolution provision that allows Congo and CMS to seek ICSID Arbitration if they are unable resolve disputes. (*See* Oil Convention attached hereto as Ex. C at ¶ 17). CMS has failed to seek redress to remedy the alleged compulsion in any forum. Instead, CMS has merely acceded to Congo's demands and dubious Congolese court orders[5] without availing itself of the challenges it is entitled under law and its contractual agreement. This is not surprising given that Congo and CMS have litigated arm and arm throughout U.S. creditor proceedings. The existing litigation and business relationship suggests that the threat of compulsion is more an attempt to derail creditor proceedings than an actual threat. Indeed, because Congo is a party to this case and there is evidence that CMS has engaged in collusion or fraud with the Congo, the foreign state compulsion doctrine does not apply. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004).

---

[5] The U.S. State Department has recognized that the "judiciary [in Congo] is corrupt, overburdened, underfinanced, and subject to political influence." Republic of Congo, Country Reports on Human Rights Practices – 2003, Released by the Bureau of Democracy, Human Rights, and Labor, February 25, 2004 (available on Dec. 15, 2004 at http://www.state.gov/g/drl/rls/hrrpt/2003/27722.htm).

9

### B.  CMS' "Double Liability" Argument Should Be Rejected

CMS makes an equitable plea to the Court that it should not issue the writ because it would expose CMS to "double liability" under existing Congolese Court orders.[6] (*See* CMS Br. 11-12). The Southern District of Texas has also rejected this argument. Yet, CMS attempts to revive the argument by relying upon an unpublished decision of this Court, *LNC Investment, Inc. v. The Republic of Nicaragua*, No. 01-134-JJF (D. Del. Dec. 18, 2002).[7] CMS' reliance upon *LNC* is misplaced. Unlike this case, in *LNC*, the judgment-debtor/foreign sovereign was not a party to the proceeding and, thus, the garnishee ran the risk of double liability. In the case at bar, Congo is a party. Additionally, the *LNC Investments* court addressed the "double liability" question **after** the writs were issued not, as CMS suggests here, before. Moreover, in contrast to the *LNC Investments* case, in the present matter, the U.S. courts have found that the judgment debtor, Congo, waived its sovereign immunity for purposes of execution and agreed to enforcement of the judgment upon which Walker seeks the writ.

Lastly, CMS' double liability defense fails as a matter of law if there is collusion, negligence, or fraud, which has been plead by Walker in a Delaware action and has been found likely to exist by the Southern District of Texas. (*See* Order of U.S. District Judge Ellison extending Injunction against CMS attached hereto as Ex. D). CMS has routinely

---

[6] To the extent that CMS is suggesting that principles of comity require the Court to consider Congolese law, the rules of comity strongly counsel against such consideration. As the U.S. Supreme Court stated more than a century ago in *Hilton v. Guyot*, comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." 159 U.S. 113, 163-164 (1895). The Congolese court orders and Congolese courts fail to satisfy this test.

[7] CMS' reliance upon *Weitzel v. Weitzel*, 27 Ariz. 117 (Ariz. 1924) and *West v. Baker*, 510 P.2d 710, 734 (Ariz. 1973) is also unavailing. *See* CMS Br. at 12. Neither case arises under the FSIA or Delaware law. *Weitzel*, in particular, addresses a situation where a spouse sought to garnish her ex-husbands wages for services that were all rendered in Mexico and were paid entirely in Mexico. The garnishee had no connection to Arizona. Here, CMS is a Delaware-registered entity.

and unsuccessfully jointly opposed with Congo writs of garnishment after issuance and other enforcement mechanisms in the U.S. courts. Therefore, CMS' charge that they would face "double-liability" from a litigation partner with whom they have marched lock step in these cases rings hollow. *See Parker, Peebles & Know v. Nat'l Fire Ins. Co.*, 150 A. 313 (Conn. 1930) (finding the defense of double liability only applies if no collusion, fraud or negligence). In any event, as the *LNC Investments* case shows, the question of "double liability" is premature because the writ has not been issued and, accordingly, *LNC Investments* is inapposite to CMS' request for additional time to respond to Walker's Motion for Writ. *See LNC Investments, Inc.*, No. 01-134-JJF at *1 (ruling on motion to quash not an application or motion for a writ).

### IV.   WALKER SATISFIES ITS BURDEN UNDER FSIA SECTION 1610(C)

As shown above, none of CMS' arguments state grounds to deny Walker's request for issuance of a writ. CMS makes one final effort to thwart Walker's request for a writ and that too fails because CMS misstates the requirements for obtaining writs under FSIA section 1610(c). (*See* CMS Br. at 17-18). CMS' misstatement is that it suggests the FSIA requires a Court to determine that an asset sought to be garnished is "currently" located in the United States. *See id.* CMS argues that the debt is not in the United States because it has moved its headquarters. CMS' argument is fatally flawed because it is a Delaware entity. CMS has self-legislated a "currency requirement" into Section 1610(c) that simply does not exist. *See* 28 U.S.C. § 1610(c). Section 1610(c) merely requires that the Congo be served under Section 1608(e) of FSIA and that a "reasonable period of time has elapsed following entry of judgment." As set forth in the

Motion for Writ, Walker exceeds those requirements and, accordingly, the Court should enter an order granting Walker the writ.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion for Writ, Walker respectfully requests that the Court enter an order issuing Walker a writ of attachment *fieri facias*.

**GREENBERG TRAURIG LLP**
Sanford M. Saunders, Jr.
Kenneth P. Kaplan
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 200006
(202) 331-3100

*Attorneys for Walker International Holdings Limited*

Dated: October 7, 2005

**GREENBERG TRAURIG LLP**

Paul D. Brown (No. 3903)
Joseph B. Cicero (No. 4388)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
(302) 661-7000

*Attorneys for Walker International Holdings Limited*