IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WALKER INTERNATIONAL HOLDINGS LIMITED, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-MC-00156 |
| REPUBLIC OF THE CONGO, | ) ) ) | |
| Defendant. | ) ) | |

**CMS NOMECO CONGO LLC'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO PLAINTIFF'S MOTION FOR ISSUANCE
OF WRIT OF ATTACHMENT *FIERI FACIAS***

| | |
|---|---|
| OF COUNSEL: | M. Duncan Grant (Del. Bar No. 2994) |
| | James C. Carignan (Del. Bar No. 4230) |
| Guy S. Lipe | PEPPER HAMILTON LLP |
| VINSON & ELKINS L.L.P. | Hercules Plaza, Suite 5100 |
| First City Tower | 1313 N. Market Street |
| 1001 Fannin Street, Suite 2300 | P.O. Box 1709 |
| Houston, TX 77002-6760 | Wilmington, DE 19899-1709 |
| (713) 758-2222 | (302) 777-6500 |
| | |
| Dated: September 27, 2006 | Attorneys for CMS Nomeco Congo LLC |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. THE *FG* DECISION ........................................................................................................ 3

    A. The "In the United States" Requirement .............................................................. 5

    B. The "Commercial Activity" Requirement ............................................................ 6

III. THE *AF-CAP III* DECISION ........................................................................................... 7

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir.), *modified* 389 F.3d 503 (5th Cir. 2004), *cert. denied* 125 S.Ct. 1735 (2006) .................................................................. 1, 6, 7

*Af-Cap, Inc. v. Republic of Congo*, __ F.3d __, 2006 WL 2424778 (5th Cir. 2006) ....... 2, 7, 8,, 10

*Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir. 2002) .................. 2

*FG Hemisphere Associates LLC v. Republique du Congo*, 455 F.3d 575 (5th Cir. 2006) ..... 2, 3, 4, 5, 6, 7,

*Hercaire International, Inc. v. Argentina*, 821 F.2d 559 (11th Cir. 1987) ...................... 2

*John Julian Construction Co. v. Monarch Builders, Inc.*, 306 A.2d 29 (Del. Super. 1973) ........... 8

*McNeilly v. Furman*, 95 A.2d 267 (Del. 1953) ................................................. 9

## STATUTES, RULES, AND OTHER AUTHORITIES

28 U.S.C. § 1610(a) ........................................................................... 2

10 *Del. C.* § 3508 ........................................................................... 9

Del. Sup. Ct. Civ. R. 5(aa)(2) ............................................................... 9

Del. Sup. Ct. Civ. R. 69(a) ............................................................... 3, 8

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6626 ..................... 3

CMS Nomeco Congo Inc. (now known as CMS Nomeco Congo LLC) ("CMS Nomeco"), files this Supplemental Brief in opposition to the motion of Plaintiff Walker International Holdings Limited ("Walker") for issuance of a writ of attachment *fieri facias* against CMS Nomeco. That motion seeks to garnish the Congo's in-kind royalty that the Congo takes in Congolese waters under a concession agreement governed by Congolese law. CMS Nomeco files this Supplemental Brief to bring to the Court's attention two recent decisions of the United States Court of Appeals for the Fifth Circuit, which held that writs of garnishment issued by Texas federal courts directed to the Congo's in-kind royalty were improper under the Foreign Sovereign Immunities Act and under state garnishment law. Under the rationale of those decisions, Walker's motion should be denied.

I.  **INTRODUCTION**

In its motion and in its Reply Brief, Walker asserts that the Fifth Circuit, in *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir.), *modified* 389 F.3d 503 (5th Cir. 2004), *cert. denied* 125 S.Ct. 1735 (2006) ("*Af-Cap II*"), "has held that CMS's obligation to Congo is subject to garnishment in the United States where the debt is located,"[1] and that CMS Nomeco has "litigated and lost the argument that the royalty obligation at issue in this case is not subject to garnishment."[2] In fact, exactly the contrary is true. In two recent decisions, the Fifth Circuit itself has expressly rejected Walker's characterization of the decision in *Af-Cap II* and has held that garnishment writs directed to the Congo's in-kind royalty that were issued by federal courts in Texas were improper both under the Foreign Sovereign Immunities Act and

---

[1] Walker Motion at 2.

