**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WALKER INTERNATIONAL HOLDINGS LIMITED <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF CONGO <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 05-MC-00156 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**WALKER INTERNATIONAL HOLDINGS LIMITED'S
REPLY TO NON-PARTY CMS NOMECO CONGO, INC.'S SUPPLEMENTAL
BRIEF IN OPPOSITION TO ITS MOTION FOR ISSUANCE OF
WRITS OF ATTACHMENT *FIERI FACIAS***

Walker International Holdings Limited ("Walker") submits this reply to non-party

CMS Nomeco Congo, Inc.'s (now known as CMS Nomeco Congo, LLC) ("CMS")

Supplemental Brief In Opposition to Walker's Motion for Issuance of Writ of *Fieri*

*Facias.*

I. INTRODUCTION

The irony of CMS's latest filing is that it seeks safe harbor in two recent and

irreconcilable Fifth Circuit decisions after previously contending that related Fifth Circuit

case law did not impact this case because it addressed state law questions.[1]  CMS was

wrong previously in its characterization of Fifth Circuit case law and now has

_____

[1] In its Answering Brief in Opposition to Walker's Request for Writs, CMS contended that *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361 *clarified on reh'g.* 389 F.3d 240 (5th Cir. 2005) ("*Af-Cap II*") did not collaterally estop CMS from reasserting that the oil royalty obligation at issue in this case is not subject to execution in the United States because the Fifth Circuit rendered the decision under Texas law. *See* D.E. 21 at 16-17.  CMS's conflicting positions highlights its devotion to providing aid and comfort to Congo to avoid Walker's debt.

mischaracterized two additional Fifth Circuit decisions that clearly are ground in Texas state law. Specifically, the Fifth Circuit's decisions in *Af-Cap, Inc. v. Republic of Congo*, 2006 WL 2424778 (5th Cir. 2006) ("*Af-Cap III*") and, *FG Hemisphere v. Republic of Congo*, 455 F.3d 575 (5th Cir. 2006) ("*FG Hemisphere*") provided interpretations of when and whether an asset is subject to garnishment under the Texas garnishment statute. Those decisions have no bearing on the present case. In short, CMS's Supplemental Brief distorts the decisions upon which it rests and ignores binding precedent concerning Delaware garnishment law that resolves the matter in favor of Walker.

## II. PROCEDURAL POSTURE

On August 5, 2005, Walker registered its judgment against Congo in excess of $26 million in this Court. On August 31, 2005, Walker filed its Motion seeking a writ of attachment *fieri facias*. CMS, a non-party, subsequently filed an Answering Brief to Walker's Motion seeking a writ out of time. Walker responded to CMS's Answering Brief and CMS replied. CMS now files a Supplement to its Answering Brief ("CMS Br."), and Walker now replies.

## III. ARGUMENT

### A. CMS Lacks Standing

Walker has fully briefed the standing issue in its prior submissions. Rather than rehash each of its prior arguments, Walker incorporates here the arguments it made in Docket Entries 5 and 23. In sum, CMS is not presently a party to this action and lacks either Article III or representational standing to oppose Walker's request for Writs. *See e.g. Goldberg v. Tarpey*, 419 A.2d 932, 934 (Del. 1990) (stating under general law, a garnishee, as a stakeholder only has standing to raise jurisdictional defects in the form of

a Motion to Quash); *see also e.g.* Del. Super. Ct. R. 5(a) (Garnishee only appears once summoned via a *mense* writ of attachment or execution process). To date, the Court has not entered an order authorizing the issuance of a writ directed at CMS and, so, at a minimum, CMS's attack is premature.

B. CMS's Attack on Walker's Not Yet Issued Writ Lacks Merit

CMS claims that "the rationale" in *Af-Cap III* and *FG Hemisphere* "compels the conclusion that Walker's motion in this case should be denied." *See* CMS Br. at 2. Unfortunately for CMS, nothing could be further from the truth. Indeed, if the rationales of those cases have precedential value at all, then this Court should immediately issue the requested writ to facilitate the long overdue payment of Congo's creditor.

1. *The FG Hemisphere Decision*

In *FG Hemisphere*, the court held that the district court erred in relying exclusively on the finding in *Af-Cap II* to find an exception to the Foreign Sovereign Immunities Act ("FSIA") in the factual setting presented by FG Hemisphere's request for writs.[2] FG Hemisphere requested writs in October 2004 and, thus, by the time the district court was called upon to determine whether any exception to immunity was applicable, CMS had moved out of Texas. The *FG Hemisphere* court emphasized that, contrary to the facts in *Af-Cap II* and its predecessor *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir. 2002) ("*Af-Cap I*"), CMS was no longer supervising, directing or financing the activities that gave rise to their obligations to make royalty

---

[2] It is noteworthy that **Congo** and CMS sought to void the writs <u>after</u> the writs were issued. Here, Congo has been properly served and has never sought to attack the propriety of the Court issuing writs of garnishment. Indeed, Congo is estopped from making such an argument because the Fifth Circuit has already found that the Congo waived its sovereign immunity under the arbitration decision in this case. *See Walker Holdings Int'l. Ltd. v. Congo et al.*, 395 F.3d 229 (5th Cir. 2004).

