# EXHIBIT D

# FRENCH

congo # 6.1.2 (b)

## CONVENTION

- La République Populaire du Congo
- Congolese Superior Oil Company
- Cities Service Congo Petroleum Corporation
- Canadian Superior Oil Ltd.
- Société Nationale de Recherches et
  d'Exploitation Pétrolières "HYDRO-CONGO"

le 25 mai 1979

GAR 00001

**EXHIBIT 1**

FRENCH
Copied from

## INDEX

1. Table des matières.

2. Convention.

3. Annexe I:    Décret attributif du permis "Marine 1".

4. Annexe II.

5. Annexe III:  Taux d'amortissements applicables aux
              SOCIETES.

6. Annexe IV:   Paiement de la redevance et de l'impôt sur
              les sociétés.

7. Annexe V:    Modèle de lettre de garantie.

8. Appendice.

GAR 00002

<u>TABLE DES MATIERES</u>

|  |  | <u>Page</u> |
|---|---|---|
| 1. | Définitions | 2 |
| 2. | Objet | 4 |
| 3. | Entrée en vigueur – Durée – Permis d'exploitation | 4 |
| 4. | Bénéficiaires | 4 |
| 5. | Garanties | 5 |
| 6. | Charges fiscales | 6 |
| 6.03 | Etablissement de l'impôt sur les sociétés de chacune des SOCIETES | 7 |
| 7. | Redevance minière | 8 |
| 8. | Changes | 10 |
| 9. | Paiements forfaitaires | 11 |
| 10. | Disposition des HYDROCARBURES | 12 |
| 11. | Emploi et formation du personnel | 13 |
| 12. | Fournisseurs congolais | 15 |
| 13. | Mise à disposition des informations | 15 |
| 14. | Transport et traitement des produits | 16 |
| 15. | Force majeure | 16 |
| 16. | Déclaration et paiement d'impôts | 17 |
| 17. | Arbitrage | 18 |
| 18. | Droit applicable | 18 |
| 19. | Avis | 18 |
| 20. | Avenants | 20 |
| 21. | Garantie par société mère | 20 |

ANNEXE I
   Copie du décret accordant le PERMIS

ANNEXE II

ANNEXE III
   Taux d'amortissements applicables aux SOCIETES

ANNEXE IV
   I - Paiement de la redevance
   II - Paiement de l'impôt sur les sociétés

ANNEXE V
   Modèle de lettre de garantie

(i)

GAR 00003

CONVENTION

ENTRE

La République Populaire du Congo (ci-après désignée le "CONGO") représentée aux présentes par Monsieur Rodolphe Adada, Ministre des Mines et de l'Energie,

d'une part,

ET

Congolese Superior Oil Company (ci-après parfois désignée "SUPERIOR"), société de l'Etat du Nevada, Etats-Unis d'Amérique, dont le siège est à Houston, Texas, Etats-Unis d'Amérique, 26th Floor, First City National Bank Building, représentée par Monsieur Diego O. Giordano-Echegoyen, dûment autorisé à cet effet,

Cities Service Congo Petroleum Corporation (ci-après parfois désignée "CITIES SERVICE"), société de l'Etat du Delaware, Etats-Unis d'Amérique, dont le siège est à Dover, Delaware, Etats-Unis d'Amérique, 306 South State Street, représentée par Antoine Saadi, dûment autorisé aux fins des présentes,

Canadian Superior Oil Ltd. (ci-après parfois désignée "CANADIAN"), société constituée au Canada, dont le siège est à Calgary, Three Calgary Place, 355 4th Avenue S.W., Province d'Alberta, Canada, représentée par Robert C. Schrader, dûment autorisé à cet effet,

Société Nationale de Recherches et d'Exploitation Pétrolières "HYDRO-CONGO" (ci-après parfois désignée "HYDRO-CONGO"), société nationale ayant son siège à Brazzaville, agissant par Monsieur Alphonse M'Boudo-Nesa, dûment autorisé à cet effet,

ci-après désignées collectivement les "SOCIETES" ou individuellement "l'une des SOCIETES" ou la "SOCIETE",

d'autre part,

EXPOSE PRELIMINAIRE

Le CONGO désire promouvoir et réaliser dans les meilleures conditions d'efficacité la recherche et le développement

**GAR 00004**

2.

des ressources du CONGO en hydrocarbures liquides et/ou gazeux afin d'assurer par la suite leur exploitation dans les meilleures conditions possibles.

