# EXHIBIT G

# Rules of Arbitration

*in force as from 1 January 1998*

**Cost scales effective as of 1 July 2003**

**International Chamber of Commerce**
38 cours Albert 1er
75008 Paris - France
Telephone +33 1 49 53 28 28
Fax +33 1 49 53 29 33
Web site www.iccwbo.org

The ICC Rules of Arbitration and their Appendices have
been translated into many different languages.
However, the English and French versions are the only
official texts.

© **International Chamber of Commerce 1997,
2001**

All rights reserved.

**ICC No.: publication 808**

Date of this online publication: October 2004

# FOREWORD

The closing decades of the twentieth century saw international commercial arbitration gain worldwide acceptance as the normal means of resolving international commercial disputes. National laws on arbitration have been modernized on all continents. International treaties on arbitration have been signed or adhered to with impressive success. Arbitration has become part of the curricula of large numbers of law schools. With the gradual removal of political and trade barriers and the rapid globalization of the world economy, new challenges have been created for arbitration institutions in response to the growing demand of parties for certainty and predictability, greater rapidity and flexibility as well as neutrality and efficacy in the resolution of international disputes.

Since the International Court of Arbitration was established in 1923, ICC arbitration has been constantly nourished by the experience gathered by the ICC International Court of Arbitration in the course of administering more than thirteen thousand international arbitration cases, now involving each year parties and arbitrators from over 100 countries and from a diversity of legal, economic, cultural and linguistic backgrounds.

The present ICC Rules of Arbitration came into effect on 1 January 1998. They are the result of an intensive, worldwide consultation process and constitute the first major revision of the Rules in more than 20 years. The changes made are designed to reduce delays and ambiguities and to fill certain gaps, taking into account the evolution of arbitration practice. The basic features of the ICC arbitration system have not been altered, however, notably its universality and flexibility, as well as the central role played by the ICC Court in the administration of arbitral cases.

Every ICC arbitration is conducted by an arbitral tribunal with responsibility for examining the merits of the case and rendering a final award. Each year, ICC arbitrations are held in numerous countries, in most major languages

3

and with arbitrators from all over the world. The work of those arbitral tribunals is monitored by the ICC Court, which meets weekly all year round. Composed of members from over 80 countries, the Court organizes and supervises arbitrations held under the ICC Rules of Arbitration. The Court must remain constantly alert to changes in the law and the practice of arbitration in all parts of the world and must adapt its working methods to the evolving needs of parties and arbitrators. For the day-to-day management of cases in many languages, the ICC Court is supported by a Secretariat based at the headquarters of the International Chamber of Commerce, in Paris.

Although the ICC Rules of Arbitration have been especially designed for arbitrations in an international context, they may also be used for non-international cases.

## STANDARD ICC ARBITRATION CLAUSE

The ICC recommends that all parties wishing to make reference to ICC arbitration in their contracts use the following standard clause.

Parties are reminded that it may be desirable for them to stipulate in the arbitration clause itself the law governing the contract, the number of arbitrators and the place and language of the arbitration. The parties' free choice of the law governing the contract and of the place and language of the arbitration is not limited by the ICC Rules of Arbitration.

Attention is called to the fact that the laws of certain countries require that parties to contracts expressly accept arbitration clauses, sometimes in a precise and particular manner.

The ICC Rules of Arbitration have been translated into several of the languages listed below. These translations are available on the web site of the ICC International Court of Arbitration:

**www.iccarbitration.org**

### English

"All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

5

### STANDARD CLAUSE FOR AN ICC
### PRE-ARBITRAL REFEREE PROCEDURE AND
### ICC ARBITRATION

The ICC Pre-Arbitral Referee Procedure provides for the appointment of a person empowered to make certain orders that might be necessary prior to a case being referred to arbitration or the courts. Use of this procedure presupposes a written agreement between the parties. Where parties wish to have recourse to both the ICC Pre-Arbitral Referee Procedure and ICC arbitration, specific reference should be made to both procedures. The following standard clause is recommended:

"Any party to this contract shall have the right to have recourse to and shall be bound by the Pre-Arbitral Referee Procedure of the International Chamber of Commerce in accordance with its Rules for a Pre-Arbitral Referee Procedure.
All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules of Arbitration."

