# EXHIBIT K

Westlaw.

383 F.3d 361                                                                                                                         Page 1
383 F.3d 361
**(Cite as: 383 F.3d 361)**

▷
Briefs and Other Related Documents
Af-Cap Inc. v. Republic of CongoC.A.5 (Tex.),2004.
United States Court of Appeals,Fifth Circuit.
AF-CAP INC., Plaintiff-Appellant,
v.
The REPUBLIC OF CONGO; Defendant-Appellee,
CMS Oil and Gas Co.; et al., Garnishees,
CMS Nomeco Congo Inc.; The Nuevo Congo Co.; Nuevo Congo Ltd., Garnishees-Appellees.
Af-Cap Inc., Plaintiff-Appellant,
v.
The Republic of Congo, Defendant-Appellee.
**Nos. 03-50506, 03-50560.**

Sept. 17, 2004.

**Background:** Creditor, whose predecessor in interest loaned the Republic of Congo $6.5 million, obtained a default judgment against the country in New York state court, thereby turning a valid foreign judgment into a United States judgment, and subsequently sought to execute against the Congo's property in the United States. Following removal of action, the United States District Court for the Western District of Texas, Sam Sparks, J., dissolved writs of garnishment that had been obtained from clerk of Texas state court and dismissed the action, on ground that the Foreign Sovereign Immunities Act (FSIA) rendered royalty and tax obligations owed by Texas oil companies to the Congo immune from garnishment. Creditor appealed. The Court of Appeals, Emilio M. Garza, Circuit Judge, 309 F.3d 240, vacated and remanded. On remand, the District Court, Sparks, J., again found that royalty and tax obligations were immune from garnishment, and creditor again appealed.

**Holdings:** The Court of Appeals, E. Grady Jolly, Circuit Judge, held that:

(1) tax and royalty obligations were used for "commercial activity," so as to permit execution thereon if obligations were located in the United States and if foreign sovereign has waived its immunity; and

(2) situs of tax and royalty payments owing to foreign sovereign, for purpose of deciding whether these payments were subject to garnishment under exception to the Foreign Sovereign Immunities Act (FSIA), was situs of prospective garnishees.

Reversed and remanded.
West Headnotes
**[1] Federal Courts 170B ⊱916.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)8 Subsequent Appeals
                170Bk916 In General
                    170Bk916.1 k. In General. Most Cited Cases
On second appeal following remand, only issue for consideration is whether the court below reached its final decree in pursuance of appellate court's previous mandate, and panel of appellate court that hears this second appeal will not reconsider issues decided by prior panel.

**[2] Federal Courts 170B ⊱917**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)8 Subsequent Appeals
                170Bk917 k. Former Decision as Law of the Case. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

383 F.3d 361                                                          Page 2
383 F.3d 361
**(Cite as: 383 F.3d 361)**

**Federal Courts 170B ⇌950**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk949 Mandate and Effect of Decision in Lower Court
                170Bk950 k. Law of the Case; Changes in Law or Facts. Most Cited Cases
Under law of the case doctrine, issue of fact or law decided on appeal may not be reexamined either by district court on remand or by appellate court on subsequent appeal.

**[3] Federal Courts 170B ⇌917**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)8 Subsequent Appeals
                170Bk917 k. Former Decision as Law of the Case. Most Cited Cases
While law of the case doctrine is discretionary, not jurisdictional, and may be ignored if prior holding is clearly erroneous and would work a manifest injustice, this "manifest injustice" exception is rarely invoked, only when there have been post-decision changes in evidentiary facts or in applicable law and not simply because panel of appellate court that hears subsequent appeal disagrees with earlier panel's legal conclusions.

**[4] International Law 221 ⇌10.38**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.38 k. Evidence of Immunity, and Fact Questions. Most Cited Cases
Whether foreign sovereign's property in United States is used for "commercial activity," so as to permit execution thereon under "waiver" provision of the Foreign Sovereign Immunities Act (FSIA), presents mixed question of law and fact, which requires court both to make factual findings concerning how property was used, of kind reviewable for clear error, and to reach legal conclusions as to whether that particular use was "for commercial purposes," which are reviewable *de novo*. 28 U.S.C.A. § 1610(a)(1).

