

Global Language Services
Translations · Interpreting
DTP · Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@kerntranslations.com

www.e-kern.com

State of: New York
ss.:
County of: New York

## CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)*

**LETTER DATED MARCH 3, 2005 REGARDING AF-CAP, INC. V. REPUBLIC OF CONGO**

*from the* **FRENCH** *language into the* **ENGLISH** *language and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.*

Signed by: ____________
(Eric Sch...)
f...

KERN
Kern Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169
Tel: 212-953-2070
Fax: 212-953-2073

Subscribed to before me this 7

Day of March, 2005

Notary Public

JOY N. WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 2, 2007

**EXHIBIT C**

San Francisco: The Russ Building · 235 Montgomery Street, Suite 946 · San Francisco, CA 94104
Tel. (415) 433 5376 · Fax (415) 433 5377 · kern.sf@kerntranslations.com

London: Tel. 011 44 (20) 78 31 56 00 · Frankfurt: Tel. 011 49 (69) 75 60 73-0 · Berlin: Tel. 011 49 (30) 24 72 12 50 · Paris: Tel. 011 33 (1) 53 93 85 20
Zurich: Tel. 011 41 (1) 2 61 11 60 · Hong Kong: Tel. 011 (852) 28 50 44 55 · Amsterdam: Tel. 011 31 (20) 6 39 01 19 · Lyon: Tel. 011 33 (4) 783 783 73

MINISTER OF FOREIGN AFFAIRES
AND FRANCOPHONY

CABINET

REPUBLIC OF CONGO
Unité - Travail - Progrès

MAEF 0744 CAB.SP.

**Brazzaville, 03 March 2005**

MINISTER OF STATE

Re: Republic of Congo v. Af-Cap, Inc.

Dear Judge:

I refer to the order issued by this court on 22 February 2005 (the "Turnover Order"), which provides, *inter alia*:

- "The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention;
- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute . . . [a] letter of instruction . . . to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty . . . ."

This suit was initiated over four years ago with a view to persuading United States courts to authorize seizure of the Congo's rights to mining royalties, which it collects within its own territory, in satisfaction of a debt purchased by a creditor without any right to said mining royalties. The Congo has strongly objected to this litigation, which is unfounded. It is premised on the erroneous notion that an American court may transfer the right of a sovereign nation—the Republic of Congo—to dispose of its resources within its own borders. The Republic of Congo has thus far endeavored to cooperate with United States judicial authorities in the hope that United States courts would recognize their obligation to respect the Congo's sovereignty, as is mandated not only under Congolese and international law, but under United States law as well.

In light of the judgments of this Court and the Court of Appeals for the Fifth Circuit, the Congo is constrained to protest in the strongest possible terms the failure to

respect its sovereign rights and the resulting judicial measures that purport to dispossess the Congo of economic rights comprising its national patrimony and principal source of export revenue. It is an established principle of the law of nations that every state exercises full and permanent sovereignty over its natural resources and exclusive authority to control the economic exploitation thereof. The Congo's rights to the mining royalties within its territory are subject to its exclusive jurisdiction and sovereignty, which cannot be subordinated to the judicial measures of another state.

The Turnover Order issued by this Court is a clear violation by the United States of international law which recognizes the right for any sovereign State to exercise authority and control over its natural resources within its national territory. Such actions impact negatively on the relations between the United States and the Congo, undermining the concerted mutual efforts of both nations to encourage private United States entities to invest in the Congo, in particular in the oil sector. This unfortunate development requires the Congo to reassess its relations with the United States, particularly where other sources of trade and investment such as Canada, Europe, India and China continue to respect the sovereignty of the countries with which they maintain an economic relationship.

The Turnover Order is unenforceable in the Congo, and cannot supersede the Congo's sovereign authority to prescribe and enforce its own laws within its own territory. Regretfully, the Congo must hereby advise the Court that, for the reasons stated, the Congo will not implement the Turnover Order.

Please accept, Your Honor, the expression of my most distinguished consideration.

