**EXECUTION COPY**

**ORDER**

F No. 251

CIVIL LIST No. 546
YEAR: 2005

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 477
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

    Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

    With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

    With reference to the motion dated July 2, 2005 in Point Noire from the Republic of the Congo, Ministry of Hydrocarbons, with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

    Whereas in support of its motion, it stated: whereas AF CAP (which holds a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

    Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

    But whereas these decisions could not be executed in the Republic of the Congo;

    Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

    Whereas in this case, the Republic of the Congo was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

    Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each Contracting State may not be garnished even though it may be held by third parties;

2

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with International Public Order and the Republic of the Congo's sovereignty in that it is aimed at tax royalties, by their nature not subject to garnishment, and it interferes with the Republic of the Congo's exercise of its sovereignty in matters of taxation;

Whereas, therefore, since the issue of the delivery of any operator designated by the Republic of the Congo's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver said shares of crude oil to any operator designated by the Republic of the Congo;

Whereas based on the foregoing, the Republic of the Congo is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction on the garnishment of the mining royalty owed to the Republic of the Congo's under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to any operator designated by the Republic of the Congo, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in briefs dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, P.O. Box 5316, Pointe-Noire, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to the Republic of the Congo held by CMS Nomeco Congo Inc;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that its delivery of the shares of crude oil to any operator designated by the Republic of the Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco to deliver shares of crude oil to any operator designated by the Republic of the Congo would render CMS Nomeco liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco would be forced to deliver shares of crude oil to any operator designated by the Republic of the Congo in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas CMS Nomeco is obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

Whereas Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this code it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas the Republic of the Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas under these conditions, the Republic of the Congo cannot make valid use of the argument that its obligee observed the procedure for the authority to execute as though it were executing its decision in Congolese Territory;

Whereas the Republic of the Congo further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the Republic of the Congo, pursuant to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, mainly AF-CAP Inc., the U.S. company, and the Republic of the Congo;

Whereas it is requesting that the Court: - find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco; - find that CMS Nomeco Congo is only a "third arty holder" of the immobilized shares of crude oil; - find that only the effects of this execution are felt in the Congo through CMS Nomeco; find that there is no instrument of execution whatsoever that has been carried out in Congolese territory;

Whereas consequently, find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and - order the Republic of the Congo to pay the costs;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that the U.S. court decisions that ordered the attachment of Congolese crude oil conflict with the Congolese laws in effect;

Whereas the Republic of the Congo is indeed a sovereign State and therefore a Government Corporation and Enterprise;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution which provides that "Compulsory distraint and preventive measures shall not apply to persons enjoying immunity from execution. However, any unquestionable debts due for payment belonging to public corporations or enterprises, regardless of their form and mission, may equally be compensated with unquestionable debts due for payment belonging to any person owing them, subject to reciprocity;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas furthermore, the decisions of the U.S. courts, including for the attachment of the Congolese crude oil, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas ultimately, there is therefore no reason to use the decisions of the U.S. courts as arguments against the Congolese State;

Whereas, moreover, Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution (UAOSRPME) provides that "property declared not subject to attachment by the national law of each Contracting State may not be attached, even if it is held by third parties;

Yet, whereas the oil royalties are declared not subject to attachment by Congolese law;

Whereas ultimately, it should be found that the attachment of the Congolese crude oil ordered by the U.S. courts is in conflict with public order and interferes with the sovereignty of the Congolese State;

Whereas with regard to the foregoing, there is reason to find that the Congolese Republic's motion is in order and admissible;

Whereas, in substance, it is grounded; whereas there is reason to accept it;

Whereas it is therefore essential to find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the CCCAFP;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

On the merits, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

We find that the U.S. court decisions or decisions of other foreign jurisdictions may not be executed in Congolese territory without first having been the subject of the procedure of the authority to execute with the Congolese Courts and Tribunals. We find that the Congolese oil royalties cannot be attached according to Congolese law;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We find that the U.S. court decisions that ordered the attachment of the Congolese crude oil are in conflict with the public order and interfere with the Republic of the Congo's national sovereignty;

Consequently;

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to any operator designated by the Republic of the Congo in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc. to pay the costs.

