IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------- x
                                                  :
WALKER INTERNATIONAL HOLDINGS, LTD.,
                                                  :
                      Plaintiff,
                                                  :
          - against -                             :   Civil Action No. 05-156 SLR
                                                  :
THE REPUBLIC OF CONGO,
                                                  :
                      Defendant,
                                                  :
CMS NOMECO CONGO INC.,
                                                  :
                      Garnishee.
                                                  :
------------------------------------------------------------------- x
```

**OPENING BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION
FOR AN ORDER TO SHOW CAUSE FOR A WRIT OF ATTACHMENT
*FIERI FACIAS,* ORDER OF SEQUESTRATION, AND INJUNCTIVE RELIEF**

GREENBERG TRAURIG, LLP
Donald J. Detweiler (No. 3087)
Dennis Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
(302) 661-7000

GREENBERG TRAURIG, LLP
Ronald W. Kleinman
Sanford M. Saunders, Jr.
Kenneth P. Kaplan
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006
(202) 331-3100

GREENBERG TRAURIG, LLP
James W. Perkins
Stephanie R. Feldman
200 Park Avenue
New York, New York 10166
(212) 801-9200

Dated: January 11, 2007

## NATURE AND STAGE OF PROCEEDINGS

On August 31, 2005, Plaintiff Walker Holdings International, Ltd. ("Walker") filed this action in order to enforce a long-outstanding money judgment it had duly obtained in a United States court against the defendant Republic of Congo ("Congo").[1]  Garnishee CMS Nomeco Congo, Inc. ("CMS"), then a Delaware corporation, is a venture partner with Congo under a Convention dated May 25, 1979, that grants CMS the right to extract oil from Congolese territory, but further requires CMS to pay Congo royalties and taxes and pay distributions to its venture partners (which include the Congo and Congo's oil agency/instrumentality SNPC). (Perkins Aff. Ex. D.)

Upon commencement of this action, Walker also sought a writ of garnishment in aid of execution upon its judgment against Congo.  This Court has not yet ruled on the Walker writ application and this motion seeks, in part, immediate issuance of a writ of garnishment.

In separate litigation, the Court of Appeals for the Fifth Circuit held that, for purposes of the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 et seq., CMS's obligation to make the Congo royalty payments is located wherever CMS is found and may be garnished or otherwise executed against in those states.  (Perkins Aff. ¶ 15.)  This is the same rule followed in Delaware. *See Harris v. Balk*, 198 U.S. 215 (1905).  Since the Af-Cap Writ was issued and levied upon CMS in Delaware, and CMS does not otherwise contest jurisdiction, CMS is "found" in Delaware, even though CMS has purported to leave the state.  In addition, in the Texas litigation, the Fifth Circuit has definitively and finally held that, irrespective of the efforts of the government of Congo or its courts to interfere with the enforcement of these United States

---

[1]     In a companion case, *Connecticut Bank of Commerce v. Republic of Congo*, C.A. No. 05-762SLR, another judgment creditor of Congo, Af-Cap, Inc. ("Af-Cap") sought and obtained a writ of garnishment (the "Af-Cap Writ") from the Superior Court, which writ was duly served upon CMS on or about October 12, 2005. The Af-Cap Writ remains in full force and effect. Af-Cap has filed a separate motion seeking relief similar to that requested by Walker and Walker requests that the two motions be heard together.

judgments, CMS cannot claim any defense under the theory of sovereign compulsion or the Act of State Doctrine. *See Af-Cap v. Republic of Congo*, 383 F.3d 361, 372 n.14 (5th Cir. 2004). These issues are now *res judicata* and are not subject to re-opening in this proceeding.