[2] Walker Reply Brief at 4.

under state garnishment law: *FG Hemisphere Associates LLC v. Republique du Congo*, 455 F.3d 575 (5th Cir. 2006) ("*FG*"), decided July 10, 2006, and *Af-Cap, Inc. v. Republic of Congo*, __ F.3d __, 2006 WL 2424778 (5th Cir. 2006) ("*Af-Cap III*"), decided August 23, 2006.[3]

Specifically, the Fifth Circuit held in *FG* that writs of garnishment directed to the Congo's in-kind royalty that were issued by a Houston federal district court were issued in violation of the Foreign Sovereign Immunities Act and were void *ab initio*, due the absence of any findings by the district court that the Congo's in-kind royalty was "in the United States," as required by the FSIA, based on the circumstances existing at the time the court authorized the writs. 455 F.3d at 580, 588-591, 594, 596. In *Af-Cap III*, the Fifth Circuit held that non-monetary obligations are not subject to garnishment as a matter of Texas garnishment law and that garnishment of the Congo's in-kind royalty therefore is impermissible. 2006 WL 2424778 *3-4. The rationale of these two recent Fifth Circuit decisions compels the conclusion that Walker's motion in this case should be denied.

The FSIA provides the exclusive basis on which execution is permitted to satisfy a judgment against a foreign state. *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 563 (11th Cir. 1987). Under Section 1610(a) of the FSIA, the FSIA's statutory exceptions to the general rule of immunity from execution of property of a foreign state are limited in their application to property that is "in the United States" and that is "used for commercial activity in the United States." 28 U.S.C. § 1610(a). Under Section 1610(a), "[e]ven when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against property that meets…these two statutory criteria." *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002). These limitations reflect Congress's recognition that involvement

---

[3] Copies of both of these decisions are attached for the Court's convenience as Exhibits A and B.

by the U.S. courts in the seizure of assets of foreign governments has the potential for creating tension in international relations and should be limited to commercial property that is located in the United States. *See* H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6626 ("[A]ttachments [of property of a foreign state] can .... give rise to serious friction in United States' foreign relations.").

The *FG* decision specifically addresses the significance of those two requirements and the manner in which the district courts must apply them. *Af-Cap III* then addresses a separate but also important question of state, not federal, garnishment law, which is whether non-monetary obligations are subject to garnishment. State law comes into play because Rule 69(a) adopts state procedural law whenever a party seeks a garnishment order from a federal court. Walker must satisfy not only the two essential FSIA elements, but also must show that Delaware law permits the attachment of non-monetary obligations such as the in-kind oil royalty that is involved in this case. Walker cannot do that.

## II.    THE *FG* DECISION

*FG* involved an appeal from an order issued by a Houston federal district court in October 2004 that authorized issuance of writs of garnishment against CMS Nomeco and two other working interest owners in the concession, directed to the Congo's in-kind royalty. Like Walker in this Court, the plaintiff in *FG* argued to the Fifth Circuit that *Af-Cap II* resolved the FSIA issues and established that the FSIA did not protect Congo's in-kind royalty from garnishment.

The Fifth Circuit rejected the plaintiff's argument (and thus, Walker's argument here). The Fifth Circuit reaffirmed the rule that under the FSIA's provisions dealing with immunity of a foreign state's assets from execution, "even when the foreign sovereign has

-3-

waived its immunity from execution, courts in the United States may execute only against 'property in the United States' that is 'used for commercial activity in the United States.'" *FG*, 455 F.3d at 585. In addressing the FSIA issues with regard to the Congo's in-kind royalty, *FG* held that *Af-Cap II* did not decide the issues pertinent to resolution of the FSIA issues with regard to writs issued in the *FG* case in October 2004. *Id.* at 585-590. The *FG* Court distinguished *Af-Cap II*, noting that on the *Af-Cap II* record (which related to facts in early 2003 and previously), "it was undisputed that Texas was the locus from which the garnishees had supervised, directed, and financed the activities that gave rise to their obligations to make royalty payments to the Congo" and that at that time, the Garnishees had a "continuous presence in Texas," but that "[b]y July 2004, none of the Garnishees had operations, officers, or a physical presence in the United States." *Id.* at 582, 586.