payments to Congo from Texas.[3]  *See FG Hemisphere*, 455 F.3d at 586.  Since, at a

minimum, "the property must be in the United States when the district court authorizes

execution" to satisfy the section 1610 exception to immunity (*id.* at 588), the Fifth Circuit

concluded that the district court erred when it relied upon *Af-Cap II* rather than

ascertaining whether there was an exception to FSIA's immunity at the time FG

Hemisphere sought to execute against Congo's property, or the property held by its agent

and instrumentality or alter ego.  The premise of the decision is that under Texas state

law, the writ "usually target[s] either property that is either in the jurisdiction of the court

or that is in the possession of a garnishee who is within the jurisdiction of the court."  *Id.*

at 589 (quoting *Stena Rederi AB v. Comisión de Contratos del Comité Ejecutivo General

Del Sindicato Revolucionario de Trabajadores Petroleros de la República Mexicana

S.C.*, 923 F.2d 380, 391-392 (5th Cir. 1991)).  The Fifth Circuit stated that when the court

takes what it termed a "situs snapshot", the property must be in the United States and

subject to execution in a particular jurisdiction.  *Id.*

Assuming *arguendo* that the *FG Hemisphere* court's decision is persuasive

authority here, its "situs snapshot" *dicta* works in favor of Walker's position.[4]  There is

no question that at the time Walker sought its writs against Congo's property held by

CMS that CMS was, and still is, present in the United States in Delaware.  Indeed, the

*FG Hemisphere* court specifically stated that it "express[es] no opinion whether the

---

[3] CMS activities and the subsequent revelation that CMS was attempting to remove its assets altogether from Delaware through an intra-corporate transfer to a newly created Congolese subsidiary for a substantially under-market price led to separate fraudulent conveyance actions in the Southern District of Texas and the Delaware Chancery Court.  The Southern District of Texas enjoined CMS's transfer.

[4] Walker disagrees with the Fifth Circuit's holding in *FG Hemisphere* which contravenes the *ratio legis* of the FSIA.  The FSIA was designed to allow, not restrict, a creditor's ability to execute upon assets of a foreign sovereign used for "commercial activity" and present in the United States.  The *FG* court's application of Texas law on this question reduces the FSIA to a statute capable of fifty separate interpretations when Congress intended one body of law to govern.

Delaware incorporation of a Garnishee is alone, sufficient to satisfy the § 1610(a) location in the United States requirement." *Id.* at 590.    The long-standing Delaware precedent demonstrates that a judgment creditor has jurisdiction over a garnishee provided that that garnishee is subject to suit in Delaware. *See Netter Bros. v. Stoeckle*, 56 A. 604 (Del. Super. Ct. 1903); *see also* D. E. 23 at 4-5. Further, there is no question that the situs of the debt is where the debtor is located. *See* D.E. 23 at 4-5 (and cases cited therein).    Accordingly, contrary to CMS's position, the *FG Hemisphere* case supports the issuance of the writ against Congo's property held by CMS because CMS, and thus Congo's asset, is present in the U.S. in Delaware.

### 2. The *Af-Cap III* Decision

In *Af-Cap III*, the Fifth Circuit misapplied Texas state law to hold that the intangible royalty obligation CMS owes, and has owed, to Congo is not subject to execution under Texas law even though the Fifth Circuit previously held that the oil royalty obligation was subject to execution under the FSIA. *Compare Af-Cap III*, 2006 WL 2424778 at *4-5 *with Af-Cap II*, 383 F.3d at 368-369. The *Af-Cap III* decision is based solely on Texas law. Therefore, it has no bearing on the outcome in this case.

CMS recognizes this weakness and cites Delaware procedural law and two cases that it contends support a finding that Delaware law does not allow for the garnishment of intangible assets.    *See* CMS Br. at 8-10.    None of it supports CMS's position.[5] Furthermore, a complete review of the cases cited by CMS shows that those authorities support the issuance of the requested writ.

---

[5] Walker has previously demonstrated that garnishment is proper under the Delaware garnishment statute. It incorporates those arguments here by reference. *See* D.E. 5 at 23.

### 3. CMS's Other Authorities

First, CMS relies on *John Julian Constr. Co. v. Monarch Builders, Inc.*, which provides that the Delaware garnishment statute should be strictly construed against the garnishor. 306 A.2d 29 (Del. Super. Ct. 1973) (cited at CMS Br. at 8). In *John Julian*, a garnishor was attempting to attach the assets of garnishees who received assets of the judgment debtor while the garnishor's litigation was pending. The garnishor alleged that the garnishees assumed the liabilities of the judgment debtor company when it accepted the distribution of assets, and that the distribution was fraudulent. Both sides moved for summary judgment. The court denied the motion for summary judgment on the garnishment issue and granted the motion on the fraud issue. Thus, the *John Julian* case has nothing to do with whether Walker is entitled to garnish the oil royalty obligation under Delaware law.