A cet effet, le CONGO désire obtenir la coopération de sociétés pétrolières qualifiées et réputées pour qu'elles fournissent à HYDRO-CONGO l'aide nécessaire à la réalisation, dans le cadre d'une association, de certains travaux de recherche d'hydrocarbures, et de développement et d'exploitation des gisements découverts sur le permis de recherches du type "A" dit "Marine 1" accordé à HYDRO-CONGO et plus amplement décrit ci-après, et sur les permis d'exploitation qui peuvent être accordés sur ce permis de recherches.

Les SOCIETES exerceront leurs activités de recherche et d'exploitation en conformité avec les principes de la politique pétrolière du CONGO tels que repris dans la présente Convention.

EN CONSEQUENCE, IL EST CONVENU CE QUI SUIT:

1.  Définitions

Aux fins de la présente Convention, les termes et expressions suivants auront la signification indiquée ci-dessous.

1.01. Convention:  La présente Convention entre le CONGO et les SOCIETES.

1.02  Association:  L'association constituée par le contrat d'opérations en association pour l'exécution des travaux pétroliers, tel que ce terme est défini au sous-paragraphe 1.10 ci-dessous.

1.03  Contrat d'association:  Le contrat d'opérations en association pour la recherche et l'exploitation d'hydrocarbures conclu entre les SOCIETES pour la recherche et l'exploitation éventuelle de gisements d'hydrocarbures sur le permis, tel que ce terme est défini au sous-paragraphe 1.04 ci-après.

1.04  Permis:  Le permis de recherches de type "A" dit "Marine 1" visé en tête de la CONVENTION attribué à HYDRO-CONGO pour le bénéfice de l'ASSOCIATION par le décret dont copie est jointe en Annexe I à la Convention, avec toutes ses prorogations, modifications, variations ou renouvellements éventuels, ainsi que tous les permis d'exploitation qui pourront être accordés sur une partie quelconque de sa surface.

1.05  Opérateur:  La SOCIETE qui est chargée, au nom des membres de l'ASSOCIATION, des travaux pétroliers -- tel que ce terme est défini au sous-paragraphe 1.10 ci-dessous -- sur le PERMIS, conformément aux dispositions du CONTRAT D'ASSOCIATION.

GAR 00005

3.

1.06  Hydrocarbures:  Les hydrocarbures solides, liquides et/ou gazeux découverts et/ou exploités sur le PERMIS.

1.07  Gaz naturel:  Tous les HYDROCARBURES gazeux produits par les SOCIETES sur le PERMIS, à l'exception des condensats qui sont séparés et récupérés sous forme liquide par utilisation des méthodes normales de récupération au champ.

1.08  Hydrocarbures liquides:  Les HYDROCARBURES produits par les PARTIES sur le PERMIS, à l'exception du GAZ NATUREL.

1.09  Société affiliée:

1.09.1    Toute société dans laquelle plus de 50% des droits de vote dans les assemblées générales ordinaires sont détenus directement ou indirectement par l'une des SOCIETES;

1.09.2    Toute société qui détient, directement ou indirectement, plus de 50% des droits de vote dans les assemblées générales ordinaires de l'une des SOCIETES;

1.09.3    Toute société dont les droits de vote dans les assemblées générales ordinaires sont détenus pour plus de 50% par une société qui détient elle-même, directement ou indirectement, plus de 50% des droits de vote dans les assemblées générales ordinaires de l'une des SOCIETES;

1.09.4    Toute société dans laquelle plus de 50% des droits de vote dans les assemblées générales ordinaires sont détenus directement ou indirectement par plusieurs SOCIETES ou par plusieurs sociétés telles que décrites aux paragraphes 1.09.1 à 1.09.3 ci-dessus.

1.10  Travaux pétroliers:  L'ensemble des activités, où qu'elles s'exercent, relatives à la recherche, au développement, à l'exploitation, au transport, au stockage et à la disposition des HYDROCARBURES au CONGO ou à l'exportation.

1.11  Travaux de recherche:  Ceux des TRAVAUX PETROLIERS réalisés dans le but de découvrir un gisement d'HYDROCARBURES, y compris le forage de découverte et les travaux d'appréciation, réalisés jusqu'à la date à laquelle le Comité de Direction prévu au CONTRAT D'ASSOCIATION aura déterminé, conformément à l'article 5 du CONTRAT D'ASSOCIATION, qu'une découverte est commercialement exploitable.

1.12  Travaux de développement et d'exploitation:  Tous TRAVAUX PETROLIERS autres que les TRAVAUX DE RECHERCHE, y compris le transport des HYDROCARBURES jusqu'au point d'enlèvement par les SOCIETES.

1.13  Sociétés étrangères:  Les SOCIETES, à l'exception d'HYDRO-CONGO.

GAR 00006

4.