For translations of this clause, please consult the web site of the ICC International Court of Arbitration:

**www.iccarbitration.org**

## RULES OF ARBITRATION OF THE
## INTERNATIONAL CHAMBER OF COMMERCE

### INTRODUCTORY PROVISIONS

### Article 1
### International Court of Arbitration

1

The International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") is the arbitration body attached to the ICC. The statutes of the Court are set forth in Appendix I. Members of the Court are appointed by the World Council of the ICC. The function of the Court is to provide for the settlement by arbitration of business disputes of an international character in accordance with the Rules of Arbitration of the International Chamber of Commerce (the "Rules"). If so empowered by an arbitration agreement, the Court shall also provide for the settlement by arbitration in accordance with these Rules of business disputes not of an international character.

2

The Court does not itself settle disputes. It has the function of ensuring the application of these Rules. It draws up its own Internal Rules (Appendix II).

3

The Chairman of the Court or, in the Chairman's absence or otherwise at his request, one of its Vice-Chairmen shall have the power to take urgent decisions on behalf of the Court, provided that any such decision is reported to the Court at its next session.

4

As provided for in its Internal Rules, the Court may delegate to one or more committees composed of its members the power to take certain decisions, provided that any such decision is reported to the Court at its next session.

7

*ICC Rules of Arbitration*

5

The Secretariat of the Court (the "Secretariat") under the direction of its Secretary General (the "Secretary General") shall have its seat at the headquarters of the ICC.

## Article 2
## Definitions

In these Rules:

(i)   "Arbitral Tribunal" includes one or more arbitrators.

(ii)  "Claimant" includes one or more claimants and "Respondent" includes one or more respondents.

(iii) "Award" includes, *inter alia*, an interim, partial or final Award.

## Article 3
## Written Notifications or Communications;
## Time Limits

1

All pleadings and other written communications submitted by any party, as well as all documents annexed thereto, shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for each arbitrator, and one for the Secretariat. A copy of any communication from the Arbitral Tribunal to the parties shall be sent to the Secretariat.

2

All notifications or communications from the Secretariat and the Arbitral Tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, facsimile transmission, telex, telegram or any other means of telecommunication that provides a record of the sending thereof.

3

A notification or communication shall be deemed to have been made on the day it was received by the party itself

8

*ICC Rules of Arbitration*

or by its representative, or would have been received if made in accordance with the preceding paragraph.

4

Periods of time specified in or fixed under the present Rules shall start to run on the day following the date a notification or communication is deemed to have been made in accordance with the preceding paragraph. When the day next following such date is an official holiday, or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall commence on the first following business day. Official holidays and non-business days are included in the calculation of the period of time. If the last day of the relevant period of time granted is an official holiday or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall expire at the end of the first following business day.

## COMMENCING THE ARBITRATION

## Article 4
## Request for Arbitration

1

A party wishing to have recourse to arbitration under these Rules shall submit its Request for Arbitration (the "Request") to the Secretariat, which shall notify the Claimant and Respondent of the receipt of the Request and the date of such receipt.

2

The date on which the Request is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of the arbitral proceedings.

3

The Request shall, *inter alia*, contain the following information:

*ICC Rules of Arbitration*

a)  the name in full, description and address of each of the parties;

b)  a description of the nature and circumstances of the dispute giving rise to the claim(s);

c)  a statement of the relief sought, including, to the extent possible, an indication of any amount(s) claimed;

d)  the relevant agreements and, in particular, the arbitration agreement;

e)  all relevant particulars concerning the number of arbitrators and their choice in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and

f)  any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

4

Together with the Request, the Claimant shall submit the number of copies thereof required by Article 3(1) and shall make the advance payment on administrative expenses required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted. In the event that the Claimant fails to comply with either of these requirements, the Secretariat may fix a time limit within which the Claimant must comply, failing which the file shall be closed without prejudice to the right of the Claimant to submit the same claims at a later date in another Request.

5

The Secretariat shall send a copy of the Request and the documents annexed thereto to the Respondent for its Answer to the Request once the Secretariat has sufficient copies of the Request and the required advance payment.

6

When a party submits a Request in connection with a legal relationship in respect of which arbitration proceedings between the same parties are already pending under these Rules, the Court may, at the request

1 0

*ICC Rules of Arbitration*

of a party, decide to include the claims contained in the Request in the pending proceedings provided that the Terms of Reference have not been signed or approved by the Court. Once the Terms of Reference have been signed or approved by the Court, claims may only be included in the pending proceedings subject to the provisions of Article 19.