**[5] Federal Courts 170B ⇌776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases

**Federal Courts 170B ⇌850.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk850 Clearly Erroneous Findings of Court or Jury in General
                    170Bk850.1 k. In General. Most Cited Cases
When district court's decision involves mixed questions of law and fact, Court of Appeals reviews district court's factual findings for clear error, and its legal conclusions and application of law to facts *de novo*.

**[6] International Law 221 ⇌10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.35 k. Property of Sovereign. Most Cited Cases
Determination that foreign sovereign's property in the United States is used for "commercial activity," so as to permit execution thereon if foreign sovereign has waived its immunity, should not be made solely by reference to past single and/or ex-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ceptional commercial use(s); determination of commercial, or non-commercial, status of property's use under "waiver" provision of the Foreign Sovereign Immunities Act (FSIA) requires a more holistic approach. 28 U.S.C.A. § 1610(a)(1).

**[7] International Law 221 ⚜︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.35 k. Property of Sovereign. Most Cited Cases
In deciding whether foreign sovereign's property in the United States is used for "commercial activity," so as to permit execution thereon if foreign sovereign has waived its immunity, court should examine totality of the circumstances surrounding property. 28 U.S.C.A. § 1610(a)(1).

**[8] International Law 221 ⚜︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.35 k. Property of Sovereign. Most Cited Cases
Determination as to whether foreign sovereign's property in the United States is used for "commercial activity," so as to permit execution thereon if foreign sovereign has waived its immunity, should be made based on an examination of uses to which property was put in past, as well as of all facts related to its present use, with eye toward determining whether the commercial use of property, if any, is so exceptional that it is "an out of character" use for that particular property. 28 U.S.C.A. § 1610(a)(1).

**[9] International Law 221 ⚜︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.35 k. Property of Sovereign. Most Cited Cases
Consideration of evidence of how foreign sovereign's property in the United States has been used in past is indispensable part of court's inquiry under the Foreign Sovereign Immunities Act (FSIA) when deciding whether property is used for "commercial activity" in the United States, so as to permit execution thereon where foreign sovereign has waived its immunity. 28 U.S.C.A. § 1610(a)(1).

**[10] International Law 221 ⚜︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.35 k. Property of Sovereign. Most Cited Cases
When presented with question of whether foreign sovereign's property in the United States is used for "commercial activity," so as to permit execution thereon if foreign sovereign has waived its immunity, it is appropriate for court to consider whether use of property in question is being manipulated by sovereign to avoid being subject to garnishment under the Foreign Sovereign Immunities Act (FSIA). 28 U.S.C.A. § 1610(a)(1).

**[11] International Law 221 ⚜︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
        221k10.35 k. Property of Sovereign. Most Cited Cases
Under the Foreign Sovereign Immunities Act (FSIA), foreign property retains its immunity protection, notwithstanding waiver of foreign sovereign's immunity, where its commercial uses, considered holistically and in context, are bona fide exceptions to otherwise noncommercial use. 28 U.S.C.A. § 1610(a)(1).

**[12] International Law 221 ⚜︎10.35**

221 International Law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

383 F.3d 361 Page 4
383 F.3d 361
(Cite as: 383 F.3d 361)

221k10.29 Actions Against Sovereign or Instrumentality
    221k10.35 k. Property of Sovereign. Most Cited Cases

Foreign sovereign's past use of tax and royalty payments to which it was entitled under its contract with oil companies, in order to satisfy judgment debt of more than $26 million by remittance of 50% of these payments to judgment creditor over period of eleven years, was hardly a single, isolated use of these tax and royalty payments for commercial purposes, and warranted finding that, due to foreign sovereign's waiver of its immunity, these payments were subject to garnishment under the Foreign Sovereign Immunities Act (FSIA), as long as their situs was located in the United States. 28 U.S.C.A. § 1610(a)(1).

**[13] International Law 221 ⚖︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
    221k10.35 k. Property of Sovereign. Most Cited Cases

When presented with question of whether foreign sovereign's property in the United States is used for "commercial activity," so as to permit execution thereon if foreign sovereign has waived its immunity, it is appropriate for court to consider not only the actual uses to which this property has been put, but contemplated uses as well. 28 U.S.C.A. § 1610(a)(1).

**[14] International Law 221 ⚖︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
    221k10.35 k. Property of Sovereign. Most Cited Cases

For a foreign sovereign's waiver of its immunity to subject its assets to execution under exception to the Foreign Sovereign Immunities Act (FSIA), not only must the assets in question be used for commercial purposes, but they must also be "in the United States." 28 U.S.C.A. § 1610(a)(1).