[seal: Minister of Foreign Affaires and
Francophony
Cabinet
Republic of Congo]

[signature]

Rodolphe Adada

Hon. Sam Sparks
United States District Judge
United States District Court for
The Western District of Texas
Austin, Texas

U.S.A.

copy: Hon. William H. Taft, IV
United States Department of State

MINISTERE DES AFFAIRES ETRANGERES
ET DE LA FRANCOPHONIE

CABINET

République du Congo
Unité – Travail - Progrès

MAEF 0 7 4 4 /CAB.SP.-

Brazzaville, le 03 MARS 2005

LE MINISTRE D'ETAT,

**Objet** : République du Congo c. Af-Cap.Inc

Monsieur le Juge,

Je me réfère à l'Ordonnance de votre tribunal rendue le 22 février 2005 (the « Turnover Order », qui décide notamment :

- « The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention ;
- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute...[a] letter of instruction ...to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty...

Cette procédure a été initiée par les demandeurs il y a plus de quatre ans dans le but de convaincre les tribunaux américains d'autoriser la saisie des droits du Congo sur la redevance minière qu'elle perçoit sur son propre territoire, en paiement de droits d'un créancier au titre d'une dette du Congo sans rapport avec un droit quelconque sur cette redevance minière. Le Congo a vigoureusement contesté cette action judiciaire, laquelle est sans aucun fondement. Elle repose sur l'hypothèse erronée qu'un tribunal américain pourrait aliéner le droit d'un Etat souverain, la République du Congo, de disposer de ses ressources à l'intérieur de son propre territoire. La République du Congo a jusqu'à présent coopéré avec les autorités judiciaires américaines dans l'espoir que les tribunaux américains admettraient leur obligation de respecter la souveraineté du Congo, comme le leur impose le droit international, le droit congolais ainsi que le droit des Etats-Unis d'Amérique.

Compte tenu des jugements rendus par votre tribunal et par la Court of Appeals for the Fifth Circuit, le Congo se voit contraint de protester vigoureusement contre le non-respect de ses droits souverains et contre les mesures judiciaires qui visent à le déposséder de droits économiques qui font partie de son patrimoine national et qui constituent sa principale source de revenus à l'exportation. Le droit international public établit clairement le principe selon lequel chaque Etat a le droit d'exercer une souveraineté entière et permanente sur ses ressources naturelles, et dispose du droit exclusif d'en contrôler l'utilisation économique. Les droits du Congo sur la redevance minière à l'intérieur de son territoire sont du ressort de sa souveraineté exclusive, laquelle ne peut en aucun cas faire l'objet de mesures judiciaires de la part d'un autre Etat.

Le Turnover Order émis par votre tribunal constitue une violation patente de la part des Etats-Unis du droit international, lequel consacre le droit pour chaque Etat souverain de gérer ses ressources naturelles à l'intérieur de son territoire national. De telles actions affectent négativement les relations entre les Etats-Unis et le Congo et les efforts mutuels de ces deux nations pour encourager les sociétés américaines à investir au Congo, en particulier dans le domaine pétrolier. Ce regrettable développement met le Congo dans l'obligation de réexaminer ses relations économiques avec les Etats-Unis en tenant compte notamment que d'autres pays partenaires commerciaux, au Canada, en Europe, en Inde et en Chine respectent la souveraineté des pays avec lesquels ils entretiennent des relations économiques.

Le Turnover Order est de nul effet au Congo et ne saurait prévaloir sur l'autorité souveraine de notre pays d'appliquer ses propres lois sur son territoire. J'ai donc le regret de vous informer que, pour les raisons indiquées dans la présente lettre, la République du Congo rejette le Turnover Order.

Veuillez agréer, Monsieur le Juge, l'expression de ma considération distinguée.

MINISTERE DES AFFAIRES ETRANGERES ET DE LA FRANCOPHONIE
CABINET
République du Congo

**Rodolphe ADADA.**

**Hon. Sam Sparks**
**United States District Judge**
**United States District Court for**
**The Western District of Texas**
**Austin, Texas**

**U.S.A.**

Copie : Hon. William H. Taft, IV
United States Department of State

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION
2005 AP -6 AM 10: 44
WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE
BY: AF
DEPUTY

AF-CAP, INC.

Plaintiff,

-vs-

Case No. A-01-CA-321-SS

THE REPUBLIC OF CONGO,
Defendant.