And we have signed our Order with the Clerk.

> The illegible signatures of the Presiding Judge and the Registrar follow.
> The recording follows.
> Recorded in Pointe-Noire on July 4, 2005
> Certified true execution copy, checked against the original, 5 pages
> Pointe-Noire, July 5, 2005
> Head Registrar
>
> In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

**RÉPUBLIQUE DU CONGO**    F°251

AU NOM DU PEUPLE CONGOLAIS

ROLE CIVIL N°547
ANNÉE 2005

L'an deux mil cinq;
Et le quatre du mois de juillet;

REPERTOIRE N°476
DU 04-07-05



Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance de
Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Pa-
lais de Justice de cette ville;

Assisté de Maître Marc EFIKI, Greffier en Chef des Chambres Civiles audit Tri-
bunal;

(/u la requête en date à Pointe-Noire du 02 Juillet 2005 de la Société Nationa-
le des Pétroles du Congo(SNPC),ayant pour conseils Maître Irène Josiane OKOKO,
Hervé OBONGUI NGUIE et Nadia MACOSSO,Avocats à la Cour B.P 5437 Pointe-Noire;

Attendu qu'à l'appui de sa requête,elle expose;Que se prévalant de ce qu'elles
ont été saisies par la société AF CAP(titulaire d'une créance sur la République
du Congo suivant une décision de la Cour Suprême de l'État de New York,du 9 Mai
2000) par les décisions des 8 et 22 février 2005 de la Cour du District de l'
Ouest du Texas,Division Austin,États-Unis d'Amérique,les sociétés CMS Nomeco Inc.
Nuevo Congo Company et Nuevo Congo Limited entendent ne pas permettre l'enlève-
ment des parts de pétrole brut correspondant aux redevances dues à la Républi-
que du Congo au titre de la convention pour la production d'hydrocarbures du 25
Mai 1979;

Que les décisions des 4 et 22 février 2005 prévoient le contrôle de la Cour
sur les redevances fiscales dues à la République du Congo;le versement desdites
redevances en numéraire au Greffe de la Cour en faveur de AF CAP en règlement de
la créance de celle-ci sur la République du Congo ainsi que toute somme supplé-
mentaire que la Cour ordonnera.Ces décisions interdisent également la Républi-
que du Congo et toute personne ayant connaissance de ces décisions de transfèrer
,dissimuler ou de disposer des intérêts de la République du Congo;

Que dans une lettre en date du 16 mai 2005,la société CMS Nomeco Inc déclare
que les décisions américaines sont également applicables aux parts de pétrole
brut revenant à la SNPC au titre de la convention du 25 Mai 1979;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

Qu'en effet, une décision de Justice rendue par une juridiction étrangère,même
en présence de la renonciation par le débiteur de son immunité de juridiction
et d'exécution ne peut pas s'exécuter de plein droit en territoire étranger qu'
elle doit, pour recevoir exécution,être soumise à la procédure d'exequatur telle
que prévue par l'article 299 du Code de Procédure Civile, Commerciale, Administra-
tive et Financière selon lequel,sauf conventions diplomatiques contraires,les
jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers
publics ou ministériels étrangers ne sont susceptibles d'exécution sur le terri-
toire congolais qu'après avoir été déclarés exécutoires par une juridiction Con-
golaise qui aurait été compétente ratione materiae pour en connaître;

Qu'en l'occurence,les décisions américaines des 4 et 22 février 2005 n'ont pas
été notifiées à la SNPC et que ni la société AF CAP, prétendue créancière de la
République du Congo, ni les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo
Congo Limited,tiers saisis,n'ont formulé devant les Tribunaux Congolais une de-
mande d'exequatur des mêmes décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvre-
ment et des Voies d'Exécution dispose que les biens déclarés insaisissables par
la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors
même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à la légis-
lation en vigueur en République du Congo;l'article 77 de la loi N°15/84 du 14
xxxxx Strixxx
mars 1984 instituant la charte des Entreprises d'Etat dispose que les biens de
                         ...//...