During the proceedings in Texas, CMS colluded with Congo to purport to restructure the form and location of payment of the royalties from cash paid in the United States to oil delivered in Congo, all expressly for the purpose of defeating or hindering Walker's ability to collect on its judgment. (Perkins Aff. ¶¶ 18, 22.) In addition, CMS further announced its intention to restructure itself in order to transfer the Convention, including the royalty payment obligations, outside of the United States. (Perkins Aff. ¶ 19 and Ex. M.) Until recently, this proposed restructuring was enjoined by order of the United States District Court for the Southern District of Texas.[2]

Since the inception of this case and at present, CMS continues to produce oil and hold royalties on behalf of Congo. Furthermore, CMS has admitted that it has paid tens, if not hundreds, of millions of dollars in royalties to Congo over-time and has paid in excess of $27 million while this case has been pending. In particular, in April, 2006, in violation of the Af-Cap Writ, CMS made royalty payments to Congo in excess of $27 million. Fox Depo. at 161:25 - 162:25, 165:12 - 167:3 and 167:3 - 184:2-6. In further disregard of the Af-Cap Writ, on or about November 21, 2006, CMS purported to dissolve itself in Delaware and reform in the Bahamas. (Perkins Aff., ¶ 22; Fox Depo. at 249:25 - 250:5.) At a deposition in this matter, held November 30, 2006, CMS's representative Roland Fox, testified that a purpose in moving from Delaware to the Bahamas was to avoid any further writs being issued against its obligations to the Congo.

---

[2]    In light of rulings by the United States Court of Appeals for the Fifth Circuit, that the Texas State garnishment statute did not reach intangibles such as the royalty payment obligation, on October 24, 2006, the Southern District of Texas dissolved its order. As explained below, Delaware garnishment law recognizes attachment of intangibles and contingent rights while Texas, according to the Fifth Circuit, does not. *See infra* Point II.

Fox Depo. at 250:19-25.   Nonetheless, CMS concedes that this Court continues to have jurisdiction over it. (Perkins Aff., ¶ 20 and Ex. N.)

## PRELIMINARY STATEMENT

By this motion, Walker seeks three types of relief.  First, Walker asks this Court to grant its own writ of garnishment, to secure satisfaction of its judgment after Af-Cap's judgment has been paid.  The issuance of a writ here is statutorily mandated and there exists no valid grounds under Delaware law or federal law for writs to be withheld from Walker.  Moreover, the failure to issue those writs may cause further prejudice to Walker if other creditors obtain writs, either here or in other jurisdictions, and thereby claim priority over Walker.

Second, the Court should enter an order of sequestration in favor of Walker, leaving no doubt in CMS's (and Congo's) mind that the royalty obligation cannot be transferred outside of Delaware, no matter the extent of corporate manipulation in which CMS (in concert with Congo) may engage.  Congo has not appeared in this action, but its right to royalty payments by CMS remains subject to execution here.

Third, Walker seeks the entry of a preliminary injunction, (a) enjoining CMS from further making any royalty payments to Congo under the Convention, and (b) preventing CMS from otherwise removing from this Court's jurisdiction CMS's obligations to make royalty payments to the Congo under the Convention, pending a determination of plaintiff's rights to execute on those royalty obligations.

This Court should grant the requested relief now because, as shown below, CMS's recent acts have been designed specifically to avoid CMS's obligations to pay Congo's royalties to Walker and other creditors of the Congo.  This Court should not stand by while a rogue government co-opts its all-too-willing business partner CMS into hindering, delaying or defrauding its creditors.

## STATEMENT OF FACTS

### The Parties

1.    Walker is a creditor of Congo under a judgment obtained through recognition of an arbitration award made by the International Chamber of Commerce ("ICC") in 1998. Following a hearing in which Congo actively participated, the ICC found that Congo was liable to Walker and issued an award for $26,093,251.00, plus interest (the "Walker Judgment"). (Perkins Aff. Ex. F.)  Under the rules that govern ICC proceedings, Congo was obligated, and agreed, "to carry out any Award without delay" and to "waive[] their right to any form of recourse insofar as such waiver can validly be made." (Perkins Aff. Ex. G at Art. 28(6).)

2.    CMS is an oil production company that is ultimately owned by Perenco S.A., a multibillion dollar conglomerate based in London, England.  Under the Convention it entered into with Congo, CMS is authorized to exploit oil reserves in Congo in exchange for CMS's obligation to make royalty and other payments to Congo.  (Perkins Aff. Ex. D.)  The Fifth Circuit has ruled that the CMS royalty payment obligation under the Convention is not immune from execution by Congo's creditors through proceedings occurring wherever CMS is located (including Texas and Delaware, its state of incorporation when this action was commenced). (See Perkins Aff. ¶¶ 14-15 and Ex. K.)