    The *FG* Court held that under the FSIA's "in the United States" requirement, a district court is required to determine the situs of the foreign state's property on which execution is sought each time that execution is authorized, based on the circumstances existing when execution is authorized. *Id.* at 588-591, 594 n. 3, 596. The Court recognized that "exemption from executional immunity during one situs snapshot does not mean that, during another situs snapshot, the property is not immune from execution." *Id.* at 594 n. 3. The Court held that the property sought to be executed "must be in the United States when the district court authorizes execution" and that it was improper for the district court to resolve the "in the United States" issue with regard to the writs issued in October 2004 without making a fresh determination of the location of the Congo's in-kind royalty based on the facts and circumstances existing at that time. *Id.* at 580, 588-591, 594 n.3, 596. The Court noted that such a rule best prevents disruption of foreign sovereigns' public acts by not executing on property that was but is no

longer in the United States. *Id.* at 589. The Court held that a district court is jurisdictionally required to make fact findings on the relevant issues under the FSIA, based on the circumstances then existing, in support of any order authorizing garnishment. *Id.* at 590-591, 594, 596. In the absence of such fact findings, an order authorizing garnishment is void *ab initio*. *Id.* at 590-591.

As discussed below, Walker has not shown that the Congo's in-kind royalty is "in the United States" or "used for commercial activity in the United States," as required by the FSIA, based on the circumstances that currently exist.

### A. The "In the United States" Requirement

Walker has made no showing that the Congo's in-kind royalty is "in the United States" under the current factual circumstances. As the Court noted in *FG*, CMS Nomeco has had no operations, activities, or physical presence in the United States since July 2004. *Id.* at 582. The Congo's in-kind royalty arises from activities taking place wholly outside of the United States. The only "U.S. connection" is CMS Nomeco's incorporation in Delaware. The Fifth Circuit found it unnecessary to decide the question of whether Delaware incorporation alone would be sufficient to satisfy the "in the United States" requirement under the FSIA, holding that the absence of appropriate findings based on the circumstances existing at the time of the relevant situs inquiry rendered the authorizing order void *ab initio*, necessitating dissolution of the writs. CMS Nomeco has already presented to this Court the reasons that mere incorporation in Delaware cannot satisfy the letter or the spirit of the FSIA's "in the United States" requirement with regard to the Congo's in-kind royalty, Answer Brief at 23-25, and those arguments will not be repeated here. In short, the Congo physically takes, in the Congo, its share of oil that is produced, stored and sold in the Congo, and Walker's attempts to characterize the Congo's in-kind royalty as a debt located "in the United States" and subject to garnishment ignores both practical reality and the legal requirements of the FSIA.

### B.  The "Commercial Activity" Requirement

Walker also has presented no basis for this Court to find that the Congo's in-kind royalty is "used for commercial activity in the United States," based on the circumstances currently existing, as required by the FSIA. *FG* requires the district court, prior to authorizing issuance of writs, to make fact findings supporting the FSIA requirements for execution. *Id.* at 580, 590-591, 594, 596. The Court in *Af-Cap II* adopted a test for the "commercial activity" requirement that mandates the district court "to both make factual findings concerning how the property was used and to reach legal conclusions concerning whether that particular use was 'for commercial purposes.'" 383 F.3d at 368. The Court said the analysis "requires a more holistic approach," in which the district court "should examine the totality of the circumstances surrounding the property." *Id.* at 369. The Court held that the "analysis should include an examination of the uses of the property in the past, *as well as all facts related to its present use*, with an eye toward determining whether the commercial use of the property, if any, is so exceptional that it is 'an out of character' use for that particular property." *Id.*