To the extent that *John Julian* is relevant at all, it is in the court's recognition that some garnishment actions might "result in multiple liability." *See id.* at 34. The court's acknowledgement counteracts CMS's often asserted "double liability" defense to this action. *See* D.E. 21 at 11-12. Moreover, *John Julian* demonstrates that garnishors accede to the rights of the judgment debtor in a garnishment action. 306 A.2d at 34. Because the judgment debtor has the right to demand payment from garnishees in this case, Walker has the same right. Therefore, Walker has authority to demand payment from CMS just as Congo has the right to demand payment from CMS.

Second, CMS relies on *McNeilly v. Furman*, 95 A.2d 267 (Del. 1953). CMS states that the *McNeilly* court recognized that "'[i]t is well settled that not all rights are subject to attachment.'" *Id.* at 271 (internal citation to New Jersey law omitted) (cited at

CMS Br. at 9). CMS further states that the *McNeilly* court emphasized that "debts" subject to attachment historically were confined to "liquidated claims." CMS Br. at 9 (quoting *McNeilly*, 95 A.2d at 271). On a superficial level, these quotations may appear to support CMS's position, however, the facts and legal questions at issue in *McNeilly* are easily distinguished from the present matter. In *McNeilly*, the court was determining whether a bankruptcy trustee could "judicially seize" a wrongful death action brought by a widow who was in bankruptcy. McNeilly, who was the bankruptcy trustee, sought to be joined as party plaintiff on the theory that any damage claim would fall within the scope of the bankruptcy estate. The court held that none of the Delaware attachment laws "contemplate[s] judicial seizure of a chose in action consisting of a tort claim for unliquidated damages." 95 A.2d at 271.

Here, by contrast, Walker's claim against Congo is a liquidated damages award stemming from a contested arbitration proceeding in which Congo defended itself and lost. Moreover, the Fifth Circuit has held that under the applicable international arbitration rules, Congo has waived its right to sovereign immunity. *See Walker Holdings*, 395 F.3d at 229, 234 (5th Cir. 2004), *cert. denied.* 544 U.S. 9765 (2005). It is axiomatic that if Congo has no sovereign immunity, then CMS -- even if it has standing to raise it -- could not assert a claim of immunity. Moreover, CMS's citation to Delaware garnishment authority ignores on-point authority. Specifically, in *Dangelo v. Petroleos Mexicanos*, the United States District Court for the District of Delaware held Mobil Oil Corporation responsible for an intangible debt, an oil royalty, that it owed to an agency and instrumentality of foreign government based, in part, on the fact that Mobil was

qualified to do business in Delaware.[6]  378 F. Supp. 1034, 1038-39 (D. Del. 1977).  The

Court should follow this binding precedent and dispatch with CMS' irrelevant arguments.

IV. CONCLUSION

    For each of the foregoing reasons, the Court should grant Walker's Motion for

Writ of Attachment *Fieri Facias*.

    Dated this 5th day of October 2006.


                                        Respectfully submitted,

                                        *[signature]*

                                        **GREENBERG TRAURIG LLP**
                                        Titania R. Mack (#4120)
                                        Dennis A. Meloro (#4435)
                                        Victoria Watson Counihan (#3488)
                                        1007 North Orange Street
                                        Suite 1200
                                        Wilmington, DE  19801
                                        (302) 661-7000

                                          -and –

                                        **GREENBERG TRAURIG LLP**
                                        Sanford M. Saunders, Jr.
                                        Kenneth P. Kaplan
                                        800 Connecticut Ave., N.W.
                                        Suite 500
                                        Washington, DC  20006
                                        (202) 331-3100


                                        *Attorneys   for   Walker   International
                                        Holdings Limited*

---

[6] Walker does not necessarily agree with CMS's statement that the oil itself is not subject to garnishment
(*see* CMS Br. at n. 4), but simply reiterates that it seeks to garnish the undisputed oil royalty obligation
between Congo and CMS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALKER INTERNATIONAL HOLDINGS LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 05-762-SLR ) |
| THE REPUBLIC OF CONGO, | ) ) |
| Defendant. | ) ) |

## CERTIFICATE OF SERVICE

I, Victoria W. Counihan, hereby certify that I am an attorney at Greenberg Traurig, LLP, counsel for the Plaintiff, and that on October 5, 2006, copies of the *Reply to Non-Party CMS Nomeco Congo Inc.'s Supplemental Brief in Opposition to Its Motion for Issuance of Writs of Attachment Fieri Facias* were served upon the following in the manner indicated.

**VIA HAND DELIVERY**
M. Duncan Grant, Esquire
James C. Carignan, Esquire
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**
Guy Lipe, Esquire
Jason Powers, Esquire
Vinson & Elkins LLP
First City Tower
1001 Fannin Street, Suite 2300
Houston TX 77002

Dated: October 5, 2006

Victoria W. Counihan (No. 3488)
Greenberg Traurig, LLP
1007 North Orange Street, Suite 1200
The Nemours Building
Wilmington, DE 19801
(302) 661-7000

Attorneys for the Plaintiff