1.14  Franc CFA:    Monnaie définie au titre II de la Con-
vention de Coopération Monétaire entre les Etats membres de la
Banque des Etats d'Afrique Centrale (B.E.A.C.) et la République
Française, signée à Brazzaville le 23 novembre 1972.

2.  Objet

2.01  La CONVENTION et ses annexes ont pour objet de
définir les conditions dans lesquelles les SOCIETES
participeront aux TRAVAUX PETROLIERS sur le PERMIS dans le
cadre de l'ASSOCIATION.

3.  Entrée en vigueur – Durée – Permis d'exploitation

3.01  La CONVENTION sera approuvée par un acte ayant force
de loi.  Elle entrera en vigueur lors de la publication de cet
acte au Journal Officiel du CONGO.

3.02  La CONVENTION est conclue pour la durée du PERMIS.

3.03  Chaque permis d'exploitation aura une durée de trente
(30) ans.

4.  Bénéficiaires

4.01  Les dispositions de la CONVENTION s'appliquent de
plein droit aux SOCIETES et à tout cessionnaire des droits de
chaque SOCIETE sur le PERMIS, ainsi qu'à toute société à
laquelle les SOCIETES ou l'une d'entre elles se seront asso-
ciées en lui cédant tout ou partie de leurs droits et obli-
gations sur le PERMIS.  Cependant, toute cession devra être
soumise préalablement à son entrée en vigueur à l'approbation
du Ministre de tutelle.

Si la décision du Ministre de tutelle n'intervient pas
dans un délai d'un (1) mois à compter de la signification de la
cession qui doit être soumise à son approbation, celle-ci sera
considérée comme étant tacitement rejetée.

4.01.1    Si le cessionnaire proposé est une société
entièrement contrôlée par le cédant ou par la société mère de
son groupe, l'autorisation du Ministre de tutelle est de droit
et, dans ce cas, nonobstant les dispositions du paragraphe 4.01
ci-dessus, l'autorisation sera réputée donnée un (1) mois
après le dépôt de la demande.  Si le cessionnaire proposé est
une SOCIETE AFFILIEE, l'autorisation du Ministre de tutelle ne
sera pas refusée sans raison et de manière discrétionnaire.

4.01.2    Tout acte ultérieur ayant pour effet de
faire perdre au cessionnaire le caractère de société entière-
ment contrôlée par le cédant ou par la société mère de son
groupe ou le caractère de SOCIETE AFFILIEE sera considéré comme
une nouvelle cession soumise à l'approbation préalable du
Ministre du tutelle dans les mêmes conditions.

GAR 00007

5.

4.01.3     Conformément à la politique pétrolière du CONGO, HYDRO-CONGO ne cédera pas sa participation dans l'ASSO-CIATION à moins que le cessionnaire ne soit entièrement con-trôlé par le CONGO.

5.   Garanties

5.01   Sous réserve des dispositions du sous-paragraphe 5.01.3 ci-dessous, le CONGO garantit aux SOCIETES, pour la durée de la CONVENTION, la stabilité des conditions juridiques, financières, minières et économiques dans lesquelles les SOCIETES exerceront leurs activités au CONGO, telles que ces conditions résultent de la législation et de la réglementation en vigueur à la date de signature de la CONVENTION et des modalités de la CONVENTION.

5.01.1     En conséquence, les SOCIETES ne seront soumises en quelque domaine que ce soit à aucune mesure aggravante par rapport au régime défini au paragraphe 5.01 ci-dessus.

5.01.2     En particulier, devra être considérée comme aggravante, au sens du sous-paragraphe 5.01.1 ci-dessus, toute mesure ayant pour effet soit de diminuer les profits nets des activités exercées dans le cadre de la CONVENTION en limitant les recettes ou en augmentant les charges d'exploitation des SOCIETES, soit, en général, de compromettre l'exécution ou la conduite des TRAVAUX PETROLIERS par des restrictions apportées aux droits des SOCIETES.

5.01.3     Toutefois, les modifications apportées à la législation du travail, de la sécurité et de la protection de l'environnement et à l'impôt sur le revenu des personnes physiques seront applicables de plein droit aux SOCIETES et à leur personnel, sauf si elles comportent des restrictions aux droits des SOCIETES concernant la propriété de leurs biens ou la libre disponibilité des HYDROCARBURES leur revenant au sens de l'article 10 ci-dessous.

5.01.4     En outre, les SOCIETES ne seront soumises, notamment en ce qui concerne le régime des biens et des per-sonnes, à aucune mesure discriminatoire de droit ou de fait à leur encontre.