## Article 5
## Answer to the Request; Counterclaims

1

Within 30 days from the receipt of the Request from the Secretariat, the Respondent shall file an Answer (the "Answer") which shall, *inter alia*, contain the following information:

a)  its name in full, description and address;

b)  its comments as to the nature and circumstances of the dispute giving rise to the claim(s);

c)  its response to the relief sought;

d)  any comments concerning the number of arbitrators and their choice in light of the Claimant's proposals and in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and

e)  any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

2

The Secretariat may grant the Respondent an extension of the time for filing the Answer, provided the application for such an extension contains the Respondent's comments concerning the number of arbitrators and their choice and, where required by Articles 8, 9 and 10, the nomination of an arbitrator. If the Respondent fails to do so, the Court shall proceed in accordance with these Rules.

3

The Answer shall be supplied to the Secretariat in the number of copies specified by Article 3(1).

*ICC Rules of Arbitration*

**4**

A copy of the Answer and the documents annexed thereto shall be communicated by the Secretariat to the Claimant.

**5**

Any counterclaim(s) made by the Respondent shall be filed with its Answer and shall provide:

a) a description of the nature and circumstances of the dispute giving rise to the counterclaim(s); and

b) a statement of the relief sought, including, to the extent possible, an indication of any amount(s) counterclaimed.

**6**

The Claimant shall file a reply to any counterclaim within 30 days from the date of receipt of the counterclaim(s) communicated by the Secretariat. The Secretariat may grant the Claimant an extension of time for filing the reply.

## Article 6
## Effect of the Arbitration Agreement

**1**

Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted *ipso facto* to the Rules in effect on the date of commencement of the arbitration proceedings, unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.

**2**

If the Respondent does not file an Answer, as provided by Article 5, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is *prima facie* satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral

*ICC Rules of Arbitration*

Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.

3

If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.

4

Unless otherwise agreed, the Arbitral Tribunal shall not cease to have jurisdiction by reason of any claim that the contract is null and void or allegation that it is non-existent, provided that the Arbitral Tribunal upholds the validity of the arbitration agreement. The Arbitral Tribunal shall continue to have jurisdiction to determine the respective rights of the parties and to adjudicate their claims and pleas even though the contract itself may be non-existent or null and void.

## THE ARBITRAL TRIBUNAL

### Article 7
### General Provisions

1

Every arbitrator must be and remain independent of the parties involved in the arbitration.

2

Before appointment or confirmation, a prospective arbitrator shall sign a statement of independence and disclose in writing to the Secretariat any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties. The Secretariat shall provide such information to the parties in writing and fix a time limit for any comments from them.

13

*ICC Rules of Arbitration*

3

An arbitrator shall immediately disclose in writing to the Secretariat and to the parties any facts or circumstances of a similar nature which may arise during the arbitration.

4

The decisions of the Court as to the appointment, confirmation, challenge or replacement of an arbitrator shall be final and the reasons for such decisions shall not be communicated.

5

By accepting to serve, every arbitrator undertakes to carry out his responsibilities in accordance with these Rules.

6

Insofar as the parties have not provided otherwise, the Arbitral Tribunal shall be constituted in accordance with the provisions of Articles 8, 9 and 10.

## Article 8
## Number of Arbitrators

1

The disputes shall be decided by a sole arbitrator or by three arbitrators.

2

Where the parties have not agreed upon the number of arbitrators, the Court shall appoint a sole arbitrator, save where it appears to the Court that the dispute is such as to warrant the appointment of three arbitrators. In such case, the Claimant shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the decision of the Court, and the Respondent shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the nomination made by the Claimant.

3

Where the parties have agreed that the dispute shall be settled by a sole arbitrator, they may, by agreement,

*ICC Rules of Arbitration*

nominate the sole arbitrator for confirmation. If the parties fail to nominate a sole arbitrator within 30 days from the date when the Claimant's Request for Arbitration has been received by the other party, or within such additional time as may be allowed by the Secretariat, the sole arbitrator shall be appointed by the Court.