**[15] International Law 221 ⚖︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
    221k10.35 k. Property of Sovereign. Most Cited Cases

Selection of situs for foreign sovereign's intangibles, for purpose of deciding whether they are United States assets subject to execution under exception to the Foreign Sovereign Immunities Act (FSIA), must be context-specific and embody a common sense appraisal of requirements of justice and convenience in particular conditions. 28 U.S.C.A. § 1610(a)(1).

**[16] International Law 221 ⚖︎10.35**

221 International Law
    221k10.29 Actions Against Sovereign or Instrumentality
    221k10.35 k. Property of Sovereign. Most Cited Cases

Situs of tax and royalty payments owing to foreign sovereign, for purpose of deciding whether these payments were subject to garnishment under exception to the Foreign Sovereign Immunities Act (FSIA), was situs of prospective garnishees. 28 U.S.C.A. § 1610(a)(1).

*363 Laura Metcoff Klaus, Sanford M. Saunders, Jr. (argued), Greenberg Traurig, Washington, DC, for AF-CAP, Inc.
Boaz S. Morag (argued), Cleary, Gottlieb, Steen & Hamilton, New York City, for Republic of Congo.
Guy Stanford Lipe (argued), Vinson & Elkins, Houston, TX, for Garnishees-Appellees.

Appeals from the United States District Court for the Western District of Texas.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Before JOLLY and PRADO, Circuit Judges.FN1

> FN1. This matter is decided by a quorum. *See* 28 U.S.C. § 46(d).

E. GRADY JOLLY, Circuit Judge:
This appeal is the second in this case. The Republic of Congo is attempting to avoid its undisputed debt by claiming sovereign immunity under the Foreign Sovereign Immunities Act (FSIA), notwithstanding that, in the Lending Contract, it pledged as collateral all of its assets and properties, and expressly waived its sovereign immunity. The district court concluded that the Congo was entitled to claim immunity under the provisions of the FSIA because the property at issue was not used for commercial purposes in the United States. We disagree and REVERSE and REMAND.

I

On December 18, 1984, the Republic of Congo entered into a Lending Contract with Equator Bank Limited to provide funds necessary for the construction of a highway in that country. To obtain the loan, the Congo pledged as collateral "all of its assets and properties, wherever located." In the Lending Contract, the Congo expressly waived any right to claim foreign sovereign immunity either from suit or from attachment or execution on its property.

The Congo defaulted in 1985. Connecticut Bank of Commerce ("the Bank"), an assignee of the Lending Contract, obtained a default judgment against the Congo in a London, England court. In order to turn this foreign judgment into a United States judgment, the Bank filed suit in a New York state court. The Congo did not appear and the court entered a default judgment in the amount of $13,628,340.11 in favor of the Bank. The New York court also entered an order of attachment, authorizing the Bank to execute against "any assets or other property of the Congo of any nature, irrespective of the use or intended use of such property ... including any ... payments or obligations due to the Congo from any oil and gas exploration and development companies...."

On January 11, 2001, the Bank registered the New York judgment in a Texas state court. It then filed garnishment actions there against, *inter alia,* CMS Nomeco Congo, Inc. ("CMS"), Nuevo Congo Company ("Nuevo"), and Nuevo Congo Ltd. (collectively "the Garnishees"). It sought to garnish intangible property purportedly belonging to the Congo, namely, the Garnishees' obligations to pay taxes and royalties to the Congo. The Garnishees are successors-in-interest to a 1979 joint venture (the "Convention") between a state-owned Congolese company, now known as the Societe Nationale des Petroles du Congo ("SNPC"), and several oil companies for oil production in the Congo. Currently, CMS is the operator of the joint venture while Nuevo, Nuevo Congo Ltd. and SNPC possess working interests. Under the terms of the Convention, the Congo permitted the joint venture to extract oil in exchange for the payment of royalties and a variety of taxes related to the Garnishees' activities. The mining royalty can be paid in cash or in kind from the oil lifted from the wells. The choice regarding the form of payment belongs to the Congo, although it usually elects to have the royalties paid in kind.FN2 The Convention *365 also obligates the Garnishees to make periodic tax payments to the Congo based on the net income from covered activities. The remaining profits are split among the Convention members in proportion to their working interests. The Garnishees' obligation to make these tax and royalty payments to the Congo is the property at issue in this case.