---

**ORDER**

BE IT REMEMBERED on the 1st day of April 2005, the Court called the above-styled cause for a hearing on Plaintiff Af-Cap, Inc.'s ("Af-Cap") Motion for Issuance of a Show Cause Order [#129], and the parties appeared through counsel. On February 22, 2005, the Court entered a turnover order against Defendant Republic of Congo ("the Congo"), in which the Congo was ordered to execute, within three days of receiving the Court's order, certain letters of instruction addressed to third parties (specifically, CMS Nomeco Congo Inc., the Nuevo Congo Company, and Nuevo Congo, Ltd.) regarding its right to receive payment of royalty obligations under a May 25, 1979 Convention[1] for the production of oil and gas. The purpose of the letters was to redirect the Congo's interest in the Convention royalty obligations to the Clerk of this Court until a judgment held by Af-Cap against the Congo was satisfied. Because the Congo refused to execute the instruction letters, the Court subsequently ordered the Congo to appear at a hearing on April 1, 2005, at which time its authorized representative would be required to execute the letters of instruction and to show cause why the Congo should not be held in contempt of Court. No representative of the

---

[1] In 1979, the Congo issued a permit to drill offshore to its state-owned oil company, the Societe Nationale de Petrol du Congo ("SNPC"). On May 25, 1979, in order to exploit the permit, the Congo and SNPC entered into a joint venture with various oil companies to produce oil and gas ("the Convention").

**EXHIBIT D**

SS
AF

Congo capable of signing the letters of instruction appeared before the Court. However, counsel for the Congo did appear, both in person and by telephone, to argue on its behalf. Having considered the pleadings filed by the parties, the arguments of counsel at the hearing, the relevant law, and the case file as a whole, the Court now enters the following:

In light of the Congo's failure to comply with the February 22, 2005 Turnover Order entered by this Court, Af-Cap urges the Court to grant further appropriate relief to enforce the Court's Turnover Order. Although, in its papers, Af-Cap proposed multiple, alternative forms of relief for the Court's consideration (including contempt sanctions), at the hearing, Af-Cap took the position that an order pursuant to Rule 70 of the Federal Rules of Civil Procedure would be the most effective and efficient means of enforcing this Court's Turnover Order.

Under Rule 70, Af-Cap urges the Court to enter an order directing the Clerk of this Court to sign the required letters of instruction on the Congo's behalf. Rule 70 provides, in pertinent part:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

FED. R. CIV. P. 70. Under the plain language of the rule, the Court may order a third person to do the act which the Congo refuses to do. Other courts have granted similar relief. For instance, in a case arising in the Seventh Circuit, the Clerk of the District Court for the Northern District of Illinois executed real estate deeds after the defendant refused to comply with the district court's order requiring him to execute the deeds. *Varone v. Varone*, 392 F.2d 855, 856 (7th Cir. 1968). Similarly, in *United States v. Fitzgerald*, 109 F.3d 1339 (8th

Cir. 1997), the district court ordered the United States Marshal to convey a deed on foreclosed property belonging to the defendant in the case after the defendant refused to make the conveyance himself. *Id.* at 1341. In both cases, the Court was able to get around the recalcitrance of the individual defendant by ordering its own designee to perform the required ministerial act.

The Congo, for its part, indicated at the hearing it has no particular objection to the specific Rule 70 relief sought by Af-Cap. Instead, the Congo has made only general objections to the Court's entry of further relief in favor of Af-Cap, which are largely based on its continuing objections to the turnover order already entered in this case. First, the Congo argued the decision by the Fifth Circuit that the underlying property in this case is located in the United States was incorrect. Apparently convinced the Supreme Court would grant a writ of certiorari, the Congo urged the Court to await the outcome of its appeal of the Fifth Circuit's decision prior to taking further action. According to the Supreme Court's official website, on April 4, 2005, the Supreme Court denied the Congo's petition for certiorari. Thus, there is no doubt the Fifth Circuit's mandate will remain the final word on the location of the property at issue in this case.[2]

Second, the Congo argues the Court's Turnover Order itself is not entitled to legal force and effect because of sovereignty considerations and the act of state doctrine.