**EXHIBIT G**

-2-

l'entreprise … Etat sont insaisissables;

Qu'ainsi,il sied,la question de livraison des parts de pétrole brut de la SNPC détenues par les sociétés CMS Nomeco Inc,Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain,d'ordonner sur minute que ces sociétés livrent à la SNPC ses parts de pétrole brut;

Qu'en conséquence de ce qui précède la SNPC sollicite que par décision de référé d'heure à heure,soit constaté que les tribunaux congolais ne sont saisis d' aucune décision rendue par une juridiction américaine et portant saisie des parts de pétrole brut de la SNPC au titre de la convention du 25 mai 1979;-dit que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d' exaquatur devant les Cours et Tribunaux Congolais;-constaté que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise;-ordonné aux sociétés CMS Nomeco Nuevo Congo Company et Nuevo Congo Limited de livrer à la SNPC les parts de pétrole brut lui revenant,conformément aux dispositions de la convention du 25 mai 1979;-ordonné l'exécution de droit de la décision à intervenir nonobstant toutes voies de recours;-statué ce que de droit sur les dépens;

Attendu que par écritures en date du 06 Juillet 2005,la société CMS NOMECO Congo Inc,ayant pour conseil Maître Sylvie Nicole NOUZIEKWE,a réagi en ces termes;

Qu'un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la Société Nationale des Pétroles du Congo entre les mains de la Société CMS NOMECO Congo Inc;

Que si la société CMS NOMECO Congo Inc est condamnée à livrer ces parts de pétrole brut à la Société Nationale des Pétroles du Congo en dépit du contenu de la décision d'une Cour Américaine,celle-ci risque de se trouver sous la contrainte d'une double obligation de paiement;

Que la société CMS Nomeco Congo Inc a introduit des requêtes de non lieu auprès de plusieurs cours américaines au motif que la livraison des parts de pétrole bruts à la Société Nationale des Pétroles du Congo serait obligatoire en Droit Congolais nonobstant l'existence d'une décision contraire émanant d'une juridiction Américaine et que l'une de ces Cours a rejeté cette requête,les autres ne s'étant pas prononcées sur le sujet;

Qu'enfin,compte tenu du fait que la société CMS NOMECO CONGO INC est une Société Américaine et que les procédures en cours sont des procédures Américaines,une décision émanant d'une juridiction Congolaise obligeant la Société CMS NOMECO Congo Inc à livrer des parts de pétrole brut à la SNPC exposerait la société CMS NOMECO CONGO INC au risque d'effectuer un double paiement;

Qu'en effet,si tel était le cas,la Société CMS NOMECO CONGO INC serait contrainte de livrer des parts de pétrole brut à la SNPC en conformité avec la décision du Tribunal de Grande Instance tout en courant le risque de devoir également effectuer un paiement aux Etats-Unis afin de se conformer à la décision de la Cour Américaine;

Que la Société NOMECO CONGO INC étant manifestement un tiers aux procédures mentionnées ci-dessus,elle ne devrait pas avoir à subir de telles conséquences;



Que l'article 299 du CPCCAF dispose:"Sauf conventions diplomatiques contraires les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente"rations materiae" pour en connaître";

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions des juridictions étrangères exécutées sur le territoire Congolais;

Que or les décisions de la Cour de District des Etats-Unis,District de l'Ouest

-3-

de Texas, ont à ... rendues, signifiées et exécutées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC;

Que la Société Nationale des Pétroles du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP

Que la SNPC sous-tend en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi, notamment des articles 50 de l'Acte Uniforme OHADA portant Organisation des Procédures Simplifiées de Recouvrement des Créances et des Voies d'Exécution et 77 de la Charte des Entreprises d'Etat;

Que or, il a été rappelé supra que la société CMS NOMECO Congo Inc.n'est que "tiers-détenteur" des parts de pétrole brut querellées entre la société Américaine AF-CAP Inc et la SNPC suite aux décisions Américaines en dates respectives du 04 et 22 Février 2005;

Que le fait pour la société CMS NOMECO Congo Inc d'avoir immobilisé ces parts de pétrole brut, suite aux décisions des juridictions Américaines,ne signifie pas que la Société CMS NOMECO Congo Inc revêt la qualité de saisissant;