At the time Af-Cap and Walker began their enforcement efforts in the United States, CMS based its operations in Houston, Texas.  Thereafter, CMS has taken a series of steps designed to remove itself beyond the reach of courts in the United States, including in March 2005, by moving its headquarters to London, and on November 21, 2006, by purporting to dissolve as a Delaware corporation and reform in the Bahamas. (Perkins Aff. ¶¶ 20-22 and Exs. N-P.)  CMS's efforts to remove itself from Texas and dissolve itself in Delaware were not

disclosed to the courts in which CMS was a garnishee in proceedings to enforce judgments against Congo, until after the transfers had occurred.  (Perkins Aff. ¶ 21.)

**Proceedings Against CMS In Delaware**

After CMS absconded from Texas, Af-Cap and Walker initiated an action in the Delaware Court of Chancery, seeking relief under Delaware's Fraudulent Transfer Act and the common law arising from CMS's actions to move the royalty payment obligation beyond the reach of CMS's creditors.  (Perkins Aff. ¶ 24.)  Walker also commenced this action.  In July 2005, immediately prior to the filing of this action, CMS gave notice to Af-Cap, Walker and other Congo creditors that it intended to remove the royalty obligations from Delaware and Texas.  (Perkins Aff. ¶ 19 and Ex. M.)  This announcement was made through a document entitled Notice of CMS Nomeco Congo Inc., the Nuevo Congo Company, Nuevo Congo Ltd. of Anticipated Sale and Transfer of Working Interests (the "Transfer Notice"), indicating that CMS intended:

> to convey [its] working interests [i.e., oil royalties].  The purchasers will be companies to be formed under Congolese law. The consideration to be paid for the sales will be cash.  Upon closing of the conveyances, the working interests under the Convention will be owned by the Congolese purchasers of the working interests, and the rights and obligations under the Convention and Joint Operating Agreement previously held and owed by the Working Interest Owner Garnishees [,including CMS,] will be held and owed by the Congolese purchasers and not the Working Interest Owner Garnishees.

(*See*, Perkins Aff. Ex. M.)

According to the records of the Delaware Secretary of State, on November 21, 2006 notwithstanding the entry of the Af-Cap Writ, and without notice to this Court or to counsel for

plaintiffs, CMS purported to dissolve itself as a Delaware corporation.[3]  (Perkins Aff. Ex. O.)

After dissolution, CMS reformed itself in the Bahamas.   CMS representative Roland Fox

testified at deposition that a reason for CMS leaving Delaware was to evade Congo's creditors.

(Perkins Aff. Ex. P at 250:19-25.)    CMS has further stated, however, that "it will not use that

conversion as a basis for challenging the jurisdiction of the federal court in Delaware."  (Perkins

Aff. Ex. N.)  As explained below, since Walker's motion for a writ was in place at the time, and

CMS does not contest the jurisdiction of this Court over that motion (or by reason of the issuance

of the Af-Cap writ), CMS's move has no impact on this Court's ability to seize and, thereafter,

order execution of judgment against the Convention royalty obligation.

## ARGUMENT

### POINT I

### WALKER'S MOTION FOR A WRIT OF GARNISHMENT SHOULD BE GRANTED

A writ of garnishment operates to seize the debtor's assets that are in the possession of a

third party garnishee.  *See* 10 Del. C. §§ 3506-3509; *Weinress v. Bland*, 71 A.2d 59, 65 (Del. Ch.

1950) (garnishment attaches at time garnishee is served and attaches all obligations in possession

of garnishee, even though such obligations may be considered unmatured or contingent);

*Cooper's Home Furnishings, Inc. v. Lolley*, 270 A.2d 676 (Del. Super. 1970) (garnishment

attaches at time garnishee is served and continues on all moneys which accrue to the debtor's

credit).  *See also*, *e.g.*, *First Western Financial Corp. v. Neumeyer*, 240 A.2d 579 (Del. Super.