CMS Nomeco contends that the Fifth Circuit's test for determining the "commercial use" requirement is incorrect to the extent it permits consideration of "past" use of the property, as any order permitting attachment of a foreign state's property that is not currently being used for commercial purposes violates the FSIA. Walker has come forward with no evidence of any current commercial use of the Congo's in-kind royalty. Even under the "commercial use" test adopted in *Af-Cap II*, there is no evidence that the Congo has used its in-kind royalty in any arguably commercial way for more than four years, and the absence of such use over that time period is relevant to the "commercial use" analysis in this case. Allowing a judgment creditor to execute on property that has not been used for commercial activity for more than four years would thwart the purposes of the FSIA's "commercial use" requirement. There

-6-

simply is no legal or factual basis for a determination by this Court that the Congo's in-kind royalty meets even the *Af-Cap II* "commercial use" test under the FSIA, considering the "totality of the circumstances," including "all facts related to its present use." *Id.* at 368-369.

In summary, *FG* establishes that this Court must conduct an independent inquiry and make supporting factual findings on the questions of whether the Congo's in-kind royalty is "in the United States" and "used for commercial activity in the United States," based on current facts and circumstances, before authorizing issuance of a writ of attachment *fieri facias* against the Congo's in-kind royalty. Walker has made no effort to show that under the current circumstances, the Congo's in-kind royalty meets either the "in the United States" or the "commercial use" requirements of the FSIA, instead arguing that that a "currency requirement . . . does not exist." Walker Reply Brief at 11. The Fifth Circuit has expressly rejected that argument, holding that the FSIA requires an analysis of the current circumstances and that an authorizing order issued without supporting fact findings based on current circumstances is void *ab initio*. *FG*, 455 F.3d at 588-591, 594 n. 3, 596. There simply is no factual or legal basis for this Court to make the findings that the FSIA requires a district court to make before authorizing the type of writ sought by Walker in this case.

## III.   THE *AF-CAP III* DECISION

Walker also argues that the Fifth Circuit's decision in *Af-Cap II* resolved against CMS Nomeco its contention that non-monetary obligations are not subject to garnishment as a matter of state law. Reply Brief at 4, 6. In its recent decision in *Af-Cap III*, the Fifth Circuit rejected Walker's interpretation of *Af-Cap II*, holding that "there is nothing in *Af-Cap II* that interprets state garnishment law," and that the district court in Texas "correctly questioned whether such an obligation could be garnishable in Texas." 2006 WL 2424778 *4.

The Fifth Circuit affirmed the Austin district court's dissolution of the writs of garnishment directed to the Congo's in-kind royalty, holding that Texas garnishment law precludes garnishment of non-monetary obligations. *Id.* at *3-4. As discussed below, the rationale of the Fifth Circuit's decision in holding the Congo's in-kind royalty not subject to garnishment under Texas law applies equally under Delaware garnishment law, which is applicable here under Rule 69(a) of the Federal Rules of Civil Procedure.

The Fifth Circuit began its analysis by noting that garnishment is a harsh remedy, bringing a garnishee into a dispute in which it is a stranger, and that the garnishment statute therefore must be "strictly construed." *Id.* at *3. The same is true of garnishment in Delaware. *See John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 33 (Del. Super. 1973) (in the context of garnishment, "[a]ttachment is a summary process in derogation of the common law and, therefore, the statute is to be strictly construed in favor of the party against whom the proceedings is employed, both as to the subject matter of the attachment and the method of enforcing the remedy").