5.02   Le CONGO garantit aux SOCIETES pour la durée de la CONVENTION que les conditions fiscales de l'exercice de leurs activités au CONGO au titre de la CONVENTION, en ce qui con-cerne l'impôt sur les sociétés visé à l'article 6 ci-dessous, seront régies par le Code Général de Impôts du CONGO et les textes législatifs ou réglementaires modifiant ledit Code et par la CONVENTION. En conséquence, les SOCIETES ne seront soumises, pour leurs activités au CONGO au titre de la CON-VENTION, à aucune mesure fiscale discriminatoire par rapport au droit commun applicable aux sociétés congolaises ou étrangères autres que celles résultant de la CONVENTION.

GAR 00008

6.

5.03  Le CONGO garantit aux SOCIETES pour la durée de la
CONVENTION, en application du Code Général des Impôts, que la
redevance minière versée au CONGO sur les quantités
d'HYDROCARBURES revenant aux SOCIETES aux termes du CONTRAT
D'ASSOCIATION sera fixée au taux de quatorze et demi pour cent
(14 1/2%) pour les HYDROCARBURES LIQUIDES, et de neuf pour cent
(9%) pour le GAZ NATUREL.

6.  Charges fiscales

6.01  Pour les TRAVAUX PETROLIERS, chacune des SOCIETES
sera assujettie à la redevance minière visée au paragraphe 5.03
ci-dessus et à l'article 7 ci-dessous, et à l'impôt sur les
sociétés visé aux articles 106 à 126 du Code Général des Impôts
du CONGO, à l'exclusion de toute autre imposition.

6.02  En conséquence, chacune des SOCIETES est exonérée
pour les TRAVAUX PETROLIERS et pour la durée de la CONVENTION
de tous autres impôts et taxes.  Cette exonération comprend
notamment:

6.02.1    L'exonération de tous droits de douanes et
de toutes taxes ou cautions à l'importation pour tous les biens
d'équipements, matières et fournitures consommables et pièces
de rechange de biens d'équipements destinés aux TRAVAUX PETRO-
LIERS, qu'ils soient importés par la SOCIETE directement, ou
indirectement par l'OPERATEUR au nom de la SOCIETE ou par
l'intermédiaire de fournisseurs et d'entreprises
sous-traitantes.

6.02.2    L'exonération de tous droits ou taxes à
l'exportation applicables aux biens d'équipement et pièces de
rechange pour lesdits biens d'équipement lorsque ceux-ci ont
été importés en franchise de tout droit, conformément au
sous-paragraphe 6.02.1 ci-dessus, ainsi qu'aux HYDROCARBURES
produits sur le PERMIS appartenant à la SOCIETE conformément à
l'article 10 ci-dessous.

6.02.3    L'exonération de l'impôt sur le chiffre
d'affaires intérieur, de la taxe unique, de la taxe sur les
transactions et tous autres impôts indirects, relatifs à la
fourniture des biens (matériels, équipements, pièces de
rechange, etc.), services et travaux de toute espèce relatifs
aux TRAVAUX PETROLIERS prévus à la CONVENTION, que la
fourniture soit faite par la SOCIETE, par l'OPERATEUR ou par
des entrepreneurs de travaux, des fournisseurs et prestataires
de services travaillant directement ou indirectement pour le
compte de la SOCIETE.

6.02.4    L'exonération des droits d'enregistrement
relatifs à tous les actes de toute nature auxquels la SOCIETE
ou l'OPERATEUR au nom de la SOCIETE peut être partie dans le
cadre des TRAVAUX PETROLIERS sur le PERMIS, à toutes trans-
missions de propriété ou de jouissance à la SOCIETE de biens

GAR 00009

7.

mobiliers ou immobiliers pour la réalisation des TRAVAUX PETRO-
LIERS, ou relatifs aux contrats d'assurance auxquels la SOCIETE
ou l'OPERATEUR en son nom peut être partie et qui concernent
les TRAVAUX PETROLIERS.

      6.02.5    L'exonération de tout droit ou impôt relatif
au paiement d'intérêts ou de dividendes par la SOCIETE.

      6.03  Etablissement de l'impôt sur les sociétés de chacune
des SOCIETES

      6.03.1    A l'exception de celles précisées au présent
paragraphe 6.03, les règles de l'assiette et du recouvrement de
l'impôt sur les sociétés sont celles fixées par le Code Général
des Impôts du CONGO.