4

Where the dispute is to be referred to three arbitrators, each party shall nominate in the Request and the Answer, respectively, one arbitrator for confirmation. If a party fails to nominate an arbitrator, the appointment shall be made by the Court. The third arbitrator, who will act as chairman of the Arbitral Tribunal, shall be appointed by the Court, unless the parties have agreed upon another procedure for such appointment, in which case the nomination will be subject to confirmation pursuant to Article 9. Should such procedure not result in a nomination within the time limit fixed by the parties or the Court, the third arbitrator shall be appointed by the Court.

## Article 9
## Appointment and Confirmation of the Arbitrators

1

In confirming or appointing arbitrators, the Court shall consider the prospective arbitrator's nationality, residence and other relationships with the countries of which the parties or the other arbitrators are nationals and the prospective arbitrator's availability and ability to conduct the arbitration in accordance with these Rules. The same shall apply where the Secretary General confirms arbitrators pursuant to Article 9(2).

2

The Secretary General may confirm as co-arbitrators, sole arbitrators and chairmen of Arbitral Tribunals persons nominated by the parties or pursuant to their particular agreements, provided they have filed a statement of independence without qualification or a qualified statement of independence has not given rise to

1 5

*ICC Rules of Arbitration*

objections. Such confirmation shall be reported to the Court at its next session. If the Secretary General considers that a co-arbitrator, sole arbitrator or chairman of an Arbitral Tribunal should not be confirmed, the matter shall be submitted to the Court.

3

Where the Court is to appoint a sole arbitrator or the chairman of an Arbitral Tribunal, it shall make the appointment upon a proposal of a National Committee of the ICC that it considers to be appropriate. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, the Court may repeat its request or may request a proposal from another National Committee that it considers to be appropriate.

4

Where the Court considers that the circumstances so demand, it may choose the sole arbitrator or the chairman of the Arbitral Tribunal from a country where there is no National Committee, provided that neither of the parties objects within the time limit fixed by the Court.

5

The sole arbitrator or the chairman of the Arbitral Tribunal shall be of a nationality other than those of the parties. However, in suitable circumstances and provided that neither of the parties objects within the time limit fixed by the Court, the sole arbitrator or the chairman of the Arbitral Tribunal may be chosen from a country of which any of the parties is a national.

6

Where the Court is to appoint an arbitrator on behalf of a party which has failed to nominate one, it shall make the appointment upon a proposal of the National Committee of the country of which that party is a national. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, or if the country of which the said party is a national has no National

*ICC Rules of Arbitration*

Committee, the Court shall be at liberty to choose any person whom it regards as suitable. The Secretariat shall inform the National Committee, if one exists, of the country of which such person is a national.

## Article 10
## Multiple Parties

1

Where there are multiple parties, whether as Claimant or as Respondent, and where the dispute is to be referred to three arbitrators, the multiple Claimants, jointly, and the multiple Respondents, jointly, shall nominate an arbitrator for confirmation pursuant to Article 9.

2

In the absence of such a joint nomination and where all parties are unable to agree to a method for the constitution of the Arbitral Tribunal, the Court may appoint each member of the Arbitral Tribunal and shall designate one of them to act as chairman. In such case, the Court shall be at liberty to choose any person it regards as suitable to act as arbitrator, applying Article 9 when it considers this appropriate.

## Article 11
## Challenge of Arbitrators

1

A challenge of an arbitrator, whether for an alleged lack of independence or otherwise, shall be made by the submission to the Secretariat of a written statement specifying the facts and circumstances on which the challenge is based.

2

For a challenge to be admissible, it must be sent by a party either within 30 days from receipt by that party of the notification of the appointment or confirmation of the arbitrator, or within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

1 7

*ICC Rules of Arbitration*

3

The Court shall decide on the admissibility and, at the same time, if necessary, on the merits of a challenge after the Secretariat has afforded an opportunity for the arbitrator concerned, the other party or parties and any other members of the Arbitral Tribunal to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

## Article 12
## Replacement of Arbitrators

1

An arbitrator shall be replaced upon his death, upon the acceptance by the Court of the arbitrator's resignation, upon acceptance by the Court of a challenge, or upon the request of all the parties.

2

An arbitrator shall also be replaced on the Court's own initiative when it decides that he is prevented *de jure* or *de facto* from fulfilling his functions, or that he is not fulfilling his functions in accordance with the Rules or within the prescribed time limits.