> FN2. The Convention specifies a method for how these royalties are to be paid on an in-kind basis. After be-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

383 F.3d 361 Page 6
383 F.3d 361
(Cite as: 383 F.3d 361)

ing produced at offshore wells, the oil flows through a subsurface pipeline system to an offshore storage facility, a retired transport tanker called the "CONKOUATI," which is located in Congolese waters. Once the CONKOUATI is filled with between 550,000 and 600,000 barrels of oil, CMS and Nuevo take a "lifting" and sell the oil. Throughout this process, CMS keeps an over/under accounting of the amount of oil it has lifted and sold, and notes the Congo's royalty entitlement and SNPC's working entitlement under the Convention. CMS and Nuevo continue to take liftings and sell the oil until the combination of the Congo's royalty entitlement and SNPC's working-interest entitlement exceeds 275,000 barrels. At this point, SNPC takes a lifting and sells the oil. In this way, both the Congo's in-kind royalty and tax entitlement and SNPC's working interest are satisfied. Apparently, when SNPC conducts such a lifting, it lifts about 550,000 to 650,000 barrels, at which point it is "over-delivered," which is then accounted for in the over/under accounting described above. SNPC would then not take another lifting until it is under-delivered by 275,000 barrels.

Following the Bank's filing of its garnishment action in Texas state court, the Congo and the Garnishees (collectively "the Congo Defendants") removed the case to federal court. There, the Congo Defendants moved for dismissal, arguing that the Congo was entitled to sovereign immunity from the garnishment action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. In response, the Bank contended that the Congo had expressly waived sovereign immunity in the Lending Contract. The Bank also argued that the Texas court was bound by the earlier attachment order issued by the New York court.

The district court dismissed the action, rejecting both arguments of the Bank. First, the court rejected the claim that the New York judgment had any preclusive effect on the present case. The court also rejected the Bank's claim that in the Lending Contract, the Congo had waived sovereign immunity even though it was express and in writing; the court held that such a total waiver was ineffective under § 1610(a) of the FSIA, which recognizes only *conditional* waivers. Specifically, the court found that even when a foreign state purports to waive completely its immunity, the FSIA only permits execution on property that is "commercial." The court concluded that the royalty and tax payments to the Congo were non-commercial in nature, and thus the property was immune from attachment under § 1610(a).

The Bank then appealed to this court. We affirmed the district court's holding that the New York attachment order had no preclusive effect. *Connecticut Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 248-51 (5th Cir.2002). We also agreed that, under the FSIA, a waiver of immunity only applies "against property that meets ... two statutory criteria," namely, that the property in question be "in the United States" and "used for commercial activity in the United States." *Id.* at 247 (quoting 28 U.S.C. § 1610(a)). We concluded, however, that the district court had erred in applying these statutory criteria by incorrectly focusing on how the property was generated instead of fully considering what it is "used for."[FN3] We *366 further clarified this point in an amended opinion issued on rehearing;[FN4] we remanded the case to the district court with the narrow and specific instructions that it resolve:

> FN3. Specifically, we held that the district court erroneously had fo-

383 F.3d 361                                                                    Page 7
383 F.3d 361
(Cite as: 383 F.3d 361)

cused its primary attention on whether the source of the royalties and tax obligations-in this case, the joint venture-was a commercial activity. Instead, the district court should have focused on the use of the property itself: "The amenability of these royalties and taxes to garnishment depends on what they are 'used for', not on how they were raised." *Connecticut Bank,* 309 F.3d at 251.

    FN4. The amended opinion contained a more detailed discussion of the application of the "used for" criterion under the FSIA.

the dispositive factual question: what the royalty and tax obligations are "used for." If it turns out that the royalties and tax obligations are not used for any commercial activity in the United States, the district court should dissolve the writs of garnishment and dismiss the action.
*Id.* at 260-61.

On remand, the district court ordered discovery to determine whether the tax and royalty obligations were property "used for" commercial activity in the United States. Af-Cap, Inc., who had succeeded the Bank in interest during the pendency of the Bank's appeal, vigorously pursued that discovery, receiving thousands of pages of responsive documents and deposing numerous witnesses from the Congo, the Garnishees and non-parties.

After hearing arguments, the district court held that the Congo did not use its tax and royalty obligations for commercial activities.[FN5] Accordingly, it held that this property was not within an exception to immunity and dismissed the garnishment action. Af-Cap has appealed.