---

[2] The Congo has also argued "[t]his Court's turnover order directly against the Congo . . . lacks even the tenuous basis on which the Fifth Circuit deemed the property 'in the United States.'" Def.'s Opp. to Mot. for Issuance of a Show Cause Order at 4. The Congo's position is apparently that since the Fifth Circuit focused its opinion on the garnishment relief sought in A-01-CA-100-SS ("the 100 case"), rather than the turnover relief sought in this case, *see Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, 373 (5th Cir. 2004), its holding is somehow inapplicable to the latter form of relief. What the Congo fails to recognize, however, is that the Fifth Circuit's consolidation of the appeals of those two actions means the Fifth Circuit's conclusions about the location of the property are binding in both the 100 case and this case. *See id.* ("We also hold that the situs of these obligations is the United States.").

However, these arguments have already been made and rejected in connection with both the Court's initial issuance of the Turnover Order and the Court's denial of the Congo's recent motion for a stay. The Court sees no need to separately address these arguments again here.

Third, the Congo argues the act of state doctrine independently precludes the issuance of contempt sanctions against it. However, since the relief now urged by Af-Cap is an alternative to a contempt sanction, the Court need not address the merits of the Congo's last argument.

Accordingly:

IT IS ORDERED that the Clerk of the Court is hereby appointed pursuant to Rule 70 of the Federal Rules of Civil Procedure and directed to execute the letter of instruction appended to the Court's Turnover Order of February 22, 2005. One executed original of the letter shall be placed in the Court's file. Copies of the executed letter shall be served on counsel for the Congo. One executed original of the letter shall be delivered by the Clerk to Steve McConnico, counsel for Af-Cap. One executed original of the letter shall be delivered to Guy Lipe, counsel for CMS Nomeco Congo Inc., the Nuevo Congo Company, and Nuevo Congo, Ltd. The execution of the instruction letters by the Clerk shall have like effect as if done by the Congo as authorized by Rule 70.

SIGNED this the 6th day of April 2005.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
APR 11 2005
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY [signature]
DEPUTY CLERK

AF-CAP, INC.

Plaintiff,

-vs-

Case No. A-01-CA-321-SS

THE REPUBLIC OF CONGO,

Defendant.

---

CMS Nomeco Congo, Inc.
Nuevo Congo Company
Nuevo Congo, Ltd.
c/o Their Counsel
Mr. Guy S. Lipe
Vinson & Elkins, L.L.P.
1001 Fannin, Suite 2300
Houston, Texas 77002-6760

Ladies and Gentlemen:

Pursuant to the Turnover Order entered by the United States District Court for the Western District of Texas, the Republic of Congo ("Congo"), on its own behalf or though its lawfully authorized designee, hereby demands, directs, and elects that you pay into the registry of the United States District Court for the Western District of Texas in cash all mineral royalty due under the Joint Operating Agreement ("JOA") dated May 25, 1979 to the Republic of Congo in accordance with Articles 7 and 4.11, respectively, of the Convention regarding Marine I Field dated May 25, 1979 ("the Convention") and the JOA. Any previous elections with respect to the payment of such royalty in kind are hereby revoked.

The amounts to be paid pursuant to the preceding paragraph shall include all royalty amounts currently owed by either you, your successors and assigns, or your affiliates, to the Congo pursuant to the JOA and Convention in respect of all periods beginning ninety days from the date of this letter. The payments made to the registry of the Court shall, to the extent thereof, be considered by the Congo as fulfillment of your obligations, and shall be treated by the Congo as payment of the royalty.

**EXHIBIT E**

cc: Fox

This payment instruction shall be irrevocable except that is shall expire when payments to the Court's registry are no longer required by the terms of the attached Turnover Order entered by the United States District Court for the Western District of Texas.