Que la société CMS NOMECO Congo Inc ne saurait opiner sur cette question d'immunité de saisie qui intéresse les principales parties au litige, notamment la Société Américaine AF-CAP Inc et la SNPC;

Que le Juge saisi, constatera que un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO INC ,que la Société CMS NOMECO CONGO INC n'est que "tiers-détenteur" des parts de pétrole brut immobilisées;dira que seuls les effets de cette exécution sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC, constatera l'absence d'un quelconque acte d'exécution accompli sur le territoire Congolais;

Qu'en conséquence,il dira n'y avoir lieu à ordonner la livraison des parts de pétrole brut sollicitée par la République du Congo;Condamnera la République du Congo aux dépens;

SUR QUOI,NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier;Que la Société Nationale des pétroles du Congo SNPC,est une entreprise d'Etat;Qu'à ce titre elle bénéficie de l'immunité de saisie prévue à l'article 77 de la charte nationale des entreprises d'Etat qui dispose que les biens de l'entreprise d'Etat sont insaisissables sauf les cas prévus par la procédure de liquidation de l'entreprise";

Attendu que dans ces conditions,il y a lieu de faire application des dispositions de l'article 30 de l'Acte Uniforme portant Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Qu'en effet l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose que"l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient d'une immunité d'exécution";

Attendu qu'en l'espèce,la SNPC est une entreprise d'Etat et bénéficie de l'immunité d'exécution;

Qu'il y a lieu de lui appliquer les dispositions de l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Attendu également que les décisions des Tribunaux Américains dont exécution,ne sont pas encore exéquaturées;

Attendu en effet que l'article 299 du Code de Procédure Civile,Commerciale,Administrative et Financière(CPCCAF) dispose que " Sauf conventions diplomatiques con-
.../...

traires,les jugents rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione materiae pour en connaître;

Attendu qu'à ce jour,ni le bénéficiaire desdits jugements,ni la société NCMECO n'ont saisi la juridiction congolaise pour solliciter l'exaquatur desdites décisions;

Attendu en conséquence qu'il n'y a lieu donc à exécution desdites décisions américaines rendues;

Attendu qu'au regard de ce qui précède,il y a lieu de dire que la requête de la société SNPC est donc régulière et recevable;

Attendu au fond qu'elle est fondée;

Qu'il y a lieu d'y faire droit;

Attendu qu'il y a lieu de rejeter purement et simplement tous les arguments développés par la société NCMECO;

Attendu que la société NCMECO CONGO INC a succombé au procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du Code de Procédure Civile,Commerciale,Administrative et Financière;

### PAR CES MOTIFS

Statuant publiquement,contradictoirement,en référé,en matière d'exécution et en premier ressort;

Au principal; Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent,vu l'urgence et par provision;

Constatons que la SNPC est bénéficiaire de l'immunité d'exécution;

Constatons que les décisions judiciaires américaines rendues en la matière ne sont pas encore exéquaturées au Congo;

Constatons que lesdites décisions sont contraires à l'ordre public;

#### En conséquence;

Ordonnons aux sociétés CMS NOMECO,Nuevo Congo Company et Nuevo Congo Limited de livrer les parts de pétrole brut revenant à la SNPC conformément aux dispositions de la convention du 25 Mai 1979;

Disons que la présente ordonnance sera exécutée en cas de résistance avec l'aide de la Force Publique;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours;

Mettons les dépens à la charge de la société CMS NOMECO CONGO INC;

...../...

-5-

Et avons signé notre Ordonnance avec le Greffier./-

Suivent les signatures (e) illisibles
du Président et du Greffier
suit la mention d'enregistrement
Enregistré à Pointe-Noire le 04 Juillet 2005
Pour expédition collationnée
certifiée conforme à l'original
établie en...............91 Pages.

POINTE-NOIRE, le 05 Juillet 2005
    Le Greffier en Chef

En conséquence la Republique du Congo
mande et ordonne à tous huissiers sur ce
requis de mettre ledit jugement à exécution
aux Procureurs Généraux et aux Procureurs
de la Republique Prés les Cours et Tribunaux
de Grande Instance d'y tenir la main à tous
commandants et officiers de la force publique
de ceter main pour lorsqu'ils en seront
legalement requis.