1968) (citing 10 Del. C. §§ 3506, 3509) (purpose of writ of attachment proceeding is to coerce

non-resident with property in state to provide security for any judgment plaintiff may obtain).

---

[3]    Although counsel for CMS had previously advised plaintiff's counsel that CMS was restructuring such that the
Convention would be moved to an entity directly or indirectly held by CMS, at no time did CMS counsel, or anyone
on its behalf, advise that the company was being dissolved. (Perkins Aff. ¶ 21.)

Once a writ of garnishment has issued and been duly served on the garnishee, "[a]ny transfer of assignment of the property after attachment shall be void...." 10 Del. C. § 3511.

Moreover, when a court has jurisdiction over a debtor, such as CMS, it has power to control (including ordering execution upon) the asset which debtor owes, even if the debt is payable in another jurisdiction. *See Standard Oil Co. v. State of New Jersey*, 341 U.S. 428, 438-39 and n. 9 (1951)(noting that creditor has "ability to garnishee the debtor of his debtor wherever the garnisheed debtor may be.") (citing *Harris v. Balk*, 198 U.S. 215 (1905)). Thus, "the temporary presence of the garnishee...within the state gives a court jurisdiction to render a judgment against him in respect of an indebtedness due to a nonresident, if during such temporary presence in the state the creditor, the principal defendant, could have sued him there to recover the debt." *Forest Products Co. v. Magistrelli Arstell & Beeman, Inc.*, 14 A.D.2d 397, 399 (Del. Super. 1940). And when a right to a sum of money pursuant to a contract arises in Delaware, the Court has jurisdiction to enter a writ of attachment, as long as personal service can be made upon the garnishee. *See Local Union 1034 AFL-CIO v. Glover*, 460 A.2d 541, 542 (Del. 1983) (holding that Delaware court had jurisdiction to attach union dues even though deduction of dues occurred in Maryland and checks were mailed to Union in Pennsylvania since contractual right to dues arose where garnishee was located).

Finally, in Delaware, writs, like orders of sequestration, encompass contingent rights in property, such as in receivables due, or to become due, under a contract. *See U.S. Industries, Inc. v. Gregg*, 540 F.2d 142, 146 (3d Cir. 1976) (following *Weinress v. Bland*, 31 Del. Ch. 269, 71 A.2d 59 (1950)) (unmatured note of Delaware corporation with maturity contingent on payment of earnings of stock of nonresident corporation held as collateral by nonresident payee was subject to sequestration); *Sands v. Lefcourt Realty Corp.* 35 Del. Ch. 340, 117 A.2d 365

(1955) (stating that sequestration under Delaware law is analogous to foreign attachment at law). *See also, Blumenthal v. Blumenthal*, 28 Dl. Ch. 1, 35 A.2d 831, 836 (1944) (noting that term "property" under Delaware foreign attachment law "has a broad and comprehensive meaning").

Based on this authority, CMS's efforts to remove the Convention (and concomitantly its obligation to make royalty payments to the Congo) beyond the reach of the power of this Court is a nullity. Once the Af-Cap writ issued and was served on CMS, the property was seized and available for execution. It makes no difference that CMS's contractual payment obligation may have been contingent at the time the writ attached – it was still subject to attachment and, thereafter, execution. *See Glover v. Doxsee Food Corp.*, 1982 WL 591944 (Del. Super. Aug. 27, 1982)(permitting garnishment of contract payable reasoning the "continuing debt by [garnishee] until payment is founded on the contract between [defendant] and [garnishee]"). CMS's purported removal of the Congo royalty right is a nullity and the asset remains within this Court's jurisdiction, subject to garnishment and sequestration, even if CMS is now located off shore. Moreover, the fact that CMS remains subject to the jurisdiction of this Court gives this Court the power to order CMS to pay to plaintiff royalties it owes Congo in satisfaction of Congo's debt to plaintiff. *See Forest Products*, 14 A.D.2d at 399.