The Fifth Circuit then analyzed the Texas garnishment statute and rules and concluded that they did not allow garnishment of non-monetary obligations. The court noted that the Texas garnishment rules provide for a monetary judgment against the garnishee "for the amount found to be due to the defendant from the garnishee," contemplating that only *monetary* debts are subject to garnishment. *Id.* The Fifth Circuit also noted that the portion of the Texas garnishment statute permitting garnishment of "effects" (which a garnishee is required to "deliver" to a sheriff for sale) applies only to property of the debtor that has a physical existence and that is in the possession of the garnishee and capable of delivery, rendering it inapplicable to intangible obligations. *Id.*

This rationale also applies under the Delaware garnishment statute and rules. The Delaware statute limits the categories of property subject to garnishment to "[g]oods, chattels, rights, credits, moneys, effects, lands and tenements." 10 *Del. C.* § 3508. With regard to the language in Section 3508 that potentially reaches obligations, i.e., "rights" and "credits," the Delaware Supreme Court has held that "'it is well settled that not all rights are subject to attachment'" *McNeilly v. Furman*, 95 A.2d 267, 271 (Del. 1953) (citations omitted). The Court emphasized that "[h]istorically attachment was strictly confined to a 'debt', that is, a liquidated claim," and that "[t]he word 'rights' is bracketed with the word 'credits', *which imports a fixed monetary obligation.*" *Id.* (emphasis added). Thus, the Delaware Supreme Court has already held that the type of obligation that is subject to garnishment in Delaware is a "fixed monetary obligation." *Id.*

Analysis of the Delaware procedural rules dealing with garnishment also compels the conclusion that non-monetary obligations are not subject to garnishment. Superior Court Civil Rule 5(aa)(2) provides that a garnishee is discharged upon delivery to the sheriff of the property of the debtor that is in the garnishee's possession, and that a failure by the garnishee to deliver the property to the sheriff will result in a judgment against the garnishee for the value of the property that the garnishee failed to deliver to the sheriff. Del. Sup. Ct. Civ. R. 5(aa)(2). Implicit in this rule is the requirement that property subject to garnishment must be capable of delivery to the sheriff. CMS Nomeco cannot deliver to a sheriff in Delaware the Congo's rights to take in-kind royalty oil in the Congo, nor can CMS Nomeco deliver the oil itself to a sheriff in Delaware.[4] Being incapable of delivery to a sheriff in Delaware, the Congo's right to take oil in

---

[4] It is undisputed that the oil itself is not garnishable in Delaware, as it is located in the Congo and outside the jurisdiction of a court sitting in Delaware.

the Congo simply is not a type of property interest that is within the scope of garnishable property under Delaware law.

*Af-Cap III* also refutes Walker's argument that turnover orders obtained by Af-Cap and Walker in the Western District of Texas effectively converted the royalty to a cash royalty. Reply Brief at 6-7. Walker did not disclose to this Court that the Western District of Texas held that the turnover orders were not directed to CMS Nomeco and that the question of whether those orders had any effect on CMS Nomeco's obligations would require an analysis of the relevant agreements and applicable Congolese law. The Congolese court has held that the turnover orders are invalid as a matter of Congolese law and do not affect the Congo's right to take its royalty oil in kind in the Congo. Nevertheless, the question of the effect, if any, of the turnover orders on CMS Nomeco's obligations is now moot, because the Fifth Circuit held in *Af-Cap III* that the district court lacked personal jurisdiction to issue a turnover order against the Congo. *Af-Cap III*, 2006 WL 2424778 *5-6.

## IV. CONCLUSION

The Fifth Circuit's recent decisions refute Walker's contentions in its motion and reply brief. Those decisions show that Walker has not carried its burden of establishing that the Congo's in-kind royalty falls within an exception to immunity under the FSIA or that it is subject to garnishment under the Delaware garnishment statute. Accordingly, Walker's motion should be denied.

Respectfully submitted,

/s/ M. Duncan Grant

| OF COUNSEL: | M. Duncan Grant (Del. Bar No. 2994) |
| | James C. Carignan (Del. Bar No. 4230) |
| Guy S. Lipe | PEPPER HAMILTON LLP |
| VINSON & ELKINS L.L.P. | Hercules Plaza, Suite 5100 |
| First City Tower | 1313 N. Market Street |
| 1001 Fannin Street, Suite 2300 | P.O. Box 1709 |
| Houston, TX 77002-6760 | Wilmington, DE 19899-1709 |
| (713) 758-2222 | (302) 777-6500 |
| | |
| Dated: September 27, 2005 | Attorneys for CMS Nomeco Congo LLC |