      6.03.2    Chacune des SOCIETES sera soumise à l'impôt
sur les sociétés, conformément aux dispositions du Code Général
des Impôts du CONGO, et, si le taux de l'impôt sur les sociétés
fixé par le Code Général des Impôts du CONGO est inférieur à
cinquante cinq pour cent (55%), à un impôt additionnel calculé
en appliquant au bénéfice imposable un pourcentage égal à la
différence entre le taux de l'impôt sur les sociétés et
cinquante cinq pour cent (55%).

      6.03.3    L'assiette de l'impôt sur les sociétés
applicable à chacune des SOCIETES au titre de ses activités
exercées dans le cadre de la CONVENTION sera calculée sur la
base des prix tels que définis à l'annexe II jointe à la CON-
VENTION. Les amortissements seront calculés par chacune des
SOCIETES conformément aux règles posées par le Code Général des
Impôts du CONGO; toutefois, chacune des SOCIETES appliquera les
taux élément par élément figurant au tableau joint à la
CONVENTION en annexe III.

      6.03.4    Afin de permettre le calcul de l'impôt sur
les sociétés dû par chacune des SOCIETES au titre de ses
activités exercées dans le cadre de la CONVENTION, chaque
SOCIETE devra, à compter de la date d'entrée en vigueur et
pendant la durée de la CONVENTION, tenir une comptabilité con-
forme aux règles fixées par le Code Général des Impôts du CONGO.

      6.03.5    Les dispositions de l'article 109 du Code
Général des Impôts du CONGO ne seront pas applicables aux
SOCIETES.

      6.03.6    Par dérogation à l'article 116 du Code
Général des Impôts du CONGO, les SOCIETES ne sont pas
autorisées à déduire de leur bénéfice imposable à l'impôt sur
les sociétés les intérêts et agios payés sur des emprunts
éventuellement réalisés pour le financement des TRAVAUX PETRO-
LIERS auprès de SOCIETES AFFILIEES. A partir de la date à
laquelle le Comité de Direction prévu au CONTRAT D'ASSOCIATION
aura déterminé, conformément au CONTRAT D'ASSOCIATION, qu'une

GAR 00010

8.

découverte est commercialement exploitable, chaque SOCIETE sera
admise à déduire de son bénéfice imposable les intérêts et
agios payés sur des emprunts réalisés pour le financement des
TRAVAUX DE DEVELOPPEMENT ET D'EXPLOITATION auprès d'organismes
financiers indépendants des SOCIETES, moyennant présentation
par la SOCIETE emprunteuse aux autorités fiscales de certifi-
cats émanant desdits organismes financiers.

   6.03.7    La redevance minière visée à l'article 7
ci-dessous est déductible du résultat imposable et elle ne peut
en aucun cas être traitée comme une avance sur l'impôt sur les
sociétés.

   6.03.8    La limite de dix pour cent (10%) posée par
le deuxième alinéa de l'article 20.I.6º, du Code Général des
Impôts du Congo, tel que modifié par l'article 5 de la loi
nº 30/74, ne sera pas applicable aux SOCIETES.

   6.04  Les rémunérations et salaires versés au personnel des
SOCIETES en service au CONGO pour la réalisation des TRAVAUX
PETROLIERS seront soumis aux impôts afférents à ces revenus
conformément aux dispositions du Code Général des Impôts du
CONGO.

   6.05  L'impôt sur les sociétés fait l'objet du versement
d'acomptes mensuels provisoires suivant les modalités fixées à
l'annexe IV jointe à la CONVENTION.

7.  Redevance minière

   7.01  L'assiette de la redevance minière acquittée en
espèces ou en nature est égale, pour chaque SOCIETE, à la
valeur des HYDROCARBURES enlevés par elle, calculée sur la base
du prix déterminé conformément à l'annexe II jointe à la CON-
VENTION, diminuée des frais de transport intérieur, traitement,
stockage et chargement, tels que ces frais résultent de la
comptabilité de la SOCIETE et  constituent des charges
fiscalement déductibles.  La redevance n'est pas due sur les
quantités d'HYDROCARBURES utilisées pour les besoins des
TRAVAUX PETROLIERS, ou perdues.

   7.02  La redevance minière prévue au présent article 7 est
payée en espèces ou en nature au choix du CONGO.

   7.03  L'OPERATEUR communiquera à l'autorité compétente du
CONGO la date prévue pour la première exportation d'HYDRO-
CARBURES au moins six (6) mois à l'avance, afin que cette
autorité puisse faire connaître à la SOCIETE ou à l'OPERATEUR,
dans un délai de cinq (5) mois après la réception de ladite
communication, le mode de règlement de la redevance minière
choisi par l'Administration. L'Administration pourra toujours
modifier le mode de règlement ainsi choisi, sauf à en notifier
la SOCIETE ou l'OPERATEUR en son nom au moins trois (3) mois à
l'avance. Toutefois, l'Administration est réputée avoir opté

**GAR 00011**

9.

initialement pour le paiement en espèces de la redevance
minière.