3

When, on the basis of information that has come to its attention, the Court considers applying Article 12(2), it shall decide on the matter after the arbitrator concerned, the parties and any other members of the Arbitral Tribunal have had an opportunity to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

4

When an arbitrator is to be replaced, the Court has discretion to decide whether or not to follow the original nominating process. Once reconstituted, and after having invited the parties to comment, the Arbitral Tribunal shall determine if and to what extent prior proceedings shall be repeated before the reconstituted Arbitral Tribunal.

*ICC Rules of Arbitration*

5

Subsequent to the closing of the proceedings, instead of replacing an arbitrator who has died or been removed by the Court pursuant to Articles 12(1) and 12(2), the Court may decide, when it considers it appropriate, that the remaining arbitrators shall continue the arbitration. In making such determination, the Court shall take into account the views of the remaining arbitrators and of the parties and such other matters that it considers appropriate in the circumstances.

## THE ARBITRAL PROCEEDINGS

### Article 13
### Transmission of the File to the Arbitral Tribunal

The Secretariat shall transmit the file to the Arbitral Tribunal as soon as it has been constituted, provided the advance on costs requested by the Secretariat at this stage has been paid.

### Article 14
### Place of the Arbitration

1

The place of the arbitration shall be fixed by the Court unless agreed upon by the parties.

2

The Arbitral Tribunal may, after consultation with the parties, conduct hearings and meetings at any location it considers appropriate unless otherwise agreed by the parties.

3

The Arbitral Tribunal may deliberate at any location it considers appropriate.

19

*ICC Rules of Arbitration*

## Article 15
## Rules Governing the Proceedings

1

The proceedings before the Arbitral Tribunal shall be governed by these Rules and, where these Rules are silent, by any rules which the parties or, failing them, the Arbitral Tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

2

In all cases, the Arbitral Tribunal shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.

## Article 16
## Language of the Arbitration

In the absence of an agreement by the parties, the Arbitral Tribunal shall determine the language or languages of the arbitration, due regard being given to all relevant circumstances, including the language of the contract.

## Article 17
## Applicable Rules of Law

1

The parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply the rules of law which it determines to be appropriate.

2

In all cases the Arbitral Tribunal shall take account of the provisions of the contract and the relevant trade usages.

3

The Arbitral Tribunal shall assume the powers of an *amiable compositeur* or decide *ex aequo et bono* only if the parties have agreed to give it such powers.

20

*ICC Rules of Arbitration*

## Article 18
## Terms of Reference; Procedural Timetable

1

As soon as it has received the file from the Secretariat, the Arbitral Tribunal shall draw up, on the basis of documents or in the presence of the parties and in the light of their most recent submissions, a document defining its Terms of Reference. This document shall include the following particulars:

a)    the full names and descriptions of the parties;

b)    the addresses of the parties to which notifications and communications arising in the course of the arbitration may be made;

c)    a summary of the parties' respective claims and of the relief sought by each party, with an indication to the extent possible of the amounts claimed or counterclaimed;

d)    unless the Arbitral Tribunal considers it inappropriate, a list of issues to be determined;

e)    the full names, descriptions and addresses of the arbitrators;

f)    the place of the arbitration; and

g)    particulars of the applicable procedural rules and, if such is the case, reference to the power conferred upon the Arbitral Tribunal to act as *amiable compositeur* or to decide *ex aequo et bono*.

2

The Terms of Reference shall be signed by the parties and the Arbitral Tribunal. Within two months of the date on which the file has been transmitted to it, the Arbitral Tribunal shall transmit to the Court the Terms of Reference signed by it and by the parties. The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

3

If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall

*ICC Rules of Arbitration*

be submitted to the Court for approval. When the Terms of Reference have been signed in accordance with Article 18(2) or approved by the Court, the arbitration shall proceed.

4

When drawing up the Terms of Reference, or as soon as possible thereafter, the Arbitral Tribunal, after having consulted the parties, shall establish in a separate document a provisional timetable that it intends to follow for the conduct of the arbitration and shall communicate it to the Court and the parties. Any subsequent modifications of the provisional timetable shall be communicated to the Court and the parties.

## Article 19
### New Claims

After the Terms of Reference have been signed or approved by the Court, no party shall make new claims or counterclaims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the Arbitral Tribunal, which shall consider the nature of such new claims or counterclaims, the stage of the arbitration and other relevant circumstances.