    FN5. Because the district court found that the property at issue did not sat-

isfy the "used for" prong of § 1610(a), the district court declined to address whether the "situs of the obligations" is "in the United States," the second statutory criterion under § 1610(a).

In this appeal, Af-Cap makes two arguments. First, it contends that the district court erred in disregarding the Congo's express waiver of immunity contained in the Lending Contract. Second, it asserts that the district court erroneously concluded that the royalty and tax payments were not used for commercial activity.

II

We first consider Af-Cap's argument that the district court erred in failing to enforce the explicit waiver of sovereign immunity in the Lending Contract. This argument, however, has already been made and rejected in the earlier appeal. In the first appeal, Af-Cap's predecessor cited the same language in the Lending Contract, arguing that it permitted execution against "any property whatsoever," "irrespective of its use or intended use." It argued that even if this violated the express restrictions under the FSIA, these restrictions were inapplicable because (1) the Congo signed a contractual waiver in the Lending Contract and (2) the New York court's order should be given preclusive effect. Although most of our opinion in the earlier appeal focused on rejecting the latter of these claims, we explicitly rejected the former claim as well. We noted:
The Foreign Sovereign Immunities Act provides foreign sovereigns with immunity from execution against their property to satisfy an adverse judgment. This statutory immunity is subject to several exceptions. One exception is that, if a foreign sovereign waives its immunity from execution, U.S. courts may execute against "property in the United States ... used for a commercial activity in the United States." 28 U.S.C. §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1610(a)(1). *Even when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against property that meets these two statutory criteria.*

**\*367** *Connecticut Bank,* 309 F.3d at 247 (internal citations removed and emphasis added).

Our mandate on remand also showed that we had rejected this argument. We gave narrow and specific instructions to the district court, directing it to decide the "dispositive factual question" of whether the Congo's property is "used for any commercial activities in the United States," and to dismiss the action if it was not. *Id.* at 260-61.

[1][2][3] Af-Cap contends that this interpretation of the FSIA is incorrect and that the FSIA does in fact permit a complete waiver of sovereign immunity. Whatever the validity of that claim, however, we are obligated to accept the ruling of the earlier panel. "On second appeal following remand, the only issue for consideration is whether the court below reached its final decree in pursuance of [this court's] previous mandate." *Burroughs v. FFP Operating Partners, L.P.,* 70 F.3d 31, 33 (5th Cir.1995). Thus, "this Court will not reconsider issues decided by the prior panel." *Id.* Under the law of the case doctrine, "an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *St. Paul Mercury Ins. Co. v. Williamson,* 332 F.3d 304, 309 (5th Cir.2003). Accordingly, the only question properly before this panel on this second appeal is "whether the court below reached its final decree in pursuance of [this court's] previous mandate." *Burroughs,* 70 F.3d at 33.[FN6] That is, our present authority is limited to examining whether the district court correctly determined that the tax and royalty obligations at issue here are not used for commercial purposes in the United States. We now turn to this question.

FN6. Af-Cap correctly points out that the law of the case is a discretionary, not jurisdictional, doctrine and can be ignored if a prior holding is "clearly erroneous and would work a manifest injustice." However, as evidenced by the cases Af-Cap cites in support of this proposition, courts rarely invoke this exception to the law of the case doctrine and when they do, it is because of post-decision changes in evidentiary facts or in the applicable law and *not* because the subsequent panel disagreed with the earlier panel's legal conclusions. *See Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (refusing to reexamine previous factual findings despite an alleged change in factual circumstances); *Tollett v. City of Kemah,* 285 F.3d 357, 365-66 (5th Cir.2002) (refusing to reexamine an earlier panel's conclusion following the submission of allegedly new evidence at a district court's hearing on remand); *U.S. v. Matthews,* 312 F.3d 652, 657-58 (5th Cir.2002) (agreeing to reexamine original panel's legal conclusions where those legal conclusions had been called into question by a subsequent Supreme Court decision).
Notably, Af-Cap cites no cases where a subsequent panel reversed a prior panel's legal conclusion solely because the subsequent panel disagreed with it. The absence of such cases should not be surprising. The subsequent panel would not only have to forego application of the law of the case doctrine, but would also have to discard the well-established rule that circuit panels are "bound by the precedent of previous panels ab-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.