By order of the Court,

William G. Putnicki,
Clerk of Court

Dated: April 8, 2005




RÉPUBLIQUE DU CONGO

AU NOM DU PEUPLE CONGOLAIS

L'an deux mil cinq
Et le quatre du mois de juillet;

Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc ETIKI, Greffier en Chef des Chambres Civiles dudit Tribunal;

Vu la requête en date à Pointe-Noire du 02 Juillet 2005 de la République du Congo, Ministère des Hydrocarbures, ayant pour conseils, Maîtres Irène Joséphine DASSO, Hervé OBONGUI NOUIE et Nadia MAGOSSO, Avocats à la Cour à Pointe-Noire;

Attendu qu'elle expose à l'appui de sa requête [illegible]

Que les jugements des [illegible] février 2005 [illegible]

Mais que ces décisions ne pourraient être exécutées en République du Congo [illegible]

Qu'en effet, une décision de justice rendue par une [illegible]

Qu'en l'occurrence, les décisions américaines des [illegible] février 2005 n'ont pas été notifiées à la République du Congo et que ni la société AF CAP, prétendue créancière de la République du Congo, ni les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited [illegible] formulé devant les Tribunaux Congolais une demande d'exequatur des [illegible] décisions américaines;

Que l'article 30 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque État Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à l'ordre Public international et à la souveraineté de la République du Congo en ce qu'elle vise des redevances fiscales, par nature insaisissables, et porte atteinte à la République du Congo dans l'exercice de sa souveraineté fiscale;

EXHIBIT F

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de

-2-

la République du Congo détenues par les sociétés CMS NOMECO Inc, Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain, d'ordonner sur minute que ces sociétés livrent à tout opérateur désigné par la République du Congo lesdites parts de pétrole brut;

Qu'en conséquence de ce qui précède, la République du Congo sollicite, par décision de référé d'heure à heure, de constater que les Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction américaine et portant saisie de la redevance minière due à la République du Congo au titre de la convention du 25 mai 1979; dire que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ne [illegible] décision d'une juridiction étrangère [illegible] pour s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les cours et tribunaux congolais; constater que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise; ordonner aux sociétés CMS Nomeco, Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut lui revenant conformément aux dispositions de la Convention du 25 mai 1979 et de la législation en vigueur; ordonner l'exécution [illegible] de la décision à intervenir nonobstant toutes voies de recours; statuer ce que de droit sur les dépens;

Attendu que par conclusions en date du [illegible] juillet 2005, la Société CMS NOMECO Inc, ayant pour conseil Maître Sylvie Nicole MOUYECKET, Avocat à la Cour de Pointe-Noire, a soutenu ce qui suit;

Que un certain nombre de juridictions américaines ont rendu des décisions [illegible] les parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO Inc;

Que si la Société CMS NOMECO CONGO Inc a introduit des requêtes [illegible] auprès de plusieurs Cours Américaines [illegible] [illegible]

[illegible]

Qu'en effet, si tel était le cas [illegible] [illegible] conformer à la décision de la Cour Américaine;

Que la Société CMS NOMECO étant manifestement un tiers aux procédures mentionnées ci-dessus [illegible], elle ne devrait pas avoir à subir de telles conséquences;

Que l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière dispose: "Sauf conventions diplomatiques contraires, les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente "ratione materiae" pour en connaître";

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions étrangères exécutées sur le territoire Congolais;

Que or, les décisions de la Cour de District des Etats-Unis, District de l'Ouest du Texas, ont été rendues, signifiées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au

.../...

Congo à travers la société CMS NOMECO CONGO INC;

Que la République du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP INC;

Que dans ces conditions, la République du Congo ne peut valablement opposer à sa créancière de respecter la formalité d'exequatur comme si elle exécutait sa décision sur le territoire Congolais;

Que la République du Congo soutient en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi, notamment des articles 30 de l'acte Uniforme OHADA portant Organisation des Procédures Simplifiées de Recouvrement et des Voies d'Exécution et 77 de la Charte des Entreprises d'Etat;

Que or, il a été rappelé supra que la société CMS NOMECO CONGO INC n'est que tiers détenteur des parts de pétrole brut querellées entre la société Américaine AF-CAP INC et la République du Congo, suite aux décisions Américaines en dates respectives du 24 et 22 Février 2005;

Que le fait pour la Société CMS NOMECO d'avoir immobilisé une partie de pétrole brut suite aux décisions des Juridictions Américaines, ne signifie pas que la société CMS NOMECO revêt la qualité de saisissant;