En foi quoi la présente expédition
que engrise et scellée par Monsieur
Greffier en chef du tribunal de G.V.
Instance de POINTE-NOIRE et por
revetue ainsi forme de ........

    Par .............
    Ca ........
    BEGUE ......

Me R. KOUD-OKOUO
    Greffier en Chef

**EXECUTION COPY**

CIVIL LIST No. 547
YEAR: 2005

F No. 251

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 476
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

With reference to a motion dated July 2, 2005 in Point Noire from Société Nationale des Pétroles du Congo (SNPC), with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

Whereas in support of its motion, it stated: whereas AF CAP (which held a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) carried out an attachment against Nuevo Congo Company and Nuevo Congo Limited, based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

Whereas in a letter dated May 16, 2005, CMS Nomeco Inc. represented that the U.S. decisions are applicable as well to the shares of crude oil due to the SNPC under the agreement of May 25, 1979;

But whereas these decisions could not be executed in the Republic of the Congo;

Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF), according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas in this case, the SNPC was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

2

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each State that is a Party may not be garnished even though it may be held by third parties;

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with the laws in effect in the Republic of the Congo; Article 77 of Law No. 13/81 of March 14, 1981, creating the Charter of Government Corporations, provides that the property of Government Corporations is not subject to garnishment;

Whereas, therefore, since the issue of the delivery of the SNPC's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver to the SNPC its shares of crude oil ;

Whereas consequently, based on the foregoing, the SNPC is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction and on the garnishment of the SNPC's shares of crude oil under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to the SNPC, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in documents dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to Société Nationale des Pétroles du Congo held by CMS Nomeco Congo Inc;

Whereas if CMS Nomeco Congo. Inc. is ordered to deliver these shares of crude oil to Société Nationale des Pétroles du Congo despite the content of the decision of a U.S. Court, the SNPC may find itself under the constraint of a dual obligation for payment;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that the delivery of the shares of crude oil to Société Nationale des Pétroles du Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco Congo Inc. is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco Congo Inc. to deliver shares of crude oil to the SNPC would render CMS Nomeco Congo Inc. liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco Congo Inc. would be forced to deliver shares of crude oil to the SNPC in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas Nomeco Congo Inc. was obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas Article 299 of the CPCCAF provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this text it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas Société Nationale des Pétroles du Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas the SNPC further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the SNPC, due to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco Congo Inc. has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, particularly AF-CAP Inc., the U.S. company, and the SNPC;

Whereas the Judge before whom the matter was brought shall find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco Congo Inc., whereas CMS Nomeco Congo Inc. is only a "third party holder" of the immobilized shares of crude oil; shall find that only the effects of this execution are felt in the Congo through CMS Nomeco Congo Inc., shall find that no execution whatsoever has been carried out in Congolese territory;

Whereas consequently, the Court shall find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and shall order the Republic of the Congo to pay the costs;

BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that Société Nationale des Pétroles du Congo SNPC is a Government Corporation; whereas consequently it enjoys the immunity from garnishment stipulated in Article 77 of the National Charter of Government Corporations that provides that "the property of government corporations may not be garnished except in cases provided for by the procedure for the liquidation of the corporation;"

Whereas under these conditions, there is reason to apply the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution provides that "enforcement and precautionary measures are not applicable to persons that enjoy immunity from execution;"

Whereas in this instance, the SNPC is a Government Corporation and enjoys immunity from execution;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;

Whereas furthermore, the decisions of the U.S. courts, including execution, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas as of today, neither the beneficiary of said decisions nor Nomeco have come before the Congolese courts to solicit the authority to execute said decisions;

Whereas consequently, there is therefore no reason to execute said U.S. decisions that have been handed down;

Whereas with regard to the foregoing, there is reason to find that the SNPC's motion is in order and admissible;

Whereas, in substance, it is grounded;

Whereas there is reason to accept it;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

### NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

On the merits, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the SNPC does enjoy immunity from execution;

We find that the decisions of the U.S. Courts handed down in this matter have not yet been authorized for enforcement in the Congo;

We find that said decisions are in conflict with the public order;

Consequently;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to the SNPC in accordance with the provisions of the agreement of May 25, 1979;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]