On August 31, 2005, Walker first filed its application for issuance of a writ against CMS. CMS opposed Walker's request and, *inter alia,* raised Congo's foreign sovereign immunity defenses even though it lacks either Article III or representational standing to raise such defenses. CMS claims that it does possess standing, and in support of its position cites *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229 (5th Cir. 2004) *cert. denied* 544 U.S. 975 (2005). *See* Dkt. Entry 20 at 1-2. *Walker* is not binding on this Court and its holding is erroneous. Notably, two judges in the Northern District of Illinois recently rejected the Fifth

Circuit's holding.  In *Rubin v. Islamic Republic of Iran*, Magistrate Judge Ashman of the Northern District of Illinois held that only the foreign sovereigns may assert foreign sovereign immunity defenses.  408 F. Supp.2d, 549, 554-558 (N.D. Ill. 2005).  District Judge Manning affirmed Judge Ashman's ruling and in doing so, criticized the U.S. government's position that a non-sovereign was authorized to raise an absent sovereign's immunity defense.  *See Rubin v. Islamic Republic of Iran*, 436 F. Supp.2d, 938, 943 (N.D. Ill. 2006).  This Court should reach the same conclusion as the Northern District of Illinois.

Thus, there are no legal or factual impediments and a writ of garnishment should issue in favor of Walker as soon as possible.

## POINT II

## <u>CONGO'S ROYALTY RIGHTS SHOULD BE SEQUESTERED</u>

Although duly served, Congo has not appeared in this action.  Since, as explained above, its royalty rights remain present here, Congo may be compelled to appear by an Order of Sequestration.  Title 10, Section 366 of the Delaware Code empowers the Court of Chancery and, thus, this Court through FED. R. CIV. P. 69, to seize property having a situs in Delaware of a non-resident to compel his appearance in a pending action.  *See Gordon v. Michel*, 297 A.2d 420, 422 n. 1 (Del. Ch. 1972).  As outlined in Section 366:

> If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a nonresident of the State, the Court may make an order directing such nonresident defendant or defendants to appear … The Court may compel the appearance of the defendant by the seizure of all or any part of this property …

10 Del. C. § 366.  Sequestration under Delaware law is analogous to a foreign attachment at law, its function to provide an equivalent procedure in equity within the Delaware courts.  *Sands v. Lefcourt Realty Corp.*, 35 Del. Ch. 340, 117 A.2d 365 (1955); *Gordon*, 297 A.2d at 422.

It is well-established that, under the sequestration statute, "the word 'property' has a broad and comprehensive meaning, including legal and equitable interests in both real and personal property." *Blumenthal v. Blumenthal*, 28 Del. Ch. 1, 35 A.2d 831, 836 (1944). *See also Weinress v. Bland*, 31 Del. Ch 269, 71 A.2d 59, 62 (1950) (following *Blumenthal*) (word "property" as used in Delaware sequestration statute is to be given a "broad and comprehensive meaning"); *Perrine et al. v. Pennroad Corp. et al.*, 19 Del. Ch. 368, 373, 168 A. 196, 198 (1933). Accordingly, contingent property interests are subject to sequestration. *See U.S. Industries, Inc. v. Gregg*, 540 F.2d 142, 146 (3d Cir. 1976) (following *Weinress v. Bland*, 31 Del. Ch. 269, 71 A.2d 59 (1950) ("That an interest is contingent does not make it nonsequestrable.")).

Here, Walker seeks to sequester a royalty obligation owed by CMS to Congo. There is no dispute that CMS holds Congo's property, the contractual right to receive an oil royalty, and that it routinely pays that royalty to Congo. Indeed, since filing of this suit, CMS has paid Congo over $27 million in royalties. (Perkins Aff. ¶ 23; Fox Depo. at 161:25 - 162:25, 165:12 - 167:3 and 167:3 - 184:6.) This same type of obligation was held to be subject to sequestration in *D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1038-39 (D. Del. 1974).

In *D'Angelo*, the plaintiff brought an action against an agency of the Republic of Mexico "for an order requiring the defendant to account to the plaintiff for oil produced from wells in Mexico" in which the plaintiff claimed to "have royalty or participation interests." *Id.* at 1035. Specifically, the plaintiff claimed entitlement to "certain oil royalties and participation rights in certain of the properties so expropriated by the Mexican government." *Id.* Plaintiff sequestered Mobil Oil Corporation's obligation to pay oil royalties to the Mexican government agency. *Id.* at 1037. The Court denied Mobil Oil's motion to vacate the sequestration order, since the debt which Mobil owed to the defendant "gave rise to a transitory cause of action for which the

defendant could have sued and served Mobil in Delaware…and was, therefore, subject to sequestration." *Id.* at 1039.