Si, à un moment où l'Administration prélève la
redevance minière en espèces, les SOCIETES ont la possibilité
de prendre des engagements de ventes pour une période de plus
de trois (3) mois, lesquels ne pourraient être satisfaits au
cas où l'Administration déciderait de prélever la redevance en
nature, les SOCIETES pourront soumettre le projet de contrat de
vente au Ministre de tutelle, qui pourra à sa discrétion
l'approuver ou non. En cas d'approbation, la redevance
continuera d'être perçue en espèces pendant la durée dudit
contrat.

7.04   La quantité d'HYDROCARBURES sur laquelle s'applique
la redevance minière est mesurée au point de livraison décrit
au sous-paragraphe 10.02.1. Les méthodes de mesure utilisées
seront agréées par l'autorité congolaise compétente qui devra
être tenue au fait du déroulement des opérations afin de
pouvoir se faire représenter et de procéder, si elle l'estime
nécessaire, à toute mesure de contrôle.

Dans le mois qui suit la fin de la période pour
laquelle la redevance minière est due, chaque SOCIETE, ou
l'OPERATEUR en son nom, transmettra à l'autorité congolaise
compétente un relevé des quantités d'HYDROCARBURES assujetties
à la redevance minière, accompagné de toutes justifications
utiles.

7.05   La redevance minière, qu'elle soit en nature ou en
espèces, sera liquidée et versée trimestriellement dans les
conditions visées ci-après:

7.05.1   Le paiement en nature de la redevance
minière sera effectué au profit d'HYDRO-CONGO agissant pour le
compte du CONGO selon les modalités arrêtées au paragraphe 4.11
et aux articles 9 et 10 du CONTRAT D'ASSOCIATION pour la remise
à HYDRO-CONGO de la part de production lui revenant. Les
quantités d'HYDROCARBURES dues au CONGO au titre du présent
article 7 seront livrées à HYDRO-CONGO au cours du mois suivant
celui au titre duquel la redevance minière proportionnelle est
due.

7.05.2   Le paiement en espèces de la redevance
minière se fera au cours du mois qui suit la fin du trimestre
calendaire au titre duquel la redevance minière en espèces est
due.

7.06   La redevance minière, lorsqu'elle est payée en
espèces, fait l'objet de déclarations et de versements provi-
soires mensuels suivant les modalités figurant dans l'annexe IV
jointe à la CONVENTION.

**GAR 00012**

10.

7.07  En raison du caractère particulier du GAZ NATUREL, les parties se consulteront en cas de découverte de GAZ NATUREL pour préciser les modalités de règlement en nature de la rede-vance minière sur le GAZ NATUREL conformément aux principes énoncés au présent article 7.

8.  Changes

8.01  Le CONGO garantit pour la durée de la CONVENTION, aux SOCIETES, aux personnes physiques régulièrement employées par elles et aux personnes physiques ou morales chargées par elles de réaliser ou financer les TRAVAUX PETROLIERS ou la commer-cialisation des HYDROCARBURES que:

8.01.1   Le CONGO n'impose pas aux SOCIETES d'obli-gation de rapatriement du produit de la vente à l'exportation d'HYDROCARBURES.

8.01.2   Les SOCIETES pourront payer à l'étranger en devises, en utilisant les fonds conservés par elles à l'étranger, les entreprises, fournisseurs et prêteurs en exécution des contrats conclus pour l'exécution des TRAVAUX PETROLIERS.

8.01.3   Les SOCIETES pourront emprunter à l'étranger toutes les sommes qui peuvent leur être nécessaires pour réaliser les TRAVAUX PETROLIERS.

8.01.4   Les SOCIETES pourront transférer en faveur des fournisseurs résidant hors de la zone franc toutes les sommes dues à ces derniers.

8.01.5   Les SOCIETES pourront librement rapatrier du CONGO vers les pays membres de la zone franc les capitaux provenant de ces pays investis au CONGO dans le cadre des TRAVAUX PETROLIERS, et transférer dans les mêmes conditions leurs produits éventuels.

8.01.6   Les SOCIETES pourront rapatrier du CONGO vers les pays extérieurs à la zone franc les capitaux provenant de ces pays investis au CONGO dans le cadre des TRAVAUX PETRO-LIERS, et transférer dans les mêmes conditions leurs produits éventuels.  Le CONGO garantit aux SOCIETES qu'elles obtiendront des moyens de règlement sur les pays extérieurs à la zone franc nécessaires à la réalisation des opérations visées à la CON-VENTION.