## Article 20
### Establishing the Facts of the Case

1

The Arbitral Tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means.

2

After studying the written submissions of the parties and all documents relied upon, the Arbitral Tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them.

3

The Arbitral Tribunal may decide to hear witnesses, experts appointed by the parties or any other person, in

22

*ICC Rules of Arbitration*

the presence of the parties, or in their absence provided
they have been duly summoned.

4

The Arbitral Tribunal, after having consulted the parties,
may appoint one or more experts, define their terms of
reference and receive their reports. At the request of a
party, the parties shall be given the opportunity to question
at a hearing any such expert appointed by the Tribunal.

5

At any time during the proceedings, the Arbitral Tribunal
may summon any party to provide additional evidence.

6

The Arbitral Tribunal may decide the case solely on the
documents submitted by the parties unless any of the
parties requests a hearing.

7

The Arbitral Tribunal may take measures for protecting
trade secrets and confidential information.

**Article 21**
**Hearings**

1

When a hearing is to be held, the Arbitral Tribunal, giving
reasonable notice, shall summon the parties to appear
before it on the day and at the place fixed by it.

2

If any of the parties, although duly summoned, fails to
appear without valid excuse, the Arbitral Tribunal shall
have the power to proceed with the hearing.

3

The Arbitral Tribunal shall be in full charge of the hearings,
at which all the parties shall be entitled to be present.
Save with the approval of the Arbitral Tribunal and the
parties, persons not involved in the proceedings shall not
be admitted.

*ICC Rules of Arbitration*

4

The parties may appear in person or through duly authorized representatives. In addition, they may be assisted by advisers.

## Article 22
## Closing of the Proceedings

1

When it is satisfied that the parties have had a reasonable opportunity to present their cases, the Arbitral Tribunal shall declare the proceedings closed. Thereafter, no further submission or argument may be made, or evidence produced, unless requested or authorized by the Arbitral Tribunal.

2

When the Arbitral Tribunal has declared the proceedings closed, it shall indicate to the Secretariat an approximate date by which the draft Award will be submitted to the Court for approval pursuant to Article 27. Any postponement of that date shall be communicated to the Secretariat by the Arbitral Tribunal.

## Article 23
## Conservatory and Interim Measures

1

Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. The Arbitral Tribunal may make the granting of any such measure subject to appropriate security being furnished by the requesting party. Any such measure shall take the form of an order, giving reasons, or of an Award, as the Arbitral Tribunal considers appropriate.

2

Before the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim

*ICC Rules of Arbitration*

or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an Arbitral Tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the Arbitral Tribunal. Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat. The Secretariat shall inform the Arbitral Tribunal thereof.

## AWARDS

**Article 24**
**Time Limit for the Award**

1

The time limit within which the Arbitral Tribunal must render its final Award is six months. Such time limit shall start to run from the date of the last signature by the Arbitral Tribunal or by the parties of the Terms of Reference or, in the case of application of Article 18(3), the date of the notification to the Arbitral Tribunal by the Secretariat of the approval of the Terms of Reference by the Court.

2

The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

**Article 25**
**Making of the Award**

1

When the Arbitral Tribunal is composed of more than one arbitrator, an Award is given by a majority decision. If there be no majority, the Award shall be made by the chairman of the Arbitral Tribunal alone.

*ICC Rules of Arbitration*

2

The Award shall state the reasons upon which it is based.

3

The Award shall be deemed to be made at the place of the arbitration and on the date stated therein.

## Article 26
## Award by Consent

If the parties reach a settlement after the file has been transmitted to the Arbitral Tribunal in accordance with Article 13, the settlement shall be recorded in the form of an Award made by consent of the parties if so requested by the parties and if the Arbitral Tribunal agrees to do so.

## Article 27
## Scrutiny of the Award by the Court

Before signing any Award, the Arbitral Tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the Award and, without affecting the Arbitral Tribunal's liberty of decision, may also draw its attention to points of substance. No Award shall be rendered by the Arbitral Tribunal until it has been approved by the Court as to its form.

## Article 28
## Notification, Deposit and Enforceability of the Award

1

Once an Award has been made, the Secretariat shall notify to the parties the text signed by the Arbitral Tribunal, provided always that the costs of the arbitration have been fully paid to the ICC by the parties or by one of them.

2

Additional copies certified true by the Secretary General shall be made available on request and at any time to the parties, but to no one else.