Que la Société CMS NOMECO ne saurait opiner sur cette question [illegible] qui [illegible] principales parties [illegible] AF-CAP Inc et la République du Congo;

Qu'elle sollicite [illegible] constater que [illegible] de Juridictions Américaines ont rendu des décisions [illegible] parts de pétrole brut [illegible] à la République du Congo [illegible] que la Société CMS NOMECO CONGO [illegible] [illegible] [illegible] quelconque acte [illegible] tion accompli sur le territoire Congolais;

Qu'en conséquence, [illegible] y avoir lieu à ordonner la livraison des parts de pétrole brut sollicitée par la République du Congo; condamner la République du Congo aux dépens;

SUR [illegible]

Attendu qu'il résulte de l'examen des pièces du dossier que les décisions judiciaires Américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à la législation Congolaise en vigueur;

Attendu en effet que la République du Congo est un Etat souverain donc une personne morale de droit public;

Attendu qu'il y a lieu de lui faire application des dispositions de l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose que l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient de l'immunité d'exécution; Toutefois les dettes certaines, liquides et exigibles des personnes morales de droit public ou des entreprises publiques quelles qu'en soient la forme et la mission, donnent lieu à compensation avec les dettes également certaines, liquides et exigibles dont quiconque sera tenu envers elles, sous réserve de réciprocité;

Attendu également que les décisions judiciaires américaines dont saisie du pétrole brut Congolais ne sont pas encore exéquaturées;

Qu'en effet l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière (CPCCAF) dispose que: "Sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolai-

.../...

ce qui aurait été compétent "rationae materiae" pour en connaître";

Attendu en définitive qu'il n'y a donc lieu à opposer à l'Etat Congolais toutes les décisions judiciaires Américaines;

Attendu également que l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution (AUPSRVE) de l'OHADA dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Or attendu que les redevances pétrolières sont déclarées insaisissables par la loi Congolaise;

Attendu en définitive qu'il sied de dire que la saisie du pétrole brut Congolais ordonnée par les Tribunaux Américains est contraire à l'ordre public et porte atteinte à la souveraineté de l'Etat Congolais;

Attendu qu'au regard de tout ce qui précède, il y a lieu de dire que la requête de l'Etat Congolais est donc régulière et recevable;

Attendu au fond que cette requête est fondée; qu'il y a lieu de faire droit à cette requête;

Qu'il échet donc de constater que les Tribunaux Congolais ne sont pas saisis [illegible] redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Attendu qu'il y a lieu donc de rejeter purement et simplement tous les arguments développés par la société CMS NOMECO CONGO INC;

Attendu que la société CMS NOMECO CONGO INC a succombé en procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article [illegible] du CPCAF;

PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé, en matière d'exécution et en premier ressort;

Au principal, renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent, vu l'urgence et par provision;

Constatons que les Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Disons que les décisions judiciaires américaines ou d'autres juridictions étrangères ne peuvent s'exécuter sur le territoire Congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les Cours et Tribunaux Congolais; Disons que les redevances pétrolières congolaises sont insaisissables selon la loi Congolaise;

Constatons que les décisions judiciaires Américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à l'ordre public et portent atteinte à la souveraineté nationale de la République du Congo;

En conséquence;

Ordonnons aux sociétés CMS NOMECO, Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut revenant à la république du Congo, conformément aux dispositions de la convention du 25 Mai 1979 et de la législation en vigueur;



.../...

Disons que la présente Ordonnance sera exécutée, en cas de résistance de la société CMS NOMECO, avec l'aide et assistance de la Force Publique;

Ordonnons l'exécution provisoire de la présente Ordonnance nonobstant toutes voies de recours;

Restons les dépens à la charge de la société CMS NOMECO CONGO INC;

Et avons rendu signé notre Ordonnance avec le Greffier./-

Suivent les signatures (i)lisibles
du Président et du Greffier
suit la mention d'enregistrement
Enregistré à Pointe-Noire le [illegible] juillet 2005
Pour expédition collationnée
certifiée conforme à l'original
établie en .................. D.L. Pages
POINTE-NOIRE, le [illegible] juillet 2005
Le Greffier en Chef

[illegible]

Me R. KOUD-UKOUD
Greffier en Chef