As in *D'Angelo*, CMS's obligation to make royalty payments to the Congo is subject to sequestration. CMS has admitted in its answer to the Af-Cap Writ that it is "the current owner[] of working interests in a convention for the production of oil in the Republic of Congo…." (CMS Answer to Writ of Garnishment at 19, ¶ 1). CMS further admits that under its contract with Congo that "the Congo is entitled to royalty." (*Id.*) Significantly, Congo's royalty right accrues when the oil is extracted from the ground, not when it is taken by Congo.[4] Thus, under Delaware law, an order of sequestration seizing Congo's rights to royalty payments should issue.

**POINT III**

**PLAINTIFF MEETS THE STANDARD**
**FOR ENTRY OF A PRELIMINARY INJUNCTION**

Notwithstanding court orders directing to the contrary, CMS continues to pay Congo oil royalties under the Convention and has purported to remove itself from Delaware and with it, presumably, the royalty obligation. Even though CMS has stated it will not contest jurisdiction, nonetheless, CMS's transfer has imperiled Walker's ability to collect on its judgment against CMS's delinquent business partner, the Republic of Congo. CMS should be enjoined from making further payments to Congo or taking other efforts to remove the royalty payment obligation from Delaware.

---

[4]   In particular, the Convention provides that:

> The quantity of hydrocarbons to which the mining royalty applies shall be measured at the point of delivery…. The mining royalty, whether in case or in kind, shall be computed and paid on a quarterly basis…. Delivery of the quantities of hydrocarbons to which the Congo is entitled, including the liquid hydrocarbons destined for the Pointe-noire refinery, shall be made either at well head or at the gathering point…." (Perkins Aff., Ex. D at ¶¶ 7.04, 7.05, 10.02.1).

Preliminary injunctions are appropriately entered to preserve the property or rights at issue until a case has been fully decided. *See Chew v. First Presbyterian Church*, 237 F. 219, 222 (D. Del. 1916) ("The ultimate object of a preliminary injunction…is the preservation of the property or rights in controversy until the decision of the case on a full and final hearing upon the merits…"). The Delaware Courts have long-held that the preservation of a fund at issue to maintain the *status quo* pending the outcome of litigation is a proper basis for entering an injunction. *See Guatarri v. International Import & Export, Co.*, 100 A. 795 (Del. Ch. 1917); *see also Cooling v. Security Trust, Co.*, 49 A.2d 121, 123 (Del Ch. 1946) (affirming entry of preliminary injunction to preserve *status quo*). The decision to grant a preliminary injunction is committed to the Court's sound discretion. *Westinghouse Elec. & Mfg. Co.*, 268 F. 121 at 129 (quoting *Harriman v. Northern Secs. Co.*, 132 F. 464 (D. N.J. 1904). The Court's discretion is guided by "the nature of the controversy, the object for which the injunction is sought, and the comparative hardship or convenience to the respective parties involved in awarding or denial of the injunction." *Id.*

To obtain a preliminary injunction the moving party must demonstrate four elements: (1) that it has a "reasonable probability of success on the merits"; (2) that it will suffer irreparable injury if the injunction is not issued; (3) that granting the injunction will not cause greater harm to the non-moving party than will be caused to the moving party by the denial of relief; and (4) that granting the relief is in the public interest. *See Flowserve Corp v. Burns Int'l. Servs. Corp.*, 423 F. Supp.2d 433, 438 (D. Del. 2006) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153 (3d Cir. 1999). The overall purpose is "to preserve the *status quo* until the merits of the case have been decided." *Id.* (quoting *Acierno v. New Castle County*, 40 F.3d 543, 653 (3d Cir. 1994).