8.01.7   Les SOCIETES pourront exporter librement du CONGO à destination des pays membres de la zone franc toutes les sommes dont elles pourront être débitrices envers les four-nisseurs, affréteurs et autres prestataires de services, ainsi qu'envers leurs actionnaires qui résident en zone franc et, d'une manière générale, toutes les sommes dont les SOCIETES pourront être débitrices à un titre quelconque pendant la durée de la CONVENTION.

GAR 00013

11.

8.01.8    Les membres du personnel ressortissant des pays membres de la zone franc régulièrement employés par les SOCIETES pourront exporter librement du CONGO à destination des pays de la zone franc leurs économies sur salaire.

8.01.9    Les SOCIETES pourront exporter du CONGO à destination des pays extérieurs à la zone franc toutes les sommes dont elles pourront être débitrices envers les fournisseurs, affréteurs et autres prestataires de services, ainsi qu'envers leurs actionnaires qui résident dans ces pays.

8.01.10    Les membres du personnel ressortissant des pays extérieurs à la zone franc régulièrement employés par les SOCIETES pourront exporter du CONGO à destination de ces pays leurs économies sur salaire.

8.02    Tout transfert de devises à destination ou en provenance de la zone franc effectué conformément aux sous-paragraphes 8.01.4, 8.01.6, 8.01.9 et 8.01.10 ci-dessus sera réalisé sous le contrôle du Bureau des relations financières avec l'étranger ("B.R.F.E.") conformément à la réglementation en vigueur au CONGO et relative à la zone franc.

8.03    Les transactions visées aux sous-paragraphes 8.01.4, 8.01.6, 8.01.9 et 8.01.10 ci-dessus ne seront pas rendues plus onéreuses pour les SOCIETES qu'elles ne le sont pour d'autres acheteurs et vendeurs de devises en matière commerciale par imposition d'un taux différent ou de taxes ou commissions spéciales.

9.    Paiements forfaitaires

9.01    La SOCIETE nommée Opérateur par le CONTRAT D'ASSOCIATION paiera au CONGO au nom et pour le compte des SOCIETES ETRANGERES les montants forfaitaires suivants:

9.01.1    Deux cent cinquante millions (250.000.000) de FRANCS CFA lorsque la production journalière d'HYDROCARBURES LIQUIDES sur le PERMIS aura atteint trente mille (30.000) barils par jour et se sera maintenue pendant une période de cent vingt (120) jours consécutifs à une moyenne de trente mille (30.000) barils par jour; et

9.01.2    Six cent vingt cinq millions (625.000.000) de FRANCS CFA lorsque la production journalière d'HYDROCARBURES LIQUIDES sur le PERMIS aura atteint soixante quinze mille (75.000) barils par jour et se sera maintenue pendant une période de cent vingt (120) jours consécutifs à une moyenne de soixante quinze mille (75.000) barils par jour.

9.01.3    Les montants forfaitaires visés aux sous-paragraphes 9.01.1 et 9.01.2 ci-dessus deviendront exigibles trente (30) jours après l'expiration de chacune des périodes de cent vingt (120) jours visées auxdits sous-paragraphes.

**GAR 00014**

12.

9.02  Les montants visés aux sous-paragraphes 9.01.1 et
9.01.2 ci-dessus pourront donner lieu à constitution
d'immobilisations amortissables fiscalement dans les comptes
des SOCIETES ETRANGERES.

10.  Disposition des HYDROCARBURES

10.01  Chaque SOCIETE aura le droit d'enlever librement la
part d'HYDROCARBURES qui lui revient au titre du CONTRAT
d'ASSOCIATION.

Elle pourra librement vendre, céder, transporter,
consommer ou exporter, directement ou indirectement, ladite
part.

10.02  Toutefois, et par dérogation au principe posé par le
paragraphe 10.01 ci-dessus, chaque SOCIETE pourra être tenue, à
la demande du CONGO, d'affecter en priorité les HYDROCARBURES
provenant de son exploitation à la satisfaction des besoins de
l'industrie congolaise aux conditions définies ci-après, à
condition: (a) que la part de production revenant à
HYDRO-CONGO ait été utilisée pour satisfaire les besoins de
l'industrie congolaise; (b) que le maximum de la part de
production de chacune des SOCIETES ETRANGERES ainsi affectée à
la satisfaction des besoins de l'industrie congolaise n'excède
pas trente pour cent (30%) des HYDROCARBURES qui lui reviennent.