In *Flowserve*, the District Court enjoined an insured from separately negotiating with plaintiffs in asbestos litigation because it would have depleted the overall settlement resources available to each of the complaining parties.  The same rationale for an injunction holds true in the instant matter because, if CMS is allowed to take any further steps to move the obligation to pay royalties from Delaware to offshore, it would result in placing these royalties beyond the reach of Walker and other judgment creditors.  *Id.* at 439-40.  *See also Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (recognizing that in granting an injunction court may take into account other interested persons who could be harmed).

Here, the facts warrant the entry of an injunction.  First, Walker has a reasonable likelihood of success on the merits.  CMS admits to holding property -- payment of a royalty right -- that belongs to Walker's judgment debtor.  CMS Answer to Writ at 19.  There is no dispute, and CMS is estopped from arguing otherwise, that the asset is in the United States and subject to execution wherever CMS is located.  *See Af-Cap v. Republic of Congo*, 383 F.3d 361, 371 (5th Cir. 2004) ("We think a common sense appraisal of the requirements of justice and convenience in this particular context yields the conclusion that the situs of these royalty obligations is the United States--the situs of the Garnishees.").  CMS is subject to jurisdiction and, thus, is present in Delaware.  Moreover, as explained above, under Delaware law these very types of oil royalty obligations are subject to execution.  *See D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1038-39 (D. Del. 1974).

Second, Walker will be irreparably harmed if CMS is successful in moving the asset outside of the United States.  In that circumstance, Walker's recovery (as well as that of other judgment creditors) would effectively be beyond the reach of the U.S. courts.  Thus, unless enjoined, Walker would have no legal or equitable remedy following trial.

Third, the harm to Walker would be much greater than if the Court entered the injunction preserving the *status quo* while this case was making its way through the federal courts. CMS, and its predecessors, have been incorporated in Delaware since the 1970s and have held the Convention rights since 1979. CMS did not purport to move the Convention rights outside of the United States, until after the Af-Cap Writ was issued and Walker had filed its application for a writ. CMS has no legitimate interest in taking any further steps to block plaintiffs' debt recovery efforts, as CMS's steps are designed to hinder and delay Congo's creditors.

Fourth, the public interest weighs in favor of granting the injunction. As stated, CMS's efforts to remove itself and its assets from Delaware are designed solely to frustrate Congo's creditors. CMS should not be rewarded for this evasive conduct. And, CMS's withdrawal is precisely the type of conduct that an injunction is intended to protect against because it would otherwise result in compromising the Court's integrity to render a full, complete and final adjudication of the pending issues. *See Flowserve*, 423 F. Supp.2d at 439 (citing the All Writs Act).

## CONCLUSION

CMS has recently purported to remove itself and its assets outside of Delaware. It did so with the Af-Cap Writ in place against the CMS's royalty payment obligation to Congo under the Convention. As such, CMS's purported transfer has had no effect and the royalty payment obligation remains subject to execution in Delaware. Walker, which has had an application for a writ of garnishment outstanding for quite some time, respectfully requests that a writ issue promptly and that it be permitted to levy on the royalty obligation.

Moreover, in order to hail Congo before this Court, to force Congo to pay its debts, plaintiff seeks an order of sequestration of the royalty obligation. Likewise, CMS should be enjoined from taking any further steps to attempt to defeat the jurisdiction of this Court to enforce execution against the royalty obligation.

DATED: January 11, 2007                 Respectfully submitted,
Wilmington, Delaware

                                        GREENBERG TRAURIG, LLP


                                        _____
                                        Donald J. Detweiler (No. 3087)
                                        Dennis A. Meloro (No. 4435)
                                        The Nemours Building
                                        1007 North Orange Street, Suite 1200
                                        Wilmington, DE 19801
                                        (302) 661-7000

                                        and

                                        Ronald W. Kleinman
                                        Sanford M. Saunders, Jr.
                                        Kenneth P. Kaplan
                                        800 Connecticut Ave., N.W., Suite 500
                                        Washington, DC 20006
                                        (202) 331-3100
                                        and

                                        James W. Perkins

Stephanie R. Feldman
200 Park Avenue
New York, New York 10166
(212) 801-9200

Attorneys for Plaintiff