10.02.1  La livraison des quantités d'HYDROCARBURES
revenant au CONGO, y compris les HYDROCARBURES LIQUIDES
destinés à la Raffinerie de Pointe Noire, sera faite soit à la
tête de puits, soit à la sortie du centre de collecte si les
parties au CONTRAT D'ASSOCIATION décident, conformément aux
dispositions du CONTRAT D'ASSOCIATION, d'en construire un.  Au
cas où les livraisons d'HYDROCARBURES LIQUIDES au CONGO au
titre du présent sous-paragraphe 10.02.1 excèderaient la part
revenant au CONGO au titre de la redevance minière conformément
au paragraphe 5.03 ci-dessus, le prix de vente de cet excédent
sera le prix moyen réalisé par les SOCIETES pour les ventes à
des acheteurs non affiliés conclues au cours du mois calendaire
précédant celui au cours duquel a lieu la vente d'HYDROCARBURES
LIQUIDES au CONGO.

10.02.2  L'engagement de chaque SOCIETE de céder une
part de sa production d'HYDROCARBURES provenant du PERMIS dans
les conditions définies au paragraphe 10.02 ci-dessus et au
prix défini au sous-paragraphe 10.02.1 ci-dessus est limité,
pour chaque année calendaire, à la fraction des besoins de
l'industrie congolaise en HYDROCARBURES de la qualité requise
par l'industrie congolaise qui est égale au rapport entre la
part de la production d'HYDROCARBURES de cette qualité revenant
à la SOCIETE au titre du CONTRAT D'ASSOCIATION et la production
totale d'HYDROCARBURES de ladite qualité issue du territoire du
CONGO pour cette même année calendaire.  Le CONGO notifiera à
la SOCIETE, avant le début de chaque année calendaire, les
tonnages requis par elle pour cette même année calendaire au
titre de l'engagement ci-dessus.

GAR 00015

13.

dans la mesure où l'OPERATEUR détermine que cela est possible dans le cadre des opérations visées par la CONVENTION, l'OPERATEUR tentera de fournir au CONGO les différentes qualités que le CONGO peut demander.

10.02.4    Les quantités d'HYDROCARBURES cédées en application des dispositions du présent article 10 seront payées par le CONGO dans un délai de quinze (15) jours à compter de la fin du mois calendaire de livraison, sur présentation de la facture correspondante par chacune des SOCIETES.

10.03  En cas de découverte de GAZ NATUREL, les parties se réuniront dans les plus brefs délais pour envisager les aménagements qui devront être éventuellement apportés au présent article 10 pour appliquer les principes de la CONVENTION à une telle exploitation.

10.03.1    L'exploitation éventuelle des gisements de GAZ NATUREL se fera conformément aux principes qui régissent les rapports entre les membres de l'ASSOCIATION.

10.03.2    Si l'utilisation du GAZ NATUREL découvert sur le PERMIS n'est pas jugée rentable par les membres de l'ASSOCIATION conformément aux dispositions du CONTRAT D'ASSO-CIATION, le CONGO aura la possibilité, directement ou par l'intermédiaire d'HYDRO-CONGO, d'utiliser le GAZ NATUREL et ceci à ses frais.

Si le CONGO exerce son droit d'utiliser le GAZ NATUREL pour son propre usage comme prévu ci-dessus, les installations nécessaires au développement, à la production, au transport et au traitement, y compris notamment la séparation, la compres-sion ou la liquéfaction du GAZ NATUREL, depuis le premier séparateur après le point de production, et d'une capacité suffisante pour traiter le GAZ NATUREL, seront fournies à ses frais par HYDRO-CONGO. Les SOCIETES conviennent de fournir, à des conditions qui seront convenues alors, telle assistance et telle coopération techniques dont HYDRO-CONGO peut avoir besoin pour le développement et l'exploitation des gisements de GAZ NATUREL, et pour l'élaboration, la construction, la gestion et l'entretien de ces installations. En aucun cas lesdites acti-vités ne pourront interférer avec les TRAVAUX PETROLIERS de l'ASSOCIATION.

10.03.3    Tout GAZ NATUREL produit sur le PERMIS et non utilisé directement pour les TRAVAUX PETROLIERS ou conformément au sous-paragraphe 10.03.2 ci-dessus pourra être brûlé en torche.

11.  Emploi et formation du personnel

11.01  Conformément au sous-paragraphe 5.01.3 ci-dessus, chacune des SOCIETES sera soumise à la législation et à la réglementation du travail, telles qu'elles résultent des textes

**GAR 00016**